# 13-2742-cv(L),
## 13-2747-cv(CON), 13-2748-cv(CON)

# United States Court of Appeals
### *for the*
# Second Circuit

━━━━━━━━━ ◆ ━━━━━━━━━

MONIQUE SYKES, Individually and on behalf of all others similarly situated,
RUBY COLON, Individually and on behalf of all others similarly situated, REA
VEERABADREN, Individually and on behalf of all others similarly situated,
FATIMA GRAHAM, KELVIN PEREZ, Individually and on behalf of all others
similarly situated, SAUDY RIVERA, PAULA ROBINSON, Individually and on
behalf of all others similarly situated, ENID ROMAN, Individually and on behalf
of all others similarly situated, CLIFTON ARMOOGAM,

*Plaintiffs-Appellees*,

v.

*(For Continuation of Caption See Inside Cover)*

━━━━━━━━━━━━━━━━━━━━

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLANTS
## SAMSERV, INC., WILLIAM MLOTOK, BENJAMIN LAMB,
## MICHAEL MOSQUERA AND JOHN ANDINO

BABCHIK & YOUNG LLP
*Attorneys for Defendants-*
  *Appellants Samserv, Inc.,*
  *William Mlotok, Benjamin*
  *Lamb, Michael Mosquera*
  *and John Andino*
200 East Post Road, 2nd Floor
White Plains, New York 10601
(914) 470-0001

MEL S. HARRIS AND ASSOCIATES LLC, MEL S. HARRIS, TODD FABACHER, MICHAEL YOUNG, KERRY LUTZ, ESQ., LR CREDIT 18, LLC, L-CREDIT, LLC, LEUCADIA NATIONAL CORPORATION, LR CREDIT, LLC, LR CREDIT 10, LLC, SAMSERV, INC., WILLIAM MLOTOK, BENJAMIN LAMB, DAVID WALDMAN, JOSEPH A. ORLANDO, MICHAEL MOSQUERA, JOHN ANDINO, LR CREDIT 14, LLC, LR CREDIT 21, LLC, PHILIP M. CANNELLA,

*Defendants-Appellants*,

MEL HARRIS JOHN DOES 1-20, MEL HARRIS JANE DOES 1-20, LR CREDIT JOHN DOES 1-20, LR CREDIT JANE DOES 1-20, LR CREDIT 19, LLC, HUSAM AL-ATRASH, ASSMAT ASDELRAHMAN,

*Defendants.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Samserv, Inc. (a private non-governmental party), certifies upon information and belief that the following are corporate parents, affiliates and/or subsidiaries of said party, which are publically held:
None.


By:    _____/s/ Jack Babchik_____

Jack Babchik, Esq.
Attorneys for Defendant-Appellant
Samserv Defendants
200 East Post Road, 2nd Floor
White Plains, New York 10601

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ i

JURISDICTIONAL STATEMENT ............................................................1

    A.   Basis for Court's Jurisdiction ........................................1

    B.   Basis for the Court of Appeals' Jurisdiction ................1

    C.   Statement of Filing Dates Establishing Timeliness......1

    D.   Statement that Judgment is Final ..................................2

STATEMENT OF THE CASE ....................................................................4

STATEMENT OF FACTS ..........................................................................5

SUMMARY OF ARGUMENT ...................................................................7

PRELIMINARY STATEMENT ..................................................................8

    THE TWO CLASSES ................................................. 15

    STANDARD OF REVIEW................................................ 16

ARGUMENT ........................................................................... 19

    POINT I ............................................................... 19

    THE TWO CERTIFIED CLASSES DO NOT SHARE
    "COMMON" OR "TYPICAL" QUESTIONS AS CONCERNS
    SAMSERV AND, THEREFORE, SAMSERV IS NOT A
    PROPER FRCP 23(A) CLASS DEFENDANT

    A.   Samserv Did Not Serve Process on Most of the
        Putative Class Members ........................................... 21

B.      Samserv's Services of Process on the Named Plaintiffs
Was Neither "Common" Nor "Typical" .................................. 24

C.      Samserv's Services of Process on the Unnamed Members
Of the Classes Was Neither "Common" Nor "Typical" .......... 30

D.      Samserv Did Not Cause the Harm Complained Of ................. 37

E.      Samserv Has Unique Defenses That Preclude Certification ... 39

POINT II ......................................................................... 42

SAMSERV IS NOT A PROPER FRCP 23(b) CLASS
DEFENDANT

A.      Samserv is Not a Proper 23(b)(2) Class Defendant
Because Common Claims Do Not Predominate Among
The 23(b)(2) Class.................................................................... 43

B.      Monetary Issues Predominate Over Possible Injunctive
Relief Thus Barring a 23(b)(2) Class....................................... 45

C.      Samserv is Not a Proper 23(b)(3) Class Defendant................. 48

CONCLUSION ........................................................................... 53

# TABLE OF AUTHORITIES

## Cases

*650 Fifth Ave. Co. v Travers Jewelers Corp.*, 29 Misc. 3d 1215(A),
    1215A (N.Y. Civ. Ct. 2010) ................................................................ 35

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625-626 (U.S. 1997) .......... 23, 48

*Author's Guild, Inc. v. Google, Inc.*, 721 F. 3d 132 (2d Cir. 2013) ............. 39

*Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)` ....................................... 49

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (U.S. 2013) ................. 41, 43, 51

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F. 3d 91, 104 (2d Cir. 2007) ........................................................ 48

*Cuevas v. Citizens Financial Group, Inc.*, 2013 U.S. App. LEXIS 10737
    (2d Cir. 2013) ............................................................................... 17, 18

*Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).................... 20

*DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970)........................ 20

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160
    (U.S. 1982) ........................................................................... 41, 43, 49

*Harrison v. Great Springwaters of America, Inc.*, No. 96-CV-5110,
    1997 WL 469996 (E.D.N.Y. 1997) .................................................... 24

*In re "Agent Orange" Prod. Liability Litig.,* 818 F. 2d 145, 166-67
    (2d Cir. 1987) ..................................................................................... 19

*In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41
    (2d Cir. 2006) ..................................................................................... 43

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*,
    571 F. 3d 953, 958 (9th Cir. 2009)..................................................... 48

*Kowalski v. Yellowpages.com*, LLC, 2012 U.S. Dist. LEXIS 46539
(S.D.N.Y. 2012)................................................................. 34

*Lewis v. Lucent*, 211 F.R.D. 228 (S.D.N.Y. 2002)................................... 8, 30

*MacNamara v. City of New York*, 275 F.R.D. 125, 140
(S.D.N.Y. 2011).......................................................... 22, 23

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ........................... 19

*McNall v. Credit Bureau of Josephine County*, 2010 WL 466146 *10-11
(D. Or. 2010) .................................................................. 40

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
471 F.3d 24 (2d Cir. N.Y. 2006) ...................................... 16

*Moore v. PaineWebber, Inc.*, 306 F. 3d 1247, 1252 (2d Cir. 2002)............. 48

*Morangelli v. Chemed Corp.*, 2013 U.S. Dist. LEXIS 14873
(E.D.N.Y. 2013) ................................................................ 36

*Oakley v. Verizon Communications*, 2012 U.S. Dist. LEXIS 12975
(S.D.N.Y. 2012).............................................................. 35

*Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y. 1983) ............................ 20

*Robidoux v. Celani*, 987 F. 2d 931, 936-37 (2nd Cir. 1993) ....................... 20

*Robinson v. Metro-North Commuter Railroad Co.*, 267 F. 3d 147, 163
(2d Cir. 2001) ........................................................... 45, 47

*Seekamp v. It's Huge, Inc.*, 2012 U.S. Dist. LEXIS 33295
(N.D.N.Y. Mar. 13, 2012) ................................................. 46

*Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981)....................................... 20

*Spagnola v. Great Northern Ins. Co.*, 2013 U.S. App. LEXIS 17555,
2-3 (2d Cir. N.Y. Aug. 22, 2013) .................................... 8, 16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196, 202 (2d Cir. 2008) ....................................................... 43

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).. 30, 31, 32, 41

## Statutes

23 NYCCRR Sec. 208.6(h) ........................................................ 9, 37

28 U.S.C. § 1292(e) ..................................................................1

28 U.S.C. § 1331 ......................................................................1

28 U.S.C. § 1367 ......................................................................1

28 U.S.C. §§ 2201 and 2202 .......................................................1

CPLR §308(2) and (4) ............................................................ 27

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.
("FDCPA") ............................................... 1, 5, 6, 24, 36, 40

Fed. R. Civ. P. 23 ................................................ 17, 20, 42, 43, 45

Fed. R. Civ. P. 23(a) ............................................... 18, 19, 42, 43

Fed. R. Civ. P. 23(a)(2) ................................................... 19, 20

Fed. R. Civ. P. 23(a)(3) ................................................... 19, 20

Fed. R. Civ. P. 23(b) ..................................................... 19, 42, 43

Fed. R. Civ. P. 23(b)(2) ............................... 1, 2, 3, 15, 17, 42, 43, 45, 46, 47

Fed. R. Civ. P. 23(b)(3) ............................... 1, 2, 3, 15, 18, 42, 43, 48, 51, 53

Fed. R. Civ. P. 23(f) ................................................................... 1, 2

New York's Consumer Protection Act, General Business
    Law § 349 ("CPA") ...........................................................5

New York Judiciary Law § 487 ........................................................5

Racketeer Influenced and Corrupt Organizations Act,
    18 U.S.C. §§ 1961-1968 ("RICO") ................................... 1, 5

# Jurisdictional Statement

### A.    Basis for Court's Jurisdiction

Plaintiffs brought this action pursuant to the 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and 18 U.S.C. §§ 1961-68 alleging plaintiffs were the victims of a scheme to deprive them of due process and fraudulently obtain default judgments against them.  Supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs further demand declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### B.    Basis for the Court of Appeals' Jurisdiction

This appeal is brought in the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f) as an interlocutory appeal from a decision of the United States District Court, Southern District of New York.

### C.    Statement of Filing Dates Establishing Timeliness

A memorandum decision and order of the Honorable Denny Chin certifying granting the motion to certify two classes under Fed. R. Civ. P 23(b)(2) and 23(b)(3) by Plaintiffs was dated and entered on March 27, 2013.

A petition for leave to appeal was filed in the United States Court of Appeals' Second District, and the filing fee paid, on April 10, 2013.  An order

granting leave to appeal pursuant to Fed. R. Civ. P. 23(f) was dated and entered on

July 19, 2013.  Thus, this appeal was timely taken.

**D.    Statement that Judgment is Final**

The Judgment is appealed from a judgment pursuant to Fed. R. Civ. P. 23(f)

granting the motion to certify two classes under Fed. R. Civ. P 23(b)(2) and

23(b)(3) by Plaintiffs.

## **<u>Statement of Issues Presented for Review</u>**

1.      Whether the District Court incorrectly included Defendant-Appellant Samserv[1] as a defendant in the class certified pursuant to FRCP 23(b)(2), limited to equitable relief, that includes "all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Courts and where a default judgment has or will be sought."

*Answer:*

Yes.

2.      Whether the District Court incorrectly included Samserv as a defendant in the class certified pursuant to FRCP 23(b)(3), limited to damages, that includes "all persons who have been sued by the Mel Harris defendants for the Leucadia defendants in New York City Civil Court and where a default judgment has been obtained."

*Answer:*

Yes.

---

[1]      The Defendants-Appellants are identified and defined in the Statement of the Case, *infra.*

## Statement of the Case

Plaintiffs-appellees ("Plaintiffs"), sued the Leucadia defendants (who are buyers of debt), alleging they purchased debts that lacked documentation and retained the Mel Harris defendants (attorneys) to collect the debts by, among other things, hiring Samserv (a process serving company), to engage in "sewer service" to facilitate applications for default judgments.   Plaintiffs moved for class certification and by decision dated September 24, 2012 (SA 1-42.)[2], the District Court included Samserv as a class defendant in two (2) separate classes.  Neither class is properly certified as to Samserv.

This brief is submitted on behalf of Samserv, Inc., its principal, William Mlotok, and individual defendants, Lamb, Mosquera and Andino (collectively, the "Samserv Defendants" or "Samserv"), in support of Samserv's appeal seeking reversal of the District Court's certification decision.[3]

---

[2]    All references to  "JA ___" refer to the Joint Appendix on appeal and all references to "SA ___" refer to the Special Appendix on appeal.

[3]    The individual process servers Lamb, Mosquera and Andino were independent contractors (collectively, the "Independent contractors"), and were not employees, of Samserv, Inc., and were not controlled or directed by Samserv, Inc or its principal.  The District Court's and this brief's reference to service of process by "Samserv" thus alludes to service by the independent contractors.  (Samserv, the Leucadia defendants and the Mel Harris defendants are referred to collectively as "Defendants.")

## **Statement of Facts**

In their Third amended Complaint ("TAC"), Plaintiffs allege that they are debtors who represent the rights of themselves and other New York City residents allegedly damaged by the Defendants' purported violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York's Consumer Protection Act, General Business Law § 349 ("CPA") and New York Judiciary Law § 487.

Plaintiffs generally do not deny that they owe debts but instead seek to avoid repaying them by alleging that Defendants violated their rights in seeking to collect on those debts. Plaintiffs allege that the "Leucadia Defendants" (collectively Leucadia National Corporation and its "alter ego" companies, L-Credit, LLC, LR Credit, LLC, LR Credit 10, 12, 14, 18 and 19 LLC, and their principals) are debt-buying companies that, through counsel, have filed debt collection actions in the Civil Court of the City of New York. Plaintiffs further allege that the "Mel Harris Defendants" (collectively comprised of the law firm Mel S. Harris and Associates LLC, and its principals), file debt collection actions in the Civil Court of the City of New York, including lawsuits brought by the Leucadia Defendants. (JA 141.)

As to Samserv, Plaintiffs allege that it: (i) is a process serving agency regularly engaged in the business of collecting consumer debts by assisting the

other defendants in this case to file and maintain civil debt collection lawsuits and obtain default judgments in those cases by utilizing the mail, telephone and internet; (ii) regularly collects, directly or indirectly, consumer debts; and (iii) is a "debt collector" as defined by the FDCPA.  (JA 148-149.)

Plaintiffs  further allege that appellants William Mlotok (Chairman and CEO of Samserv) and Defendants Benjamin Lamb, Michael Mosquera, and John Andino (individuals who work or worked for Samserv as independent contractor process servers) are also allegedly "in the business of collecting consumer debts" and are "debt collectors" as defined by the FDCPA.  (JA 149-150.)

Plaintiffs allege that the Leucadia and Mel Harris Defendants secured default judgments in consumer debt actions by, *inter alia*, filing false affidavits of service as well as false affidavits of merit.  (JA 142.)  After allegedly fraudulently obtaining default judgments, "defendants" supposedly restrained bank accounts, garnished wages, threatened to seize personal property and/or pressured people into unaffordable payment plans.  (JA 142.)[4]

As to the relationship between and among Defendants, Plaintiffs   allege that: (i) the Samserv Defendants engaged in "sewer service;" and, (ii) the Mel

---

[4]     Although Plaintiffs make this allegation generally against all "Defendants," Plaintiffs do not actually allege that Samserv itself played <u>any</u> role in actually collecting debts through the restraint of bank accounts, garnishment of wages, or other related activities.

Harris Defendants regularly hired Samserv to serve process in debt collection actions that regularly resulted in default judgments for the plaintiffs' failure to appear, allegedly as the result of sewer service. (JA 141 and 163).

## Summary of Argument

Samserv respectfully submits that it is not a proper class defendant as the claims against it are not amenable to resolution on a class wide basis. Samserv had absolutely no connection with any of the documents or mechanisms used to actually collect the subject debts, which documents or mechanism the District Court found to be somewhat "uniform." (SA 32.)

To the contrary, Plaintiffs' case against Samserv rests squarely upon tens of thousands of case-by-case inquiries and unique traverse hearings that will be necessary to determine whether each debtor/class member received notice of an action brought by Leucadia through personal service, substitute service, or whether that individual did not receive notice due to any of a number of inadvertent errors that occur during the course of service of process (or even through what Plaintiffs allege are intentional efforts of certain independent contractor retained by Samserv.)

In sum, there are absolutely no "common" or "typical" claims raised against Samserv. In point of fact, Samserv did not even serve process on more than half the putative classes. How, then, can the class members have any "common" or

"typical" claims against Samserv when Samserv was a complete stranger to that class member?

## Preliminary Statement

As discussed further below, black letter law mandates that a Circuit Court reverse a certification of a class where such certification "rests on an error of law . . . or a clearly erroneous factual finding, or . . .its decision . . . cannot be located within the range of permissible decisions." *Spagnola v. Great Northern Ins. Co.*, 2013 U.S. App. LEXIS 17555, 2-3 (2d Cir. N.Y. Aug. 22, 2013). (Citations omitted.)  Courts have consistently held that class certification is improper where claims are based on individualized assessments, misrepresentations, or warnings.[5]

Here, the  Plaintiffs' cases against Samserv as a class defendant must rest squarely upon instance-by-instance individualized assessments and thousands upon thousands of unique traverse hearings that will find facts to determine whether each debtor/class member received notice of an action brought by Leucadia through personal service, substitute service, or whether that debtor/class member did not receive notice due to any of a number of inadvertent errors that sometimes occur during the course of service of process or the preparation of the affidavits of

---

[5]    *See, e.g*., *Lewis v. Lucent*, 211 F.R.D. 228 (S.D.N.Y. 2002) (denying class certification because defendants' alleged representations to multiple consumers (the putative class members), did not exhibit sufficient indicia of commonality).

service, or even through what Plaintiffs allege are intentional efforts of certain independent contractor retained by Samserv.

Manifestly, class certification is improper in cases such as this where individual inquiries must be made about: (i) whether service of process on the debtor/class member was legally sufficient and whether the debtor/class member received actual notice  (ii) the steps taken by the debtor/class member and/or Mel Harris after service was made but before the default was entered; ; (iii) whether the debtor received the mandated additional notice sent by the Court (not Samserv) before the default was entered[6]; and (iv) whether the debtor/class member owed the debt or had some valid defense to the claim.

The only commonality among the putative debtors/class members relating to service of process is that the District Court will need to conduct thousands of fact specific traverse hearings and inquiries into the circumstances underlying each of the underlying defaults and review every single instance of service to determine whether service was proper and what, if anything, the debtor/class member did after getting notice of the claim being brought against him or her.

---

[6]    Specifically, during the time period that includes both classes, defaults were entered *only after* the Civil Court also served on debtors its own notice of the action since 23 NYCCRR Sec. 208.6(h) requires the Clerk of the Court to independently alert debtor defendants about the existence of a debt collection action. This notification, sent directly from the Court, has been required since April, 2008 and a default judgment cannot issue without it.  (JA 161.)

Samserv respectfully submits that the District Court improperly included it as a class defendant by beginning its analysis with an admittedly common "end" (i.e., debt collections following default judgments) and then concluding, without basis in law or fact, that: (i) Samserv served process in such a uniform way that class treatment was the best way to litigate the claims against Samserv; and (ii) Samserv consistently engaged in "sewer service" vis-a-vis both classes.

In contrast, and without suggesting that Leucadia or Mel Harris *are* proper class defendants, the District Court held that the documents used to procure default judgments, i.e., the affidavits of merit, *were* fairly standardized.[7]    Notably, Samserv had nothing whatsoever to do with these affidavits of merit or any other documents or procedures used to obtain any default judgment and no party contends that Samserv played any role at all in connection with those affidavits of merit.

The District Court itself demonstrated conclusively that Samserv is not a proper class defendant when its own calculations and findings proved that Samserv did not even serve process on more than half of each class, which would obviously preclude any common relationship among class members as to Samserv. To be

---

[7]    The affidavit of merit is prepared by counsel, here, Mel Harris on Leucadia's behalf, that attests to the facts, as understood by Leucadia and its counsel, that the debt that is the subject of the collection action is, in fact, a *bona fide* debt owed by that specific debtor.

precise, the District Court noted in its class certification decision that, although Mel Harris filed 124,838 cases on behalf of its client, Leucadia, Samserv was tasked to serve process in only 59,959 or 48% of them. (SA 6.)  Nevertheless, the District Court held that Samserv was a proper class defendant, and any debtor to Leucadia would somehow be a legitimate member of one or both classes with liability potentially running against Samserv, even if Samserv had <u>not</u> been asked to serve that particular debtor.

Samserv respectfully submits that, as a matter of both law and common sense, there simply cannot be either "common" or "typical" issues about service of process by Samserv where Samserv did not even attempt to serve process on a debtor/class member.

Ignoring the fact that Samserv did not even serve process on over 50% of the members of the putative classes, the District Court instead focused its attention on 1% and concluded, based on its "analysis" of those minor fractions, that Samserv was a proper class defendant.  Specifically, the District Court rested its conclusions against Samserv on contentions raised concerning 517 identified instances of allegedly "questionable" service out of the 94,123 cases in which Samserv served process for Mel Harris and the 59,959 cases in which Samserv served process in

cases brought by Mel Harris on behalf of Leucadia. (SA 6.)  This results in an "error rate" on "Leucadia" cases well under 1%.[8]

Claims of "sewer service" could -- theoretically -- form a basis for certification of a proper class if Samserv made no attempt to: (i) serve anybody; or (ii) serve the vast majority of putative class members.  But that is *not* the case here. The District Court's own opinion does not mention, let alone challenge, service of process in 99% of the potential class members. In other words, 99% of services by Samserv in Leucadia cases are free of any facial irregularity.  Plainly, the existence of possible "inconsistencies" in 1% of the relevant cases falls far short of presumptively demonstrating that 100% (or even a majority) of the services of process posed issues that were so "common" and so "typical" of each other that class certification was warranted.

The District Court also erroneously reasoned that the sheer number of default judgments implies there "must have been" sewer service. (SA 7.) However, the mere fact that a default judgment was entered in any particular case cannot establish that "sewer service" was used in *any*, let alone *every,* case in

---

[8]    In fact, even this 517 figure is inflated.  Specifically, the District Court included in this figure instances where a process server was allegedly at two locations at the same time, an obvious impossibility.  However, there is no reason to conclude that the process server was at neither location.  Instead, it is more reasonable to conclude that an error accounts for the entry regarding the second location.  Thus, the 517 figure may, in fact, be too large by half.

which Samserv served process for Mel Harris in connection with a debt owed to Leucadia.

Default judgments can be entered as a result of myriad individualized factors that have <u>nothing to do</u> with Samserv (or with whether service of process was effected properly), including but not limited to: (i) the failure of a person who properly receives a summons served by substitute service to forward it to the defendant/debtor; or (ii) a defendant/debtor's deliberate decision to ignore the process. The District Court held that, despite many of the alleged class members admitting they likely owed the debt, the existence of the underlying debt was of no consequence in this matter. (SA 31.) It stands to reason, then, that a debtor/class member may very well have elected to ignore proper service because he or she owed the debt and chose not to incur extra legal expenses to challenge a legitimate debt if it would only cost them additional fees. In such scenario, the debtor/class member suffers no harm at all by entry of a default judgment as the debt is legitimately owed. There is simply no causal nexus that connects Samserv with any "harm." But each such case will only be identified by an individual determination or a case-by case basis.

Class certification was also improper because the facts that would tend to prove attempted service, as well as potential avoidance of service, also necessarily

inject individual issues of causation as to whether the Independent Contractors played any role in a purported scheme to deprive debtors of notice.

The resulting certification of classes now entangles Samserv in this litigation even where Samserv was not involved with service of process. The class definitions make no mention of Samserv's putative involvement with service of process, although the record is clear that Samserv was not involved in most of the cases in the classes. For this reason alone, this Court should reverse the District Court's decision to certify the classes as to Samserv so that it may extricate itself from the burden and cost of prolix class action litigation, especially when it played no role in many of the contested cases.

Certification of classes as ordered below is not merely improper but is fundamentally unfair as to Samserv in at least two ways. First, it places Samserv in jeopardy of liability to debtors/class members who cannot even have any valid claim against Samserv because it is beyond dispute that Samserv was never even asked to serve process on them and can have no liability to them. Second, the class mechanism will inexorably and unduly impairs Samserv from defending itself against each debtor/class member individually as the improper class certification creates an aura of commonality when none exists, especially as to Samserv. Any restriction on Samserv's rights to fully contest whether service was proper or improper or whether service simply involved innocent errors that clearly do not

constitute "sewer service" would be fundamentally unfair and would violate Samserv's rights to due process. Similarly, any restriction on Samserv's rights to fully contest whether the debtors/class members received actual notice from the Courts or that the debtors/class members in fact acknowledge the debt and that the default judgment caused no damage whatsoever to any of the class members would also be fundamentally unfair.

Samserv respectfully submits that the District Court erred in certifying each of the two classes and in finding that the putative classes share common questions of law or fact vis-à-vis Samserv. [9]

### The Two Classes

The District Court certified one class pursuant to FRCP 23(b)(2), limited to equitable relief, that includes "all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Courts and where a default judgment has or will be sought." (SA 39.) The second class, certified pursuant to FRCP 23(b)(3), is limited to damages, and includes "all persons who have been sued by the Mel Harris defendants for the Leucadia defendants in New York City Civil Court and where a default judgment has been obtained." (SA 40.)

---

[9]    By arguing that the District Court improperly included Samserv as a class defendant, Samserv does not suggest that either Mel Harris or Leucadia are proper class defendants and joins in their arguments to the contrary.

Strikingly, neither class definition even mentions Samserv and neither is limited to cases in which Samserv was the process server. As such, neither class shares "common" or "typical" questions of law or fact as concerns Samserv. Instead, Samserv is a virtual stranger to most of the class members.

## **Standard of Review**

Circuit courts apply the "abuse of discretion standard both [to] the lower court's ultimate determination on certification of a class as well as to its rulings that the individual Rule 23 requirements have been met . . . and the [c]ourt will only find "abuse" when the district court's decision rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions." *Spagnola v. Great Northern Ins. Co.*, 2013 U.S. App. LEXIS 17555, 2-3 (2d Cir. N.Y. Aug. 22, 2013). (Citations omitted.)

In *Spagnola*, this Court reiterated that "[t]he parties seeking class certification . . . bear the burden of establishing the evidence that each of Rule 23's requirements has been met" and that where any of these "individual elements" are lacking, class certification was not proper. *Id*. at 3.

Circuit courts are not reluctant to overturn a district court's certification of a class where these high standards are not met. Thus, in *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. N.Y. 2006), this Court reversed the District Court's certification of a class where, rather than

finding that each Rule 23 factor was met, the district court applied an improper "lesser standard" and certified a class after the plaintiffs made only "some showing" that each requirement had been met.  Id. at 27.

Here, the District Court included Samserv as a class defendant based, at best, on only "some" support for the proposition that class issues predominated vis-à-vis Samserv.  For example, the District Court included Samserv as a class defendant even though Samserv only served "some" but not all (or even most) of the putative class members.  Likewise, the District Court included Samserv as a class defendant even though the District Court only noted "some" (and, at 1%, a very small "some" it was), instances of possible irregularities with the services of process. (SA 6-7.)

Likewise, in *Cuevas v. Citizens Financial Group, Inc*., 2013 U.S. App. LEXIS 10737 (2d Cir. 2013), this Court vacated a district court's certification of a class.  There, the issue presented for class resolution was whether the primary duties of *all* assistant bank managers were sufficiently similar one to the other such that they could be included as a common class.   This Court faulted the district court for ignoring evidence that showed that the duties were not similar.  *Id* at 5.

As this Court held in *Cuevas*, the district court had failed to properly acknowledge or address the "factual disputes" relevant to 23(a)(2)'s commonality requirement, which disputes went to the heart of whether or not the claims were "capable of class wide resolution." *Id* at 3.

This Court likewise held that in *Cuevas* these factual disputes meant that the district court had erred in concluding that the Rule 23(b)(3)'s predominance requirement was satisfied. Specifically, even though some evidence suggested that all the assistant bank managers were treated the same (i.e., that common issues "predominated"), conflicting evidence demonstrated that defendants there treated these employees individually. *Id* at 5.

Here, the District Court failed to address the fact that the service of process is, by its very nature, an individualized process. Service in some instances is effected directly on the named party with no intermediary. In other circumstances, a defendant is served via substitute service which itself, includes a variety of court-approved methods. Even after these individual service efforts are complete, many of the subject debtors/class members received an additional notice of the pending debt collection action separately from the Civil Court, not from any appellant, yet the debtor/class member often still failed to appear. As in *Cuevas*, these factual issues demonstrate that class certification here was improper because the question of 'how' each class member was served must be resolved prior to any class certification. As this Court held in *Cuevas*, "[t]hese factual disputes are relevant to the determination whether [plaintiff] has presented a claim that is capable of class wide resolution, and, to the extent they are material, must be resolved before a Rule 23(a) determination may be made. *Id* at 4.

## ARGUMENT

### POINT I

### THE TWO CERTIFIED CLASSES DO NOT SHARE "COMMON" OR "TYPICAL" QUESTIONS AS CONCERNS SAMSERV AND, THEREFORE, SAMSERV IS NOT A PROPER FRCP 23(a) CLASS DEFENDANT

Fed. R. Civ. P. 23(a) provides that class certification is appropriate only where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  If, and only if, the court determines that the requirements of Fed. R. Civ. P. 23(a) have been met must it then decide whether the class complies with one of the subsections of Fed. R. Civ. P. 23(b).

The commonality and typicality requirements tend to merge into one another so that similar considerations animate analyses of both Rules 23(a)(2) and (3). *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).   Specifically, the commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class. *See In re "Agent Orange" Prod. Liability Litig.,* 818 F. 2d 145, 166-67 (2d Cir. 1987).  The "typicality requirement is satisfied when each class member's claim arises from the

same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . irrespective of minor variations in the fact patterns underlying the individual claims."    *Robidoux v. Celani*, 987 F. 2d 931, 936-37 (2nd Cir. 1993).

However, in determining, *inter alia*, whether "typical" or "common" questions are shared by the proposed class, Rule 23 contains what has been characterized as an "implicit requirement" that the proposed class be "precise, objective and presently ascertainable."    *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) (holding that it is 'elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."). "[A] proposed class must be clearly defined so that it is 'administratively feasible . . . to determine whether a particular individual is a member.'" *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001) (*quoting Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y. 1983)).

Here, the District Court erroneously determined that Plaintiffs satisfied the requirements of Rules 23(a)(2) and (3).  That is, the District Court held that any issue any class member had with or against Samserv was "common" to any such claim or issue had by every other class member.  (SA 29.) Likewise, the District

Court concluded that any challenge that a class member might make against Samserv was "typical" of any claim that any other class member might raise.  (SA 32.)

Samserv respectfully submits that the District Court's conclusion was in error and should be reversed.

### A. Samserv Did Not Serve Process on Most of the Putative Class Members

As a threshold matter, one glaring and overarching fact requires a finding that "common" or "typical" questions or law or fact regarding service of process do not predominate among the proposed class.  The lynchpin for Plaintiffs' contentions about the alleged "scheme" in which Leucadia, Harris and Samserv purportedly participated involves allegedly improper service of process.  But the District Court itself acknowledged and concluded that Samserv did not serve process on more than half the possible class members when it noted that although Harris acted as counsel for Leucadia in over 124,000 cases, Samserv served process for Leucadia cases approximately 60,000 times.  (SA 6.)

By including Samserv as a class defendant in cases in which it was not the process server, the District Court ignored the fact that although the only process server named as a class defendant is Samserv, the two classes are not limited to debt collection actions where Samserv was the process server.

In other words, the class members cannot possibly share even the most fundamental of the supposedly "common" or "typical" issues regarding Samserv, because Samserv had no connection whatsoever with more than half of each of the two classes.

Similarly, the individual plaintiffs are not "typical" since their individual cases involved the defendants served by independent contractors of Samserv, whereas other members of the class do not share that crucial element. Debtors/class members cannot possibly articulate "common" or "typical" issues about Samserv's service of process if Samserv was not even asked to serve process upon them.

Members of a putative class, who were not subject to the wrongful act alleged, simply do not belong in a class that seeks to remedy such wrongful act. In this regard, it is fundamental that a plaintiff must have standing to sue. "The actual injury requirement is no less applicable to a class action than to other suits." *MacNamara v. City of New York*, 275 F.R.D. 125, 140 (S.D.N.Y. 2011). In *MacNamara*, numerous protestors and bystanders filed suit against various state and city entities alleging violations of civil rights, including their First Amendment Rights. The Plaintiffs moved for class certification, including numerous subclasses based on the location, date and time of the arrests.

The court in *MacNamara* held that one of the plaintiffs (Ali-Khan), lacked standing to sue because she admittedly was not a protestor or observer and therefore was not exercising her first amendment rights. As such, the court determined that she was not a proper member the class under consideration. Stated another way, this plaintiff was not subject to the same wrongful act as the others in the class and could not, therefore, be included in the class.

Similarly in the case at bar, more than half of the class members did <u>not</u> suffer any harm as a result of Samserv. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-626 (U.S. 1997). (Citations omitted.) The class representatives may allege to have suffered harm as a result of Samserv's actions, but 52% of class members did not suffer the same harm as they have no relationship to Samserv whatsoever. By certifying the class with respect to class members for whom Samserv was not the process server, the District Court created a class of individuals with diverse and inconsistent interests. Ergo, more than half of the purported class members have interests either strikingly dissimilar to or adverse to the class representatives. Even if the debtor/class representatives were somehow able to show Samserv failed to serve certain debtor/class members, this determination would have no bearing on the majority of the debtor/class members and their respective claims.

### B. Samserv's Services of Process on the Named Plaintiffs Was Neither "Common" Nor "Typical"

Samserv readily avers that it served process on the named Plaintiffs. However, as discussed below, these Plaintiffs' challenges to service, and Samserv's responses to these challenges are neither "common" nor "typical" but are, instead, highly fact specific. This lack of typicality or commonality amongst and between the various services of process demonstrate that Samserv was improperly included as a class defendant.

A class action, including under the FDCPA, can only be brought where there are *bona fide* "typical issues" or "common questions" of law and/or fact that predominate. For example, in *Harrison v. Great Springwaters of America, Inc.*, No. 96-CV-5110, 1997 WL 469996 (E.D.N.Y. 1997), plaintiffs received similar, if not identical, letters from the defendant seeking to collect on debts. The Court held that class certification was proper since there was a single approach (the challenged collection letter), that defendant implemented regarding all the FDCPA plaintiffs. In other words, the challenged conduct there was demonstrably common to all the class members.

Here, although the District Court (and Plaintiffs ) use the blunderbuss phrase "sewer service" to suggest that Samserv took a "common" approach to service of process, in contrast to the case cited above, which relied on substantially uniform conduct by a defendant, the particulars of the record evidence already adduced as

24

to the experiences of the class representatives proves that each was the subject of non-uniform conduct with regard to service of process and none was the subject of sewer service.

Leaving aside the merits, if any, of Plaintiffs' claims that the Leucadia or Mel Harris defendants utilized similar debt collection procedures, what is absolutely clear is that there is virtually no "commonality" regarding service of process nor is there any "typical" fact pattern about service of process. Inquiry into Samserv's efforts to serve process on the thousands of cases wherein service is facially sufficient can only be made through the individualized scrutiny of each class representative and class member, with complex permutations of personal and substituted service on a case-by-case basis.

Likewise, the class representative's claims cannot be described as "typical" of the class as a whole because each representative's claim vis-à-vis Samserv vary considerably and meaningfully. Contrary to the District Court's decision, the particular factual constellation of the claims of each of these class representatives do not imply, let alone "demonstrate," that Samserv conspired to engage in "sewer service" to avoid service on each debtor/class member. In fact, not one of the claims of the class representatives can support a claim that Samserv engaged in "sewer service" at all. Rather, the experiences of each debtor/class representative amply supports the fact that a traverse hearing for each debtor/class member will

be required to determine whether service of process was proper as to each debtor/class member.

By way of example and provided in more detail below with regard to the class representatives:  (i) Mr. Armoogam was properly served by personal service through substitute means; (ii), Ms. Sykes did in fact reside at the service location; and (iii) Mr. Kelvin Perez's testimony presented a case of possible mistaken identity.  In addition, despite earlier contentions in the TAC to the contrary regarding the propriety of service on class representative Veerabadren, she admitted she was not home at the time of service.  In other words, many of the allegations in the TAC that supposedly "supported" claims of "sewer service" were simply incorrect.

**Clifton Armoogam:** Service was made on Mr. Armoogam via the recognized method of substitute service. (JA 541.) Although Mr. Armoogam alleged that he did not live at the service location, multiple documents show that he did. (JA 543-584 and JA 586.)  Mr. Armoogam also conceded that, as opposed to the suggestion in the TAC that only his sister lived at the service location, three families actually lived there.  (JA 800-802.)  Thus, proper service was made on Mr. Armoogam via service upon one of the other inhabitants at the address where records show that he lived.  Service at a three-family home, where Mr. Armoogam's sister lives and where records show that he lived, does not come

close to the TAC's unjustified allegations of "sewer service."  Rather these facts entirely comport with the method of service as allowed pursuant to New York practice and specifically authorized by CPLR §308(2) and (4).

Likewise, Mr. Armoogam's case is neither "typical" nor "common" is because Mr. Armoogam might have been the victim of identity theft.  (JA 808-809.)  If true, it is curious that no police report or complaint regarding "identity theft" was ever produced.  In any event, alleged identity theft is not a "fact" that is, presumably, "common" to the entire proposed class or any recognizable subset thereof.

**Monique Sykes**: Ms. Sykes confirmed that she: (i)  lived at the service location; (ii) does not know what she was doing on the day of service; and (iii) does not know everyone who lived on her floor or in her building.  (JA 643, 658, and 717-718.)  Service was made through an individual who identified herself as "Ms. Rolanda."  (JA 588.)  Although a traverse hearing might be warranted to review whether this particular fact pattern constituted proper service, there are no indicia of "sewer service."

**Kelvin Perez:** Service was made by affixing to his door a copy of a Summons and Complaint.  Although Mr. Perez alleged in the TAC that he never lived at the service address (JA 176) public databases reveal that a Kelvin Perez in fact lived there. (JA 592.)  Moreover, these same databases show that the owner of

27

the property was a "Nilda Ortiz" (JA 594) and that she commenced a lawsuit against a person named "Kelvin Perez." (JA 596.)   Assuming that the "Kelvin Perez" who lived at, and was sued by the owner of, the service address, is not the plaintiff, such scenario does not suggest an intentional "scheme" to deprive a plaintiff of his day in court.  At worst, it reflects a simple good faith error based on mistaken identity.

**Rea Veerabadren:** Ms. Veerabadren conceded not only that the service address is her correct domicile  (JA 860-861)  but also that service was made there via service on an individual who identified himself to the process server as "Mr. Victor."  (JA 598.)  Although the TAC alleged that Ms. Veerabadren could not have been served because she would have been home when service was allegedly made and "no process server came to her door" (JA 171), she  admitted under oath that, while she did not know where exactly she was, at the time of the service,  it was likely that she would not have been home at the time of the alleged service and could still have been at work.  (JA 837 and JA 879-881.)

In addition, the named representatives -- and other class members -- ignored independent notifications about the pending default.

In sum, each of the aforementioned cases presents its own set of individualized facts and, not surprisingly, starkly evidences the lack of "common" or "typical" issues involving methods allegedly used on behalf of Samserv for

service of process.  Although a traverse hearing might be warranted to review whether service was proper in any given case, there is no indication that there was any intentional misconduct regarding service of process with regard to any named class representative.  The details regarding service of process as they relate to the individual plaintiffs, let alone the tens of thousands of class members, are separate and unique.  The District Court would have to conduct scores of traverse hearings to review each case of service of process, demonstrating that Samserv is not proper class defendant.

The *sui generis* nature of whether or not service was made, is fundamentally different from a dispute concerning the exact amount of money owed, as the latter dispute may not necessarily preclude class certification.  For example, consider a scenario where one debtor claims that they did not owe any money at all, another debtor claims that they only owed some of the money, and still a third debtor claims that she is actually owed money from the alleged creditor.  These distinctions may not be so disparate as to defeat class certification where the *means* by which the alleged debt was established is common and typical to each putative class member.  In contrast, where the issue is where a particular attempt at service was proper, in that situation there is neither commonality nor typicality since the method of service varies dramatically for each nominal class member.

### C.    Samserv's Services of Process on the Unnamed Members of the Classes Was Neither "Common" Nor "Typical"

Manifestly the allegedly deficient services of process were not "carried out in a uniform manner nor did they have a "similar impact upon class members." *See*, *Lewis v. Lucent*, 211 F.R.D. 228 (S.D.N.Y. 2002). Instead, the proof regarding service upon class representatives was challenged based on a variety of theories. Plaintiffs' attempts to label each situation as "sewer service" does not disguise the fact that each instance of service was *sui generis*.    Alleged identity theft (Armoogam) is vastly different from possibly serving the "wrong" individual who shared the name as the debtor (Perez) and both situations differ materially from cases in which a debtor denied living at particular address, despite records demonstrating that they <u>did</u> or in which a debtor changed her story in discovery as to where she was when service was made (Sykes and Veerabadren).

Lacking <u>any</u> *facts* demonstrating a "common" (or "typical"), pattern of service in cases where the Independent Contractor served process, the District Court relied on the statistical analysis prohibited by *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) There, the lower court held that, because a common "end" was shared by the class (i.e., pay differentials between males and females), a common "means" must have been used (i.e., "common" discriminatory policies.)

The United States Supreme Court rejected that supposition, holding that, even if the "end" (pay discrepancies) were the same, the "means" was not common, thereby precluding class certification. Specifically, the Supreme Court stated that "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551. In *Wal-Mart Stores, Inc.*, the U.S. Supreme Court vacated the lower court's decision to certify the class because proving intent among the myriad individuals who were employed by Walmart and who made the challenged personnel decisions constituted the crucial step in establishing liability for the alleged harm. Id. at 2555-56. Inquiring into the intent of each and every supervisor of a class of national employees defeated the purpose of class certification.

Here, in the context of holding that there were "common" elements to the class-wide claims (SA 28), the District Court discounted Defendants' arguments that many of Plaintiff's' claims required an individualized showing of improper "intent" or course of conduct. The District Court erroneously determined that Samserv's course of conduct was sufficiently uniform to so as to defeat the need for Plaintiffs to establish individualized intent and particularized improper conduct.

Instead, according to the District Court, "intent" could be inferred from an allegedly "uniform" course of conduct.   However, as *Walmart*, *supra*, instructs, such an attempt to infer "improper intent" on a class wide basis, predicated solely on a uniform outcome, is improper since the actual actions that led to the uniform results were unique and discrete.

Even a brief review of the alleged "irregularities" that the District Court found so damning indicates that they cannot form the basis for including Samserv as a class defendant.  The <u>entire</u> basis for the decision including Samserv as a class defendant was that "hundreds of instances" in Samserv's records raised "red flags," such as notations indicating that process had been served in two locations at the same time or at two locations with supposedly insufficient time to get from one location to the other. (SA 6-7.)   Although "hundreds of instances" *sounds* significant, these are negligible compared to the number of services Samserv's Independent Contractors performed, and *about which no complaint or question was raised*.

The District Court's rationale for including Samserv as a class defendant improperly fixated on a vanishingly minute subset of data and ignored the overwhelming totality of Samserv's services of process.  Specifically, the District Court focused on 517 instances of "questionable" service but noted that Samserv served process for Mel Harris in 94,123 cases, which equals an "error rate" of

approximately one-half of one percent.[10]    Stated otherwise, Plaintiffs made no showing at all of facial irregularity in service of process in the overwhelming majority of Samserv's service of process.  **Thus, the District Court ignored over *99% of service by Samserv in Leucadia cases.***  Samserv respectfully submits that there simply was no basis to certify a class based on "hundreds of instances" of alleged anomalies when 99% of the class members do not share that issue.

In contrast, in its decision certifying the two classes, the District Court dealt at great length on the *affidavits of merit[11]* and the routine manner in which *those documents* were prepared as support for the contention that "intent" could be inferred from practice and statistics.   As discussed above, Samserv had <u>no</u> connection with any of these affidavits of merit.

This point is analogous to class actions that involve consumer-oriented transaction which fall roughly into two camps.  In one, there is a memo or document that is disseminated to the consumer and is a uniform communication between the defendant and consumer.  That is susceptible to class treatment as the communication is identical throughout each class member's case.

---

[10]    Samserv refers this Court to the material presented to the District Court, showing that standard data entry "error rates" range between 3 and 5%.  <u>See</u> "Quality Inspection Processes in Residential Construction," (Gravitt, Indiana State University, JA 600-608, computerized data entry error rate of 0.397% compared to manually entered data entry error rate of 3.87%.

[11]    *See*, fn. 4, *supra*.

However, the second type of case is one where oral communications are made or where the communications made to each and every plaintiff/class member are perhaps similar and perhaps not. In those cases, there must be fact finding about what was said and how it was relied on (or not), by the consumer. This second category is not susceptible to class treatment. *See*, *Kowalski v. Yellowpages.com*, LLC, 2012 U.S. Dist. LEXIS 46539 (S.D.N.Y. 2012). There, plaintiffs were business owners who alleged that they were fraudulently induced to enter into contracts with YellowPages.com for advertising services in violation of the New Jersey Consumer Fraud Act. Class certification was denied as the answers to the allegedly common questions posed "will vary widely, because they turn on the oral representations made to each putative class member, the particular products purchased, the nature of the advertiser's business, and the advertiser's experience with the product or group of products purchased."

This second category is analogous to the case at bar where the actions of the Independent Contractors will have to be scrutinized separately in each case because Samserv had no connection with the "form" affidavits of merit. Therefore, Plaintiffs' claims against Samserv based solely on service of process will require a showing : (i) that an independent contractor was retained by Samserv to effectuate service; (ii) the specific means by which a particular process server attempted – or allegedly attempted – to complete service in a given situation; (iii)

that the process server failed to serve the papers;  (iv) the process server intended to fail at serving process so as to deny the debtor/class member due process; and (v) that the debtor/class member suffered harm thereby.

Plaintiffs' claims are not proper for class certification despite the purported uniformity of the affidavits of merit, which were neither prepared nor filed by Samserv. The claim of each debtor/class member will be the subject of mini-trials and/or traverse hearings to establish whether service was deficient.  Preventing Samserv from defending the allegedly deficient services of process, simply because a default judgment was obtained, would be a manifest miscarriage of justice since it is fundamental that, if a respondent denies having been properly served, the process server has the opportunity and obligation to establish jurisdiction by a preponderance of the evidence at a traverse hearing."  *See*, *650 Fifth Ave. Co. v Travers Jewelers Corp.*, 29 Misc. 3d 1215(A), 1215A (N.Y. Civ. Ct. 2010).

In accord is *Oakley v. Verizon Communications*, 2012 U.S. Dist. LEXIS 12975 (S.D.N.Y. 2012), in which plaintiffs sought to certify a class of employees who were denied benefits. Class certification was denied because, although the class members all might have been denied benefits, the *reasons* why they were denied were *not* "common." *Id.* at 39.  Different policies harmed class members individually.

Likewise, in *Morangelli v. Chemed Corp.*, 2013 U.S. Dist. LEXIS 14873 (E.D.N.Y. 2013), the putative class issues involved, *inter alia*, allegations that defendant "shaved the time" of employees, thereby lowering their pay.  In decertifying part of the class, the court noted that "Defendant's right to proffer innocent explanations for modified time entries . . . will almost inevitably result in mini-trials on each instance of alleged time-shaving." *Id.* at 311.

Here, there was no blanket policy that was applied automatically. Rather, each independent contractor had a separate and unique interaction with each debtor during service of process. Numerous "individualized" questions of fact exist as to whether or not process was properly served and, if not, why not.  Even if the FDCPA might have been violated as to each class member, and Samserv emphatically says it was not, does not mean that all violations occurred  in the "same way."

Even a statistically insignificant number of default judgments cannot support the conclusion that there was a "common" practice of "sewer service" that could support a class action against Samserv.  Rather, individual "mini-trials" (traverse hearings), on virtually every instance of allegedly deficient service would ensue, with unique testimony by witnesses of each encounter or attempted encounter, with unique defenses as to each situation, making class proceedings unmanageable.

## D.    *Samserv Did Not Cause the Harm Complained Of*

Debtor/class members must prove that Samserv's acts or omissions <u>caused</u> the injury that each alleges: in this case, the default judgment.  Here, however, the District Court failed to identify any purported "causal link" between Samserv's alleged acts (purported sewer service) on the one hand and the alleged lack of notice to debtors/class members about the lawsuit, entry of default judgment, and the supposed harm caused by the default judgment on the other hand.

To the contrary, and as discussed above, the record indicates that Plaintiffs blithely allowed the debt collection actions to proceed regardless of service of process and despite the presumed receipt of the independent notice sent by the Civil Court.[12]   This separate notice precludes certification of a class against Samserv as each class member now must prove whether they received that notice from the Civil Court and, if so, whether that class member *still* elected not to appear and thereby avoid entry of a default judgment.   In other words, a debtor/class member's refusal to appear in Court, despite receipt of an independent notice from the Court, demonstrates that the debtor's default had nothing to do with Samserv's service of process.

---

[12]     *See*, 23 NYCCRR Sec. 208.6(h), discussed above, precluding entry of a default absent a letter from the Court concerning the existence of the debt collection action.

These factual and legal permutations create a maze of material issues rendering class certification against Samserv not only inappropriate but also unjust.

Moreover, the individually named Plaintiffs' allegations and deposition testimony support the defense by Samserv, *which must be proven on a case-by-case basis*, that the defaults were not caused by allegedly deficient service but, more likely, that class members simply ignored debts and efforts to collect them. For example, Ms. Sykes alleged in the TAC that she did not receive a copy of the underlying complaint in the mail, nor did she receive any correspondence about it, including the independent notice sent by the Civil Court. (JA 161 and JA 169.) However, she admitted during discovery that she received (at the same address as was on the other correspondence), a Marshall's Notice that her property was subject to seizure. (JA 169.)

Moreover, in the TAC, Ms. Sykes admitted that "it is possible" she owes the debt Leucadia sought to collect, but she conceded at deposition that she <u>absolutely</u> owed the debt and, after making some payments, she simply stopped making any payments. (JA 702-704.)

There is another reason why any deficient services of process did not cause any harm to class members. As discussed above, at least some of the individual Plaintiffs, and many debtor/class members, presumably owed the subject debts. Where a debtor owes the debt, and has no valid defenses to the debt, then it is

almost inevitable, that a judgment would have been entered against such debtor even if they had appeared.  In other words, there was no damage caused by the entry of the default.  This inquiry into whether a debtor/class member owed the debt or had valid defenses is, in and of itself, a highly individualized process, ill-suited for class-wide disposition.

The District Court erroneously "inferred" that the number of defaults must be a result of sewer service and that, as a result, Samserv was a proper class defendant.  The District Court perplexingly disregarded the fact that the individual plaintiffs admittedly ignored their debts, misrepresented the facts in their pleadings and, in some cases, admitted to proper service.  Rather, just as the individual Plaintiffs ignored the underlying debts, so, too, they could easily have ignored pleadings and subsequent correspondence.

### E.    Samserv Has Unique Defenses That Preclude Certification

In *Author's Guild, Inc. v. Google, Inc*., 721 F. 3d 132 (2d Cir. 2013), this Court again vacated a class certification decision.  This Court held that the District Court failed to adequately consider the impact of certain defenses, holding that the existence of certain defense might require "individual resolution" and, as such, should be considered as part of the analysis of whether "individual issues" predominate such that class status was warranted.

Here, Samserv has defenses that require "individual resolution," thus demonstrating that Samserv was not a proper class defendant.  These include (but are not limited to) whether or not a particular debtor/class member was served, the intent and practices of each Independent Contractor process server, and whether a debtor/class member chose to ignore service of process.

In addition, only Samserv among all defendants in this case has access to the defense that the FDCPA <u>excludes</u> "any person while serving or attempting to serve legal process . . . in connection with the judicial enforcement of any debt." FDCPA §1692a(6)(D).  Process servers such as Samserv and the Independent Contractors discussed and defined above are thus not "debt collectors" within the meaning of FDCPA.  *McNall v. Credit Bureau of Josephine County*, 2010 WL 466146 *10-11 (D. Or. 2010).

Here, the Independent Contractors served process.  The District Court denied Samserv's pre-answer motion to dismiss, holding (SA16), that Plaintiffs <u>alleged</u> that Samserv intentionally failed to serve process and provided perjured affidavits of service, allegations which Samserv denied.  It is horn book law that, in ruling on a motion to dismiss, the district court must accept as true the allegations in a plaintiff's complaint.  However, there is no related doctrine cited by Plaintiffs or the District Court that, in the context of class certification, a district court must accept every allegation in the TAC as gospel truth.  Rather, "sometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (U.S. 1982).  *See also*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (U.S. 2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011).

As noted above, Plaintiffs allege, without support, that Samserv engaged in "sewer service."  However, when this Court ignores that conclusory claim, all that remains against Samserv is the mere suggestion that a "high number of default judgments" somehow evidences that Samserv engaged in  a widespread pattern and policy of "sewer service."  (SA 7.)  However, contrary to the approach of the District Court, a purportedly "high number of default judgments" -- which, as explained below, is neither a reliable number nor even a high number of default judgments -- based on affidavits of merit that are unconnected to Samserv, cannot support an inference that there was a pattern of "sewer service."

Leaving aside questions of "sewer service,", the District Court held that Samserv was a proper class defendant even where Samserv had properly served the class member.  (SA 29).  The District Court held that, even if service of process on a debtor/class member were proper, there could still be "class questions" about how the debts were collected.  However, Samserv did not collect the debts and so should not bear responsibility for others' acts.

## POINT II

## SAMSERV IS NOT A PROPER FRCP 23(b) CLASS DEFENDANT

As noted above, if, and only if, the District Court determines that the requirements of Fed. R. Civ. P. 23(a) have been met, it must then decide whether the class complies with one of the subsections of Fed. R. Civ. P. 23(b). As argued in Point I, *supra*, Samserv respectfully submits that the preliminary requirements of Rule 23(a) have not been met.  However, assuming *arguendo*, that requirement *were* met, Samserv does not fall into any Rule 23(b) category of proper class defendant.

In the case at bar, the District Court certified the two classes pursuant to Fed. R. Civ. P. 23 23(b)(2) and 23(b)(3).  Rule 23(b)(2) allows for class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Rule 23(b)(3) allows for certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

42

A district court should only certify a class "after making determinations that each of the Rule 23 requirements has been met." *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006). This determination entails a "rigorous analysis," designed to ensure "actual, not presumed conformance," with Fed. R. Civ. P. 23. *Id*. at 33 (*quoting General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61, (1982)). Ultimately, the representatives of the putative class carry the burden to establish these various requirements by a preponderance of the evidence. *See*, *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008).

Rule 23(b) certification requires the same rigorous analysis provided for in a Rule 23(a) examination. In fact, the United States Supreme Court held that the element of predominance is even more demanding than requirements set forth under the Rule 23(a). "The same analytical principles govern Rule 23(b). If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (U.S. 2013).

### A.    *Samserv is Not a Proper 23(b)(2) Class Defendant Because Common Claims Do Not Predominate Among the 23(b)(2) Class*

Against the backdrop of the clear and strict dictates of Rule 23(b)(2), the District Court erred in concluding that Samserv (the "party opposing the class") has "acted or refused to act on grounds that apply <u>generally</u> to the class." (emphasis supplied.) Plaintiffs' allegations against Samserv, adopted wholesale by

the District Court, consist of the talismanic incantation of the phrase "sewer service" with the accompanying implication that Samserv treated <u>all</u> class members in the same way; that is to say, Samserv made no effort to serve anybody at any time.

However, as discussed, there is no basis for this conclusion other than an improper reliance on less than 1% of services of process where there was alleged inconsistencies. To the contrary, the only evidence actually before the District Court – the accounts of the individual Plaintiffs – demonstrate that each instance of service is unique and fraught with substantial factual distinctions one from the rest. The named Plaintiffs run the gamut from possible service on the "wrong" Kelvin Perez, to alleged identity theft (Armoogam), to service on a plaintiff who alleged in the complaint that she would have been home when service was made yet admitted at deposition that she would <u>not</u> have been home them (Veerabadren), to a plaintiff who purposefully decided to ignore a <u>bona</u> <u>fide</u> debt despite repeated reminders (including notice from the Court itself), all sent to her admittedly correct address (Sykes).

Samserv's service of process is tailored to meet the requirements of each separate unique case and each person to be served. The circumstances of the four named plaintiffs do not reflect or represent any "general" pattern that Samserv followed regarding service. Instead, they represent precisely the type of disparate

questions and answers that are embedded in the improper classes created by the District Court.

### B.     *Monetary Issues Predominate Over Possible Injunctive Relief Thus Barring a 23(b)(2) Class*

Rule 23(b)(2) class certification also requires that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." However, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23 Advisory Committee's Note; *See Robinson v. Metro-North Commuter Railroad Co.*, 267 F. 3d 147, 163 (2d Cir. 2001).  Consequently, when the District Court is faced with deciding whether to certify a Rule 23(b)(2) class seeking both injunctive or declaratory relief and money damages, it must determine whether the "injunctive or declaratory relief [sought] predominates," based upon "all of the facts and circumstances of the case."  *Robinson*, 267 F.3d at 164 (citations omitted).

In the case at bar, the monetary relief far outweighs any injunctive relief plaintiffs could seek from Samserv.  Consider first the injunctive or declaratory relief Plaintiffs might request from Samserv.  Notably, Plaintiffs never bothered to specify what form of "injunctive relief" they seek.  The District Court gave short shrift to elaborating on what form of relief predominates in the case at bar.  Essentially, Plaintiffs could seek no more than a reconfirmation that Samserv

would endeavor to ensure that the independent contractors it retains follow all applicable rules and regulations concerning service of process.

It is unrealistic to think that Plaintiffs, or the District Court, would be able to create a uniform set of procedures that would govern service of process different than that already mandated by law. Moreover, Samserv no longer serves process for Mel Harris so any "injunctive relief" is essentially irrelevant.

In contrast, plaintiffs seek an Order requiring Leucadia to disgorge all the monies ever collected in any debt collection action. This sum is estimated to amount to tens of millions of dollars. This disgorgement represents monetary damages not suitable for a Rule 23(b)(2) class. *See*, *e.g*., *Seekamp v. It's Huge, Inc*., 2012 U.S. Dist. LEXIS 33295 (N.D.N.Y Mar. 13, 2012)(holding, in pertinent part, that the relief of "disgorgement" constitutes monetary damage and therefore inappropriate for a Rule 23[b][2] class.)

Moreover, plaintiffs seek monetary damages for each possible debtor/class member, purportedly based on any actual harm they alleged to have suffered as a result of the default entered against them. (JA 220.) Lastly, plaintiff's prayer for monetary damages will inevitably include an application for substantial attorneys' fees, the size of which will undoubtedly reflect the multiplicity of firms and not-for-profit entities that routinely appear together at every deposition and conference.

Thus, this case is about monetary relief, masquerading as injunctive relief and Rule 23(b)(2) certification is improper.

Furthermore, in performing an analysis pursuant to Rule 23(b)(2), the Second Circuit indicated that a district court must consider whether "class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." *Robinson*, 267 F.3d at 164. Here, because the District Court would have to conduct traverse hearings with regard to each debtor/class member whose case presents any challenge to service of process to determine if service was proper, class certification would lead to massive judicial waste, not judicial economy.

Finally, FRCP 23(b)(2) provides that a particular entity is a proper class defendant only if that party "has acted or refused to act on grounds that apply generally to the class." Here, the 23(b)(2) class includes all individuals who either had been sued or might in the future be sued in Civil Court by Mel Harris on Leucadia's behalf where a default has been obtained, or might be sought. Remarkably, the class definition does not even refer to Samserv. This flaw is highly consequential because Samserv was not Mel Harris' sole process server, nor is Samserv serving process for Mel Harris now. Accordingly, there is no possible way that Samserv could conceivably have "acted or refused to act on grounds that apply <u>generally</u> to the class."

In sum, the District Court improperly included Samserv as a Rule 23(b)(2) class defendant.

## C.    *Samserv is Not a Proper 23(b)(3) Class Defendant*

Fed. R. Civ. P. 23(b)(3) allows for class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." This "predominance" requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).The requirement's purpose is to "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F. 3d 91, 104 (2d Cir. 2007) (alteration omitted) (quoting *Amchem*, 521 U.S. at 615).

The foregoing requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F. 3d 1247, 1252 (2d Cir. 2002); *see also In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F. 3d 953, 958 (9th Cir.

2009) (noting that it is "the relationship between the common and individual issues" that the requirement examines (internal quotation marks omitted)).  These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

Here, the District Court failed to perform any real "analysis" of the relationship between, on the one hand, any issues regarding service of process that were truly "common" and could be resolved in a manner that is common to the entire class, and, on the other hand, those issues that were unique to each class member.  Instead, the District Court assumed, without setting forth any showing, that "common" questions of law or fact "predominate" with regard to Samserv and service of process.  In sum, the District Court held that every class member's claim arises out of "uniform" practices concerning affidavits of merit and that "standardized documents and practices often result in the predomination of common questions of law and fact." (SA 36-37).  Tellingly, though, Samserv had nothing to do with the "uniform practices" or "standardized documents," which only concern the affidavits of merit.  Thus, those standardized documents were improperly weighed in the balance as against Samserv when, in fact, they carry no weight at all.

The District Court also held that "in many instances" affidavits of service were filed in support of an application for a default judgment. (SA 25.)  However, there has been absolutely no evidence that services of process (or the affidavits of service process that followed) resulted from Samserv's "standardized documents and practices."  To the contrary, neither the TAC nor the District Court's Opinion set forth any areas of "commonality" regarding service of process other than to regurgitate the phrase "sewer service."

As discussed above, the individual Plaintiffs present wildly different situations regarding Samserv's service of process and there is no possible reason to surmise that the classes, writ large, would share any greater areas of commonality. Mr. Armoogam was served at the address where the Department of Motor Vehicles lists his residence.  Mr. Perez was served at the address where a "Kelvin Perez" surely lived (and was sued by the owner of that property.)  Ms. Veerabadren was served by substituted service when, despite her assertion in the complaint that she would have been home, she actually would have been at work.  Lastly, Ms. Sykes, who matches the description in the affidavit of service denied receiving letters from anyone, including the Court, until the Marshall was ready to seize her property.

Samserv emphasizes that it is not arguing that class certification was improper because the amounts of damages each plaintiff might collect varies one

from the other.   Instead, Samserv respectfully urges that the claims of the individual Plaintiffs regarding service of process are as varied and unique as can be.  These singular and separate stories do not "encompass" any sort of "class-wide claims," even assuming *arguendo* such claims exist.

Furthermore, FRCP 23(b)(3) allows for class certification <u>only</u> if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  The District Court held that a class action was the "superior" method for resolving the litigation due to the "standardized documents" at issue. (SA 38.)   However, the District Court finding only dealt with  "standardized documents" (or standardized procedures), but such documents can only refer to the affidavits of merits: documents unconnected to Samserv.   Accordingly, no finding was properly made by the District Court that a class mechanism was in fact superior with regard to claims brought by the debtors/class members against Samserv.

In addition to the fact that there is no "standard" way that Samserv served process, there is no "standard" way that a debtor/class member's damages could be calculated as concerns Samserv.  In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 2013), plaintiffs presented a damage model based on four possible theories of liability against the defendants.  However, the District Court approved only one theory as suitable for class resolution.  The problem, then, for class certification,

was that a potential class defendant could have damages assessed against it based on one of the three liability theories that were not part of the class action.

The United States Supreme Court rejected the class certification, holding that plaintiffs failed to establish that damages were "capable of management on a class wide basis" and that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." Id. at 1433.

Here, even if Samserv served process on a particular class member with the utmost care, and there were no conceivable way that a challenge could be made to service of process, Samserv could <u>still</u> be charged with damages by reason of its inclusion as a class defendant. Moreover, Samserv has not served process on more than half of each class but could still face damages flowing from that debtor/class member's experiences. Thus, Samserv would face inclusion in the pool of payors where it had absolutely no connection with the allegedly unfair collection of debt supposedly being corrected

This is analogous to the situation in Comcast where a class defendant could find itself facing liability based on theories outside the parameters of the class. Here, Samserv could find itself facing liability based on liability theories unconnected to the reason why a class was certified against Samserv.

Simply put, the damages Samserv could face in the class action as contemplated by the district Court, and based on the record, would be unconnected

to any conceivable measure of Samserv's liability. By certifying a class as to Samserv under Rule 23(b)(3), Samserv is subject to liability to class members even when Samserv was not the process server and/or service of process was properly obtained. Consequently, the District Court incorrectly certified a class pursuant to 23(b)(3) as against the Samserv defendants.

## **Conclusion**

For all reasons stated herein, Defendants Samserv, Inc., William Mlotok, Benjamin Lamb, Michael Mosquera and John Andino respectfully request that this Court issue an Order reversing the District Court's decision that improperly included Samserv as a class defendant together with any further relief this court deems just and proper.

Dated:      White Plains, New York
            September 25, 2013

                              BABCHIK & YOUNG, LLP

                  By:      _____ /s/  Jack Babchik _____
                          Jack Babchik
                          Attorneys for the Samserv Appellants-
                          Defendants
                          200 East Post Road, 2nd Floor
                          White Plains, New York 10601

<u>CERTIFICATE OF COMPLIANCE</u>

Jack Babchik, Esq., attorney for Defendant-Appellant, Samserv, Inc.,

hereby certifies that the brief herein contains 11,952 words and 1,061 lines,

and thus is in compliance with Rule 32(a) of the F.R.A.P.


By:     _____/s/_ Jack Babchik_____

Jack Babchik, Esq.
Attorneys for Defendant-Appellant
Samserv Defendants
200 East Post Road, 2nd Floor
White Plains, New York 10601