# 13-2742(L)

## 13-2747(CON) and 13-2748(CON)

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

MONIQUE SYKES; REA VEERABADREN;
KELVIN PEREZ; and CLIFTON ARMOOGAM,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees*,

v.

MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS;
MICHAEL YOUNG; DAVID WALDMAN; KERRY LUTZ;
TODD FABACHER; LEUCADIA NATIONAL CORPORATION;
L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC;
LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC;
JOSEPH A. ORLANDO; PHILIP M. CANNELLA; SAMSERV, INC.;
WILLIAM MLOTOK; BENJAMIN LAMB; MICHAEL MOSQUERA;
and JOHN ANDINO,

*Defendants-Appellants*,

and

MEL HARRIS JOHN/JANE DOES 1-20; LR CREDIT JOHN/
JANE DOES 1-20; and SAMSERV JOHN/JANE DOES 1-20,

*Defendants*.

On Appeal from the United States District Court
for the Southern District Of New York

**BRIEF FOR APPELLANTS LEUCADIA NATIONAL CORPORATION;
L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC;
LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC;
JOSEPH A. ORLANDO; AND PHILIP M. CANNELLA**

*[cover continued on next page]*

[*cover continued*]

Michael Zimmerman
ZIMMERMAN JONES BOOHER LLC
Kearns Building, Suite 721
   136 South Main Street
Salt Lake City, UT  84101

Lewis Harry Goldfarb
Adam R. Schwartz
MCELROY, DEUTSCH, MULVANEY
  & CARPENTER LLP
1300 Mount Kemble Avenue
Morristown, NJ  07962

Mark D. Harris
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY  10036

Miguel A. Estrada
   *Counsel of Record*
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

Ralph C. Ferrara
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004

*Counsel for Leucadia National Corporation;*
*L-Credit, LLC; LR Credit, LLC; LR Credit 10, LLC;*
*LR Credit 14, LLC; LR Credit 18, LLC; LR Credit 21, LLC;*
*Joseph A. Orlando; and Philip M. Cannella*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel state as follows:

1.     Defendant-Petitioner Leucadia National Corporation has no parent company, and no publicly held corporation owns 10% or more of its stock;

2.     The parent companies of Defendant-Petitioner L-Credit, LLC are PLRC, LLC and Luman, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner L-Credit, LLC;

3.     The parent companies of Defendant-Petitioner LR Credit, LLC are Rushmore Recovery Management, LLC and Defendant-Petitioner L-Credit, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner LR Credit, LLC;

4.     The parent company of Defendant-Petitioner LR Credit 10, LLC is Defendant-Petitioner LR Credit, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner LR Credit 10, LLC;

5.     The parent company of Defendant-Petitioner LR Credit 14, LLC is Defendant-Petitioner LR Credit, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner LR Credit 14, LLC;

6.     The parent company of Defendant-Petitioner LR Credit 18, LLC is Defendant-Petitioner LR Credit, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner LR Credit 18, LLC; and

7.    The parent company of Defendant-Petitioner LR Credit 21, LLC is Defendant-Petitioner LR Credit, LLC, and there is no publicly held company that owns a 10 percent or more interest in Defendant-Petitioner LR Credit 21, LLC.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ......................................... 5

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................ 5

STATEMENT OF THE CASE .............................................. 6

STATEMENT OF FACTS .................................................... 7

      A.    Mel Harris's Debt-Collection Practice ..................... 8

      B.    Plaintiffs' Claims .............................................. 8

      C.    The Class Certification Opinion And Order ............ 11

SUMMARY OF ARGUMENT .............................................. 13

STANDARD OF REVIEW ................................................... 16

ARGUMENT .................................................................. 17

    I.    The Numerous And Acknowledged Differences Among
         Putative Class Members Preclude Class Certification. ...... 17

      A.    The Class Members Cannot Satisfy Rule 23(a) Because
           They Do Not Share The Same Theory Of Injury. .......... 19

           1.    The Theory Of Injury Asserted By The Class
              Members Is Not "Uniform." .............................. 20

           2.    The District Court Improperly Ignored Factual
              Distinctions Among Class Members That Destroy
              Commonality And Typicality. ........................... 23

      B.    Individualized Issues Of Liability, Causation, Damages,
           And Timeliness Preclude Any Finding Of Predominance. ...... 29

II.     The District Court Erred By Certifying FDCPA Classes
        Because The FDCPA Does Not Extend To Communications
        Made To State-Court Officials. .......................................................34

III.    The District Court Erred By Failing To Exclude From The
        Class Definition Purported Damages Claims That Are Barred
        By The *Rooker-Feldman* Doctrine. .....................................................38

        A.      The Lower Federal Courts Lack Jurisdiction To Consider
                Collateral Challenges To State-Court Judgments. ....................38

        B.      By Seeking "Remittance" Damages, Plaintiffs Complain
                Of Injuries Directly Caused By State-Court Default
                Judgments In Violation Of *Rooker-Feldman*. ..........................40

        C.      The District Court Was Required To Exclude
                "Remittance" Damages From The Class Definition. ................43

IV.     The District Court Erred In Certifying An Injunctive Class
        Asserting RICO Claims Because The Civil RICO Statute Does
        Not Permit Private Parties To Seek Injunctive Relief. ......................44

        A.      The Text Of The RICO Statute Does Not Authorize
                Private Injunctive Relief. ...........................................................45

        B.      The History Of The RICO Statute Demonstrates That
                Private Parties Cannot Pursue Injunctive Relief. ....................47

        C.      The Weight Of Authority Confirms That RICO Does Not
                Authorize Injunctive Relief In Private Lawsuits. ....................49

CONCLUSION ......................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Interco Inc.*,
 719 F.2d 23 (2d Cir. 1983)................................................................16

*Ackermann v. Doyle*,
 43 F. Supp. 2d 265 (E.D.N.Y. 1999) ................................................39

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
 483 U.S. 143 (1987)........................................................... 48, 49, 50

*Am. Med. Ass'n v. United Healthcare Corp.*,
 588 F. Supp. 2d 432 (S.D.N.Y. 2008)...............................................46

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)..................................................... 18, 29, 30, 31

*Atascadero State Hosp. v. Scanlon*,
 473 U.S. 234 (1985).........................................................................38

*Ballyhighlands, Ltd. v. Bruns*,
 No. 98-9373, 182 F.3d 898 (table), 1999 WL 377098 (2d Cir. May 28,
 1999)................................................................................................39

*Bell Atl. Corp. v. AT&T Corp.*,
 339 F.3d 294 (5th Cir. 2003)...........................................................34

*Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*,
 550 F.2d 189 (4th Cir. 1977)...........................................................16

*Bridge v. Phoenix Bond & Indem. Co.*,
 553 U.S. 639 (2008).........................................................................28

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
 155 F.3d 331 (4th Cir. 1998.............................................................23

*Califano v. Yamasaki*,
 442 U.S. 682 (1979).........................................................................17

*Chiang v. Veneman*,
 385 F.3d 256 (3d Cir. 2004).............................................................44

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Coble v. Cohen & Slamowitz, LLP*,
   No. 11 Civ. 1037, 2013 WL 1500418 (S.D.N.Y. Apr. 10, 2013)........................42

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ................................................................................ passim

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007).......................................................................30

*DeMent v. Abbott Capital Corp.*,
   589 F. Supp. 1378 (N.D. Ill. 1984) ............................................................ 47, 48

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)................................................................................ 17, 25

*Dist. of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983)......................................................................................38

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
   431 U.S. 395 (1977)......................................................................................19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005)......................................................................................39

*Forjone v. Federated Fin. Corp. of Am.*,
   816 F. Supp. 2d 142 (N.D.N.Y. 2011)..............................................................39

*Gen. Tel. Co. of Sw v. Falcon*,
   457 U.S. 147 (1982)........................................................................ 18, 19, 22

*Gray v. Americredit Fin. Serv., Inc.*,
   No. 07 Civ. 4039, 2009 WL 1787710 (S.D.N.Y. June 23, 2009)........................41

*Gregory v. Ashcroft*,
   501 U.S. 452 (1991)......................................................................................38

*Guerrero v. RJM Acquisitions LLC*,
   499 F.3d 926 (9th Cir. 2007)...........................................................................36

*Hasbrouk v. Arrow Fin. Servs. LLC*,
   No. 09-cv-748, 2011 WL 1899250 (N.D.N.Y. May 19, 2011) ...........................27

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990)................................................................27

*Hoblock v. Albany Cnty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005)............................................. 16, 39, 40, 41

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992)........................................................................48

*In re Fredeman Litig.*,
  843 F.2d 821 (5th Cir. 1988)............................................................50

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)...............................................................16

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009)..............................................................43

*Johnson v. Collins Entm't Co.*,
  199 F.3d 710 (4th Cir. 1999)............................................................50

*Kropelnicki v. Siegel*,
  290 F.3d 118 (2d Cir. 2002)............................................. 35, 36, 37, 38

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012).............................................................23

*McKithen v. Brown*,
  481 F.3d 89 (2d Cir. 2007)...............................................................40

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)..................................................... passim

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981).............................................................................46

*Minnesota v. N. Sec. Co.*,
  194 U.S. 48 (1904)..................................................................... 47, 48

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)............................................................30

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Motorola Credit Corp. v. Uzan*,
    202 F. Supp. 2d 239 (S.D.N.Y. 2002).................................................45

*Nat'l Org. for Women, Inc. v. Scheidler*,
    267 F.3d 687 (7th Cir. 2001)................................................................50

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ............................................................................25

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1988)...............................................................33

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 159 (3d Cir. 2001).................................................................34

*O'Rourke v. Palisades Acquisition XVI, LLC*,
    635 F.3d 938 (7th Cir. 2011)........................................... 28, 35, 36, 37

*Okyere v. Palisades Collection, LLC*,
    No. 12 Civ. 1453, 2013 WL 1173992 (S.D.N.Y. Mar. 22, 2013) ............... 35, 36

*Paine Lumber Co. v. Neal*,
    244 U.S. 459 (1917)............................................................................48

*Pelman v. McDonald's Corp.*,
    272 F.R.D. 82 (S.D.N.Y. 2010) ...........................................................27

*Pfizer Inc. v. India*,
    434 U.S. 308 (1978)............................................................................48

*Raydos v. Cohen & Slamowitz, LLP*,
    No. 08-cv-4A, 2009 WL 2929166 (W.D.N.Y. Sept. 9, 2009)............................42

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) ...................................................... 49, 50

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)............................................................................38

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003)............................................................................50

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) ...................................................................................19

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ................................................................. 47, 48, 49, 50

*Sedima, S.P.R.L. v. Imrex Co.*,
    741 F.2d 482 (2d Cir. 1984) ................................................................. 4, 45

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010) ...............................................................................17

*Shearson/Am. Express Inc. v. McMahon*,
    482 U.S. 220 (1987) .............................................................................. 48, 50

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ....................................................................................48

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ....................................................................................47

*Trakansook v. Astoria Fed. Sav. & Loan Ass'n*,
    No. 06-CV-1640, 2007 WL 1160433 (E.D.N.Y. Apr. 18, 2007) .......................41

*Trane Co. v. O'Connor Sec.*,
    718 F.2d 26 (2d Cir. 1983) ................................................................... 4, 45

*Transamerica Mort. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ......................................................................................46

*Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins.*
    *Guar. Ass'n*,
    455 U.S. 691 (1982) ....................................................................................26

*Volden v. Innovative Fin. Sys., Inc.*,
    440 F.3d 947 (8th Cir. 2006) .....................................................................36

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
    453 F.3d 179 (3d Cir. 2006) ................................................................. 4, 43

ix

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................... passim

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989) ........................................................................................38

*Windham v. Am. Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977)...........................................................................34

## Statutes

15 U.S.C. § 1692a(6)(D) .................................................................................10

15 U.S.C. § 1692d .............................................................................................5

15 U.S.C. § 1692e .............................................................................................5

15 U.S.C. § 1692f .............................................................................................5

15 U.S.C. § 1692k(a)(1) ..................................................................................31

15 U.S.C. § 1692k(d) .................................................................................. 5, 32

15 U.S.C. § 26 ................................................................................................48

15 U.S.C. § 4 ..................................................................................................47

18 U.S.C. § 1692k .............................................................................................5

18 U.S.C. § 1962 ...............................................................................................5

18 U.S.C. § 1964 .............................................................................................45

18 U.S.C. § 1964(a) .................................................................................. 46, 47

18 U.S.C. § 1964(b) .................................................................................. 46, 47

18 U.S.C. § 1964(c) ............................................................................... 5, 46, 47

28 U.S.C. § 1257 .............................................................................................39

28 U.S.C. § 1292(e) ...........................................................................................5

28 U.S.C. § 1331 ...............................................................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

28 U.S.C. § 1367 ...................................................................................5

28 U.S.C. § 1738 .................................................................................26

28 U.S.C. § 2072(b) ..................................................................... 17, 25

N.Y. Gen. Bus. Law § 349 .....................................................................9

N.Y. Judicial Law § 487 .........................................................................9

## **Rules**

Fed. R. App. P. 28(i) ..............................................................................6

Fed. R. Civ. P. 23(a) ................................................................... passim

Fed. R. Civ. P. 23(a)(2) ................................................................ 17, 19

Fed. R. Civ. P. 23(a)(3) ................................................................ 17, 19

Fed. R. Civ. P. 23(b) .................................................................... 12, 17

Fed. R. Civ. P. 23(b)(2) ............................................................... passim

Fed. R. Civ. P. 23(b)(3) ............................................................... passim

Fed. R. Civ. P. 23(c)(1) ................................................................. 4, 43

Fed. R. Civ. P. 23(f) ...............................................................................5

## **Other Authorities**

116 Cong. Rec. 27,739 (1970) ..............................................................49

116 Cong. Rec. 35,227 (1970) ..............................................................49

116 Cong. Rec. 35,228 (1970) ..............................................................49

116 Cong. Rec. 35,346 (1970) ..............................................................49

Fed. R. Civ. P. 23 advisory comm. notes on 2003 amendments ...........43

H.R. Rep. No. 91-1549 (1970) ..............................................................48

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

N.Y.C.C.C., Directives and Procedures No. 182 (May 13, 2009)...........................27

S. 13, 93d Cong. (1973) .............................................49

S. 16, 92d Cong. (1972) .............................................49

S. Rep. No. 91-617 (1969) ...........................................47

U.S. Br., *Scheidler v. Nat'l Org. for Women, Inc.*,
    Nos. 01-1118 & 01-1119, 537 U.S. 393 (2003) .................................50

## INTRODUCTION

Defendant-Appellant Leucadia National Corporation and its affiliates ("LR Credit") invest in portfolios of charged-off consumer debt.[1]  The district court (Chin, *J.*) certified a class action comprising more than 100,000 debtors united by little more than the fact that attorneys representing LR Credit obtained or will obtain default judgments against them in New York City Civil Court ("NYCCC"). Plaintiffs assert that LR Credit's outside counsel—Mel S. Harris and Associates LLC ("Mel Harris")—procured these default judgments fraudulently by filing affidavits of merit with the state court asserting "personal knowledge" of the relevant debt records, even though LR Credit and Mel Harris allegedly were aware of this information only on "information and belief."  Plaintiffs also submitted evidence that Mel Harris hired Samserv, Inc. ("Samserv") to serve process in some of the state-court actions; that Samserv did not effect service in certain cases, and that Samserv filed affidavits in a few hundred of these cases attesting to service.

The certified damages and injunctive classes encompass *all* persons against whom LR Credit obtained (or will obtain) default judgments in NYCCC in cases handled by Mel Harris, regardless of whether Samserv was involved in effectuating service.  But many of the class members do not share the allegedly common theory of injury advanced in the operative complaint.  Plaintiffs admittedly could not establish that the purportedly false affidavits of service affected all of the class

---

[1]    For ease of reference, this brief will refer to Leucadia, its principals, and its affiliates as "LR Credit," without conceding that any one of them is a proper defendant in this litigation, or that the plaintiffs' alter ego allegations have merit.

members; indeed, many—perhaps most—of them were properly served. Nor did Plaintiffs contend that Samserv was responsible for effecting service on all members of the class. Plaintiffs also made no attempt to prove that the allegedly improper affidavits of merit misrepresented the amount of debt for any significant percentage of the absent class members, or that the source of those affidavits' supposed falsity—statements on "personal knowledge" based on the review of certain documents rather than "information and belief" derived from the same documents—could legally have affected the default judgments against them.

The variation among the class members' supposed injuries bears directly on the claims that they can assert: Class members who *were* properly served and who *did* owe the debt at issue have suffered a very different injury than class members who claim not to have been served or who deny owing the debt at all. Under the commonality and typicality requirements of Federal Rule of Civil Procedure 23(a), however, class certification is appropriate only where the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2553 (2011) (internal quotation marks omitted). That is decidedly not the case here.

Even beyond these fatal difficulties under Rule 23(a), the district court's decision to certify a damages class under Rule 23(b)(3) raises equally insurmountable predominance and superiority problems. The district court acknowledged that litigation of the class members' claims would require individualized inquiries regarding liability, injury, causation, and damages, as well as whether the claims of any particular class member are time-barred; it would similarly require individualized

2

inquiries to determine whether any given class members' claims are precluded by the Full Faith and Credit Act. Indeed, almost every significant issue in this litigation, including whether the affidavits of service and merit were false for a given member of the class, can be resolved only through litigation on a class-member-by-class-member basis. The district court's only response was to claim that the need for some individualized inquiries does not *necessarily* preclude class certification. But as the Supreme Court reaffirmed earlier this year, the operative question under Rule 23(b)(3) is whether common questions *in fact* predominate over individual ones *in this case*. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Properly analyzed, they do not, and certification of any damages class is inappropriate.

On top of these errors, the district court's Rule 23(b)(2) and Rule 23(b)(3) classes suffer from a number of additional defects, each of which forecloses certification under the relevant rule. The district court's Rule 23(b)(3) damages class includes claims under the Fair Debt Collection Practices Act ("FDCPA"). But, as the Seventh Circuit has recognized, the FDCPA does not cover submissions to state-court officials. Because the affidavits of merit and service were submitted to the NYCCC, they cannot give rise to liability under the FDCPA and thus cannot properly be included in a certified class action. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

The Rule 23(b)(3) class is also improperly defined because the certification order does not exclude Plaintiffs' claims seeking recovery of all amounts collected

under the default judgments. These claims are barred by the *Rooker-Feldman* doctrine, which prohibits the lower federal courts from adjudicating claims that are essentially appeals from state-court orders. LR Credit accordingly asked the district court to explain, as part of its obligation to "define the class and the class claims, issues, or defenses," Fed. R. Civ. P. 23(c)(1)(B), that any attempt to recover the full amount of the default judgments was not included within the class definition. The district court declined to address the issue, stating that "[t]he class certification order does not purport to address the damages, if any, that may be awarded," and that damages can be "addressed later . . . if necessary." SA43. But that decision ignores Rule 23's requirement that the district court provide a "full and clear articulation of the litigation's contours *at the time of class certification*," *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 (3d Cir. 2006) (emphasis added), and improperly retains class treatment of damages claims that the federal courts have no jurisdiction to adjudicate.

Finally, the district court's Rule 23(b)(2) injunctive class includes claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). But, as Defendants explained below, the RICO statute does not allow private parties to seek injunctive relief—a view with which this Court has expressed its agreement. *See Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482, 489 n.20 (2d Cir. 1984), *rev'd on other grounds*, 473 U.S. 479 (1985); *Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28–29 (2d Cir. 1983). Although the district court declined to address this issue, the Supreme Court has repeatedly emphasized that the "rigorous analysis" required by Rule 23 obligates district courts to *resolve* any issues "b[earing] on the propriety of

class certification." *Behrend*, 133 S. Ct. at 1432 (citation omitted); *see also Dukes*, 131 S. Ct. at 2551–52 & n.6.  Because the RICO statute does not allow injunctive relief in private suits, the district court erred in including RICO claims in the Rule 23(b)(2) class.

These errors warrant reversal of the district court's certification order, in its entirety.  At a minimum, the certification order should be vacated.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this case pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 and 1367.  Plaintiffs assert federal claims under the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692f, 1692k, and RICO, 18 U.S.C. §§ 1962, 1964(c), as well as state-law claims under New York law.  *See* JA206—218.

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).  The district court certified Plaintiffs' proposed class on March 28, 2013, and LR Credit timely filed its petition for permission to appeal thirteen days later, on April 10, 2013.  *See* Fed. R. Civ. P. 23(f).  This Court granted LR Credit's petition on July 19, 2013.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred in certifying this class action even though the evidence adduced below shows that the putative class members raise different theories of injury and that any purportedly common issues are overwhelmed by the individualized inquiries that would be required to adjudicate their claims and LR Credit's defenses.

2.     Whether the FDCPA extends to communications made to state-court clerks and judges rather than to debtors themselves, such that certification of any FDCPA class in this case could be appropriate.

3.     Whether the district court erred by certifying a class that encompasses claims seeking damages in the amount of—and therefore effectively reversing—the state-court default judgments obtained against class members, even though the *Rooker-Feldman* doctrine bars the court from asserting subject-matter jurisdiction over such claims.

4.     Whether private parties may seek injunctive relief in a civil RICO action, such that certification of a RICO injunctive class could be appropriate.[2]

## STATEMENT OF THE CASE

This putative class action was brought on behalf of more than 100,000 debtors against whom LR Credit has obtained or will obtain default judgments in NYCCC.  *See* JA140, 203.  The operative complaint asserts claims under the FDCPA, RICO, and New York state law.  *See* JA141.  Plaintiffs allege that LR Credit's outside counsel, Mel Harris, procured the default judgments "fraudulently" because counsel's state-court applications for those judgments were supported with affidavits of merit that claimed the affiant derived "personal knowledge" from the debt records that LR Credit had purchased from third parties, which supposedly would support only an assertion of knowledge "on information and belief."

---

[2]     LR Credit also joins and incorporates by reference the arguments made by Mel Harris.  *See* Fed. R. App. P. 28(i).

JA140–42.  Plaintiffs also claim that, in some instances, the default judgments resulted from "sewer service," in which one of the process servers hired by outside counsel—Samserv—falsely swore in affidavits of service that the debtor had been served.  *Ibid.*  According to Plaintiffs' conclusory and threadbare assertions, LR Credit supposedly joined in the outside counsel's and Samserv's false-affidavits scheme.

On the theory that the putative class members suffered a common injury from this allegedly "uniform course of conduct," the district court issued an opinion on September 4, 2012 concluding that certification was appropriate for two classes including individuals who either (1) had been sued, or (2) will be sued, by Mel Harris as counsel for LR Credit in NYCCC.  SA29.  Following briefing on an appropriate certification order, the district court accepted a proposed order submitted by Plaintiffs, *see* SA43, and issued an order certifying the classes on March 28, 2013, *see* SA46.

On April 10, 2013, LR Credit filed a petition in this Court for permission to appeal under Rule 23(f), *see* No. 13-1323, as did Mel Harris and its affiliates, *see* No. 13-1324, and Samserv and its affiliates, *see* No. 13-1320.  The petitions were thereafter consolidated as No. 13-1320, and this Court granted all three petitions in a single order on July 19, 2013.

## STATEMENT OF FACTS

Leucadia National Corporation is a diversified holding company with a broad array of interests.  LR Credit, LLC—a joint venture between an indirect subsidiary of Leucadia National Corporation (L-Credit, LLC) and an unrelated enti-

ty—invests in credit-card debt along with various of its subsidiaries, buying debt that has been "charged off" by the original creditor for pennies on the dollar.  *See* JA326; *see also* JA145–147 ¶¶ 22–28; SA4 n.2 (listing subsidiaries).  As noted above, this brief will refer to Leucadia, its principals, and its affiliates as "LR Credit."  *See supra* at 1 n.1.

## A.    Mel Harris's Debt-Collection Practice

In an effort to collect from debtors who defaulted on their credit-card obligations, LR Credit frequently retained the Mel Harris law firm.  *See* SA6.  Mel Harris uses sophisticated, proprietary computer software to manage litigation against defaulted debtors.  *See* SA8–9.  The software, which was developed by a Mel Harris employee named Todd Fabacher, processes data provided to LR Credit by debt sellers, and generates letters requesting payment as well as (if necessary) summonses and complaints seeking recovery.  *See* SA8–10.  In the latter circumstance, a process service agency (*e.g.*, Samserv) would be hired by Mel Harris to serve the debtor.  *See* SA6.

If the summons and complaint go unanswered, the computer program generates an "affidavit of merit" to be filed in support of a motion for default judgment. *See* SA10.  The software calculates the recovery amount, and Fabacher signs the affidavit on behalf of LR Credit.  *See ibid*.  Fabacher "quality checks" one out of every fifty affidavits.  *Ibid*.

## B.    Plaintiffs' Claims

The named plaintiffs are individuals against whom Mel Harris previously obtained default judgments on behalf of LR Credit; they purport to represent an

estimated 100,000-plus other such default-judgment debtors. Asserting claims under RICO, the FDCPA, and state law,[3] Plaintiffs filed suit against LR Credit, Mel Harris, Samserv, and other affiliated entities and individuals, alleging a "fraudulent scheme" to obtain default judgments against LR Credit debtors, comprising two components: (1) Samserv's provision of false affidavits of service (so-called "sewer service"), JA163, and (2) Mel Harris's provision of affidavits of merit stating falsely that Fabacher had "personal knowledge" of the debts, *see* JA172.

Defendants filed motions to dismiss the complaint, which the district court granted in part and denied in part. The district court acknowledged that Plaintiffs' FDCPA claims "would be untimely" "absent equitable tolling" because those claims were filed more than a year after Mel Harris applied for the default judgments against them. JA112–13. But the court concluded that equitable tolling would be appropriate if Defendants had "fraudulently deprived [a given debtor] of notice of their debt collection actions." JA114. Applying this standard, the court dismissed the claims of one named plaintiff, who had "receive[d] a copy of the summons and complaint from Mel Harris, LLC sometime before a default judgment was entered against her." JA115. With respect to the remaining named plaintiffs, the district court concluded that they "ha[d] sufficiently alleged that

---

[3]    Plaintiffs seek relief from all defendants under the FDCPA, RICO, and New York's general anti-fraud statute, N.Y. Gen. Bus. Law § 349. They have also asserted a claim against Mel Harris under N.Y. Judicial Law § 487, which applies only to alleged misconduct by attorneys.

[the] defendants fraudulently deprived them of notice of their debt collection action," JA114, and thus declined to dismiss their FDCPA claims.

The district court also rejected Samserv's argument that it should be dismissed under the FDCPA's exemption for any person "serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). Plaintiffs insisted that Samserv had not acted simply as a process server, but instead that its "fraudulent affidavits of service" were "at the heart of Defendant's scheme" and "crucial to the functioning of the entire [RICO] enterprise." JA75. According to Plaintiffs, Samserv's false affidavits of service were an "integral" and "crucial" component of the supposed fraud. JA69, 75 (emphasis omitted). The district court accepted this characterization of Plaintiffs' claims, concluding that defective service was "integral" to the alleged scheme and that "debtors failed to appear in court because they did not have notice of the lawsuits." JA103, 108. Thus, the court reasoned, "the Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption." JA118.

Finally, the district court declined to dismiss Plaintiffs' claims under the *Rooker-Feldman* doctrine, which applies where "a plaintiff invites a district court to review and reject an adverse state-court judgment." JA132. According to the district court, however, the "plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them." *Ibid.* "In fact," the court noted, "all plaintiffs have had the default judgments against them vacated or discontinued." *Ibid.*

10

### C.    The Class Certification Opinion And Order

Plaintiffs sought class certification on the theory that Defendants had procured and enforced default judgments through a "uniform course of conduct" involving the filing of false affidavits of service and merit.  SA29; *see also* JA104.  But while their complaint and briefing on the motions to dismiss had emphasized the supposed importance of "sewer service" to the class members' claims, Plaintiffs abandoned any attempt to show that *each* member of the class had been denied proper service.  Instead, they asserted only that *some* members of the class did not receive proper service.  *See*, *e.g.*, SA6–7.  And with respect to the affidavits of merit, the only alleged falsity that Plaintiffs sought to show on a class-wide basis was that the affidavits claimed "personal knowledge" of the underlying debts even though LR Credit (and thus Mel Harris) had been informed of the debt amounts by the third-party sellers.  The district court concluded, however, that the affidavits of merit would have been equally sufficient under state law if they had been based on "information and belief."  SA27 n.9.

The district court nonetheless did not draw any distinctions between affidavits of merit and affidavits of service, between claimants who were properly served and owed the debt at issue and those who were not and did not, or between claimants who were allegedly served by Samserv and those who were served by some other process server.  Instead, the court granted certification of two classes of individuals "who have been or will be sued" by LR Credit and Mel Harris.  JA202–204.  Under Rule 23(b)(2), the district court certified a class seeking equitable relief under RICO and state law; this class consists of "all persons who have been or

11

will be sued by the Mel Harris defendants as counsel for [LR Credit] in actions commenced in New York City Civil Court and where a default judgment has [been] or will be sought." *See* SA46. Under Rule 23(b)(3), the district court certified a class seeking damages under the FDCPA, RICO, and the New York business and judiciary laws; this class is limited to individuals against whom default judgments have *already* been obtained, and thus consists of "all persons who have been sued by the Mel Harris defendants as counsel for [LR Credit] in actions commenced in New York City Civil Court and where a default judgment has been obtained." SA47.

Addressing Rule 23(a)'s threshold requirements, the district court found that differences between the named plaintiffs and the class members identified at class certification—including the validity of service and the underlying debt—did not defeat commonality or typicality. The court characterized Plaintiffs' "overarching claim" as that the "defendants systematically filed false affidavits of merit and, in many instances, false affidavits of service." SA25. The court concluded that, "[w]hether a false affidavit of merit or a false affidavit of service or both were employed in a particular instance, the fact remains that plaintiffs' injuries derive from defendants' alleged 'unitary course of conduct.'" *Ibid.*

The district court next addressed the requirements of Rule 23(b). With respect to the Rule 23(b)(2) class, the court did not certify Plaintiffs' claims under the FDCPA because equitable relief is not available under that statute; the court concluded, however, that certification was nonetheless appropriate under RICO and New York law. SA35. With respect to the Rule 23(b)(3) class, the court

acknowledged a significant question regarding predominance, as "individual issues may exist as to causation and damages as well as to whether a class member's claim accrued within the applicable statute of limitations." SA37. But the court found these individualized questions to be irrelevant because, at least in theory, the existence of individual issues does not "necessarily" foreclose certification, and because various "management tools" are potentially available to handle individualized questions in the context of a class action. SA37–38.

The district court ordered Plaintiffs to submit a proposed certification order effectuating its decision. SA40. During subsequent negotiations between the parties, Plaintiffs disclosed for the first time that they intended to seek damages for amounts paid under the state-court default judgments. In response, LR Credit requested that the district court exclude from the class definitions any claim for so-called "remittance" damages on the ground that such a claim would be barred by the *Rooker-Feldman* doctrine. Plaintiffs proposed a certification order omitting any such limitation, and the district court entered their proposed order, stating that "[t]he class certification order does not purport to address the damages, if any, that may be awarded," and that damages can be "addressed later . . . if necessary." SA44.

## SUMMARY OF ARGUMENT

I.    The district court certified Rule 23(b)(2) and Rule 23(b)(3) classes seeking (respectively) injunctive relief under RICO and state law, and damages under the FDCPA, RICO, and state law. The certification of either class was erroneous. Because the putative class members do not share the theory of injury ad-

13

vanced in support of certification, and because their claims would require adjudication of defenses specific to individual class members, the proposed classes do not satisfy Rule 23(a).  In any event, no class should have been certified under Rule 23(b)(3) because individualized questions of liability, injury, causation, damages, and timeliness predominate over any common questions.

A.    Plaintiffs premise their request for class certification on the theory that Defendants injured them by obtaining "fraudulent judgments" through a supposedly "unitary course of conduct": "sewer service" and the filing of a false service affidavit, followed by the filing of a false affidavit of merit.  JA141–42, 146; *see also* SA2, 5, 29.  But Plaintiffs' evidence showed that only *some* class members suffered from defective service—the opposite of a "uniform" course of conduct.  In addition, an unknown number of the putative class members—perhaps nearly all of them—actually owed the debt at issue, and so cannot claim to have been harmed by the entry of a judgment against them.  These variations preclude class-wide adjudication for all 100,000 debtors under Rule 23(a)'s commonality and typicality requirements.

B.    The factual divisions among class members also make Rule 23(b)(3) certification inappropriate.  The district court "recogniz[ed]" that "individual issues may exist as to causation and damages as well as to whether a class member's claim accrued within the applicable statute of limitation," SA37, and also that "individualized proof of service or lack thereof" will be necessary to establish the class members' claims, SA29.  These non-common issues, however, overwhelm any questions common to the class, thus foreclosing any finding of predominance

14

and rendering this case unmanageable as a class action. The district court's analysis stopped with the observation that it "does not necessarily follow" from the presence of individual questions that they "predominate over common ones," SA37 (citation omitted), but that does not answer the question whether common questions predominate *in this case*. They do not.

**II.** The district court erred by certifying any FDCPA class. The FDCPA does not extend to communications that would confuse or mislead a state-court judge. The FDCPA's provisions were intended to protect debtors from being misled by debt collectors, and this Court has accordingly held that they do not encompass misleading communications to people other than debtors themselves. The affidavits of merit and service at issue here were intended for the judges of the NYCCC; they were submitted to procure default judgments from those judges after the debtors had failed to appear. Because the FDCPA does not cover those affidavits, no class should have been certified under the FDCPA.

**III.** The district court further erred by failing, as part of its obligation to define the class and the class claims, issues, and defenses, to exclude Plaintiffs' claims for "remitt[ance] . . . damages" in the amounts collected under any state-court judgments. Pls.' 23(f) Opp. at 15. This damages theory is foreclosed by the *Rooker-Feldman* doctrine, which bars the lower federal courts from adjudicating claims seeking to reverse state-court losses. The district court should therefore have excluded this theory from the certified classes.

**IV.** Finally, the district court erred by certifying an injunctive class asserting RICO claims because the RICO statute does not afford injunctive relief to pri-

vate parties. Indeed, the text and history of the RICO statute show that Congress affirmatively decided not to authorize private injunctive claims—a conclusion that the Ninth Circuit and the United States have correctly reached. This Court has twice remarked that RICO "likely" was not intended to provide private parties injunctive relief. It should now confirm that private RICO claims for injunctive relief fail as a matter of law, and thus that district courts cannot certify a class action raising such claims.

## STANDARD OF REVIEW

This Court reviews the decision below for abuse of discretion, "bearing in mind that whether an incorrect legal standard has been used is an issue of law to be reviewed *de novo*." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). At the same time, "[a] judge's discretion is not boundless," but instead "must be exercised within the applicable rules of law or equity." *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 193 (4th Cir. 1977), *abrogated on other grounds by Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008), *quoted with approval in Abrams v. Interco Inc.*, 719 F.2d 23, 28 (2d Cir. 1983) (Friendly, J.). For that reason, this Court has emphasized that "review of class action determinations for 'abuse of discretion' does not differ greatly from review for error." *Abrams*, 719 F.2d at 28. "[A]pplication of the [*Rooker-Feldman*] doctrine" is also reviewed *de novo*. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005).

## ARGUMENT

### I. The Numerous And Acknowledged Differences Among Putative Class Members Preclude Class Certification.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). While "[a] class action . . . enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits," "it leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1443 (2010) (plurality opinion); *see also*, *e.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). The procedural nature of a federal class action is statutorily required: The Rules Enabling Act simultaneously authorized the Supreme Court to promulgate the Federal Rules of Civil Procedure and mandated that such rules shall not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Federal Rule of Civil Procedure 23 provides several requirements for class actions: The class proponent must satisfy each of the four prerequisites of Rule 23(a) and also demonstrate that the case fits into one of the permissible categories of class actions listed in Rule 23(b). As relevant here, Rule 23(a) permits certification only if "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3)—which in turn require that the "class members 'have suffered the same injury,'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2553 (2011) (quoting *Gen. Tel. Co. of Sw v.*

*Falcon*, 457 U.S. 147, 157 (1982)).  Where, as here, plaintiffs seek certification of a damages class under Rule 23(b)(3), the district court must also find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation").  To grant class certification, the district court must be "satisfied, after a rigorous analysis, that the prerequisites" of Rule 23 "have been satisfied."  *Falcon*, 457 U.S. at 161.

The district court granted class certification here on the theory that Defendants injured the class members by obtaining "fraudulent judgments" through a "uniform course of conduct" involving the "fil[ing] [of] an allegedly false affidavit of merit and, at least in some instances, an allegedly false affidavit of service." JA142; *see also* SA29.  But this theory of injury is neither "uniform" nor shared by all members of the putative class, which includes everyone who was (or will be) sued by Mel Harris on LR Credit's behalf and had (or will have) a default judgment entered against him.  As the district court itself recognized, Plaintiffs' evidence showed only that *some* class members might have been affected by defective service—a decidedly *non*-"uniform course of conduct," which instead shows that class members have a variety of different claims.  Equally problematic, an unknown number of the putative class members—perhaps nearly all of them—actually owed the debt at issue, and so cannot claim to have suffered monetary in-

jury by the entry of a judgment against them. A class member who was *not* properly served, and who does *not* owe the debt in question, cannot pursue the same theory of injury as a class member who *was* properly served and who *does* owe the debt. The claims of the former are hardly typical of those of the latter. A class action that lumps these disparate plaintiffs together cannot be certified consistent with Rule 23(a). And even if it somehow could, individualized questions of liability, causation, damages, and timeliness would render certification of any damages class under Rule 23(b)(3) inappropriate.

### A. The Class Members Cannot Satisfy Rule 23(a) Because They Do Not Share The Same Theory Of Injury.

Rule 23(a) requires putative class representatives to establish that they seek to vindicate the same basic wrong as the absent class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members"). The commonality requirement in Rule 23(a)(2) compels "the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). And the related typicality requirement in Rule 23(a)(3) demands that the proponent of class certification establish "the existence of a class of persons who have suffered the same injury as that individual, such that . . . the individual's claim will be typical of the class claims." *Falcon*, 457 U.S. at 157. Plaintiffs cannot satisfy their burden in this case.

### 1.    The Theory Of Injury Asserted By The Class Members Is Not "Uniform."

Plaintiffs premised their request for class certification on the theory that Defendants injured them through a supposedly "unitary course of conduct" involving the filing of false affidavits of service and merit.  JA141–42, 146; *see also* SA2, 5, 29.  But among the putative class members are two deep divisions in the nature of the injury that can be claimed.  Plaintiffs' allegations and the district court's own factual findings show that the conduct alleged was anything but "unitary," and that the members of Plaintiffs' putative class have not "suffered the same injury" from that conduct (if, indeed, they have suffered any injury at all).

**a.**    Affidavits of Service.  The evidence adduced below showed that false affidavits of service—a supposedly "integral" part of the "unitary" course of fraudulent conduct, JA69—were submitted in only a *few* cases, and only by *one* of the process-server companies (Samserv) used by Mel Harris.  Thus, while each of the named plaintiffs alleged that he or she was subject to fraudulent service, *see* JA167, 170–71, 176, 181, the same cannot be said of the potential class members.  Plaintiffs have identified service problems with only a small fraction—*i.e.*, "hundreds"—of the more than 100,000 cases in which default judgments were obtained by Mel Harris.  SA24–25.  Even the district court acknowledged "[f]actual differences" among the class members "as to whether a particular class member was . . . properly served."  SA29; *see also* JA318.

These differences with respect to service bear directly on the claims that a given class member can assert:  If class members who received service, but none-

theless failed to mount any defense, could articulate *some* theory of injury, it would not be the *same* theory of injury as those class members who did not receive service at all. LR Credit is entitled to litigate the validity of the affidavits of service, and it cannot be deprived of that ability by pretending that *none* of the class members were properly served. *See Dukes*, 131 S. Ct. at 2561 (holding that, under the Rules Enabling Act, "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims").

While Plaintiffs attempted to avoid this difficulty by alleging a "practice" of sewer service, *see* SA2, naked allegations are insufficient to satisfy Rule 23(a). "Rule 23 does not set forth a mere pleading standard," the Supreme Court has emphasized, and thus "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. Yet Plaintiffs were unable to substantiate any supposed "practice" at class certification. The district court purported to discern a "uniform course of conduct" involving the "fil[ing] [of] . . . an allegedly false affidavit of service" "*at least in some instances*," SA29 (emphasis added), but "that is just the opposite of a uniform . . . practice that would provide the commonality needed for a class action," *Dukes*, 131 S. Ct. at 2554. Instead, the adequacy of service demands "individualized proof." SA29.

**b.**     <u>Affidavits of Merit</u>. The class is also fundamentally divided in the *type* of injury that its members can claim. Although some of the named plaintiffs claim not to owe money to LR Credit, an unknown number of class members—

21

perhaps nearly all of them—actually *did* owe the debts.  *See* SA30–31.  These debtors, if they were injured at all by Defendants' actions, were injured in a very different way than those class members who owed no money.  In this respect, those debtors who *did* owe the debt at issue—and so *were* properly the subject of debt-collection actions—do not share the same theory of injury as those who did not.

Plaintiffs have never explained how anyone could have been financially "injured" by entry of default judgments in the amount of debts that were indisputably owed and in arrears (let alone if they had received proper service but chose to ignore the lawsuit).  Instead, in the case of a class member who actually owed the debt, the allegedly false affidavit of merit could not have caused him any injury.  And even if someone conceivably could be injured by such a judgment for reasons other than having to pay the amount owed, any such injury would be individual and idiosyncratic, and not at all "common" or "typical" of the remaining class members' claims.  *See* SA37 (district court acknowledgment that causation is potentially an individualized issue).  Whatever claims a particular class member might be able to assert, that debtor would not have "'suffered the same injury'" as the remainder of the class.  *Dukes*, 131 S. Ct. at 2551, 2553 (quoting *Falcon*, 457 U.S. at 157).

For this reason, even if the named plaintiffs could establish that *they* were improperly targeted for debt collection, the "determination of [the] truth or falsity" of that allegation would do nothing to "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke."  *Dukes*, 131 S. Ct. at

22

2551.  Instead, the only way that the absent class members could establish their claims would be through proof on an individual-by-individual basis.  Because class-wide adjudication is therefore unable to "generate common *answers* apt to drive the resolution of the litigation," *ibid.* (internal quotation marks omitted), the class certified below does not satisfy Rule 23(a)'s commonality or typicality requirements.

> **2.    The District Court Improperly Ignored Factual Distinctions Among Class Members That Destroy Commonality And Typicality.**

The district court's order impermissibly papered over significant variations among class members by picking and choosing the class-favorable aspects of the asserted claims and granting certification based on a "fictional composite" plaintiff that is representative of no one.  *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).  To elide the factual distinctions among class members, the district court analyzed the claims and elements piecemeal, seizing variously upon *one* claim that makes certain factual distinctions irrelevant while ignoring *other* claims that would be defeated by the same factual distinctions. That is not a permissible approach to class certification.  The "rigorous analysis" necessary for class certification requires the district court "to consider [and] explain how the determination of [purportedly common] questions would 'resolve an issue that is central to the validity of *each one* of the individual class member's claims in one stroke.'"  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551) (brackets omitted; emphasis added); *see also Stukenberg*, 675 F.3d at 841–43.

Properly analyzed, it is clear that Plaintiffs cannot pursue their claims in a class action given the numerous differences between the class members, such as:

- whether the class member was properly served;

- whether the class member actually owed the debt;

- whether the amount listed on the class member's affidavit of merit was correct;

- which statutory claims (if any) are available for the class member;

- whether the class member's claims are time-barred;

- whether the class member made any payments following entry of the default judgment;

- whether the class member entered into a voluntary settlement agreement that released all claims against Defendants;

- whether the class member was already successful in vacating the default judgment; and

- whether the class member suffered any actual injuries as a result of the default judgment.

With respect to service, the district court attempted to avoid the factual divisions among class members by seizing on Plaintiffs' allegation that "form affidavits of *merit* were used as part of a standard practice with respect to each putative class member." SA29 (emphasis added). But Plaintiffs' allegations regarding *service* are not a mere sideshow: They successfully persuaded the district court to deny the motions to dismiss on the ground that "[s]ewer service was *integral* to th[e] [alleged] scheme." JA108 (emphasis added). Plaintiffs faced the risk that the dis-

24

trict court would dismiss their claims against Samserv on the ground that it acted merely as a process server, and they avoided that risk only by emphasizing the significance of the affidavits of service to the alleged fraud: The "fraudulent affidavits of service" were "at the heart of Defendant's scheme," and "*crucial* to the functioning of the entire [RICO] enterprise." JA75; *see also* JA69 ("Samserv Defendants have an integral role in the fraudulent debt collection scheme described in the Complaint"). Having done so successfully, they are estopped from arguing otherwise now. *See*, *e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 750–56 (2001) (discussing and applying doctrine of judicial estoppel).

Moreover, the district court, by elevating the importance of the affidavits of merit and minimizing the importance of the affidavits of service, impermissibly rewrote Plaintiffs' substantive claims to fit the class action procedure. But shifting the focus of Plaintiffs' substantive claims to one the court viewed as better suited for class treatment is contrary to the principles underlying Rule 23 and the Rules Enabling Act. 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right."); *see also*, *e.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980). This is particularly true when Plaintiffs' claims survived the motion to dismiss only by being premised in the first instance on allegations concerning the affidavits of service.

Indeed, Plaintiffs' focus on the affidavits of service was necessary to avoid fatal preclusion problems that would have resulted had their case been limited to the affidavits of merit. The Full Faith and Credit Act requires federal courts to give state-court judgments "full faith and credit," even if they have been entered

erroneously. 28 U.S.C. § 1738. And the only relevant exception is "[i]f [the state] court did not have jurisdiction over the subject matter or the relevant parties," *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982), in which case the judgment is void. As Mel Harris has explained, however, a faulty affidavit of merit does not trigger the exception. *See* Mel Harris Br. 37–38 (collecting authorities). At most, the only class members who could proceed with their claims consistent with Section 1738 are those who did not receive proper service—and *that* critical issue is not common to the class.[4]

In any event, Plaintiffs cannot overcome their inability to establish any common issue bearing on the validity of service by pointing to other claims: The certification order draws no distinction between claims based only on affidavits of merit and claims based also on affidavits of service. It is therefore clear that the class, as certified, does not share a common theory of injury.

As for the affidavits of merit, the district court acknowledged that some class members may have owed the debts at issue, while others did not, but observed that "[l]liability *under the FDCPA* can be established irrespective of whether the presumed debtor owes the debt in question." SA31 (emphasis added). Plaintiffs' *non*-FDCPA claims, however, *do* require them to prove injury. *See*,

---

[4]   For similar reasons, a potentially dispositive issue under the statute of limitations is not shared in common among the class. Class members could potentially pursue their FDCPA claims only if they did not receive notice of the default-judgment application more than one year before this lawsuit was filed. *See infra* at 32–33. Those class members who were served with the application more than one year before this lawsuit have no FDCPA claim, but can be identified only on an individual basis.

*e.g.*, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (civil RICO); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92 (S.D.N.Y. 2010) (Section 349). It is hardly clear that a class member who had judgment entered against him based on a debt that he lawfully owed, and after ignoring the lawsuit following valid service, could possibly prove an injury caused by Defendants. That is particularly true because the district court did not foreclose the possibility that the affidavits of merit could have been entirely unobjectionable (and equally sufficient) had they "asserted facts regarding the outstanding debt based on 'information and belief'" rather than "personal knowledge." SA27 n.9 (quoting *Hasbrouk v. Arrow Fin. Servs. LLC*, No. 09-cv-748, 2011 WL 1899250, at *1, *6 (N.D.N.Y. May 19, 2011)).[5] At a minimum, the question whether any given class member owed the debt at issue cannot be evaded for the non-FDCPA claims simply by claiming that it is irrelevant under the FDCPA.

Moreover, the injunctive-relief class certified under Rule 23(b)(2) specifically *excludes* claims under the FDCPA, which does not authorize equitable relief. The district court never explained how a supposedly common theory of injury under the FDCPA could support certification of a class encompassing no FDCPA claims at all. Yet that is precisely the effect of its certification order.

---

[5] *See* N.Y.C.C.C., Directives and Procedures No. 182 (May 13, 2009) (prescribing templates for affidavits to be filed in support of default judgments in consumer debt cases, in each case stating only that "[t]he above statements are true to the best of my knowledge"), *available at* http://www.nycourts.gov/courts/nyc/SSI/directives/DRP/drp182.pdf.

But even if it were permissible to focus *exclusively* on that portion of Plaintiffs' FDCPA claim that arises from the affidavits of merit, and only on that claim, certification would still be inappropriate.  As discussed more fully below, and as the Seventh Circuit has squarely held, the FDCPA "does not extend to communications that would confuse or mislead a state court judge." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 944 (7th Cir. 2011); *see also* SA26 n.9 (citing *O'Rourke*).  The supposedly false affidavits of service and merit therefore cannot establish a class-wide (or, for that matter, any) FDCPA violation.  The district court acknowledged a "question of law as to whether making false representations in court, rather than to the debtor, violates the FDCPA," but then treated that question as a reason for *granting* class certification.  SA26.  But the Supreme Court held in *Dukes* that district courts must *resolve* any "merits question[s]" that bear on the "propriety of certification under Rules 23(a) and (b)."  131 S. Ct. at 2552 n.6.  And this Court has squarely held that, "when a claim cannot succeed as a matter of law, the Court should not certify a class on that issue." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (citation omitted).  Resolving whether false representations in court can violate the FDCPA is necessary to determine whether *any* FDCPA claim can be asserted on a class-wide basis in this case, and indeed it cannot.

\*     \*     \*

At bottom, no collective adjudication under Rule 23 is possible here because the differences among the class members go to the very heart of Plaintiffs' theory

of injury.   Plaintiffs alleged that Defendants wrongfully obtained default judgments by depriving debtors of notice.   *See* JA141–42.   But where a default judgment was not wrongful, or where the entry of judgment resulted from a debtor's failure to appear despite adequate notice, the debtor must articulate a different theory of injury—or, in some cases, he or she may have *no* theory of injury at all.   Yet all the debtors, including these, are swept up within both putative classes, simply because LR Credit has obtained (or will obtain) default judgments against them in NYCCC.   "Without some glue holding the [claimed conduct] together," the Supreme Court has explained, "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question" whether each class member was legally injured by that conduct.   *Dukes*, 131 S. Ct. at 2552.   Plaintiffs here have no such glue.

### B.    Individualized Issues Of Liability, Causation, Damages, And Timeliness Preclude Any Finding Of Predominance.

Plaintiffs' damages class under Rule 23(b)(3) was improperly certified for an additional reason.   That class is also subject to the "far more demanding" requirement (*Amchem*, 521 U.S. at 623–24) that any "questions of law or fact common to class members predominate over any questions affecting only individual members," and that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   Even if Plaintiffs could rely on a supposedly "uniform" course of conduct to satisfy Rule 23(a), they would *still* be required to show that the variation among class members would not require "individual[ized]" inquiries of the sort that "will inevitably

29

overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). While Rule 23(a) requires that class members and class representatives seek to vindicate essentially the same wrong, Rule 23(b)(3) "tests" in even more stringent fashion "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Plaintiffs cannot show such cohesion here.

The district court "recogniz[ed]" that "individual issues may exist as to causation and damages as well as to whether a class member's claim accrued within the applicable statute of limitations." SA37. It also acknowledged the need for "individualized proof of service or lack thereof" to establish Plaintiffs' liability case. SA29. The court's predominance analysis stopped, however, with the observation that it "'does not necessarily follow'" from the presence of individual questions that they "'predominate over common ones.'" SA37 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007)). But the fact that individual questions in particular cases do not *necessarily* preclude a finding of predominance, or that "management tools" may sometimes be used to manage those questions, hardly means that certification is appropriate given the individual questions present *in this case*.

As this Court has emphasized, a "common course of conduct is not enough to show predominance," *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1255 (2d Cir. 2002) (Sotomayor, *J.*), for the obvious reason that such an interpretation of Rule 23 would conflate the commonality and typicality requirements of Rule 23(a) with Rule 23(b)(3). Instead, courts must examine the nature of the questions at is-

sue, "tak[ing] a 'close look' at whether common questions predominate over individual ones." *Behrend*, 133 S. Ct. at 1432 (quoting *Amchem*, 521 U.S. at 615). Properly analyzed, it is clear that the individualized inquiries into liability, injury, causation, damages, and the timeliness of the class members' claims, all of which are necessary to adjudicate those claims, overwhelm any issues conceivably susceptible to common proof and render this case unmanageable as a class action.

1.    This case's complex individualized issues of injury, causation, and damages *alone* render class treatment inappropriate.  Not only do Plaintiffs' RICO and state-law claims require them to show that each class member was injured by Defendants' conduct, *see supra* at 26–27, but Plaintiffs will also have to prove that Defendants' violations legally caused each item of each class member's claimed compensatory damages, as well as to quantify the amount of harm suffered.  *See*, *e.g.*, 15 U.S.C. § 1692k(a)(1) (allowing recovery of "actual damage sustained . . . as a result of [the claimed FDCPA violation]").  These required showings present a multitude of difficult individualized questions: Not only do the class members claim different injuries and different compensable harms, but the circumstances of how and whether each class member's claimed harms were caused by Defendants' conduct vary substantially across the class.

To take one example, named plaintiff Monique Sykes alleges that, among other economic harms, she "had to spend money copying her file and on transportation to and from the courthouse." JA170.  She "had to take a cab on at least one occasion because the MTA had suspended service on her subway line." *Ibid.*  And "her husband . . . had to turn down [offers of work] so that he could stay home

with the children while [she] went to court." *Ibid.* These are difficult harms to evaluate on their own—among other things, they raise questions about whether Defendants legally caused Ms. Sykes to take a cab if she did so because the MTA shut down her subway line, what work opportunities her husband forewent and how much would they have paid, and whether Defendants legally caused the loss of these opportunities. And they are also almost certainly *different* harms, both in magnitude and type, than what other class members may have suffered. JA175 (named plaintiff Rea Veerabadren claims a $125 "legal processing fee" and "los[s] [of] use of her levied funds for nearly one year"); JA170, 180, 184 (seeking recovery variously for out-of-pocket legal fees and costs, lost wages, and diminished employment and housing options caused by negative credit reports). They will therefore require *different* means of proof. These issues cannot manageably be resolved in a class action, and they overwhelm any common issues.

    **2.**    The individualized liability, preclusion, and timeliness issues present in this case make the predominance of non-common questions, and the unsuitability of this case to class adjudication, even more apparent. Not only do the acknowledged "[f]actual differences" among the class members "as to whether a particular class member was . . . properly served" (SA29; *see also* JA318) make liability and preclusion impossible to resolve without individualized inquiries, *see supra* at 20–21, but also resolving "whether a class member's claim accrued within the statute of limitations" requires individualized inquiries, *see* SA37.

    The FDCPA has a one-year statute of limitations, *see* 15 U.S.C. § 1692k(d), which would otherwise bar many (if not all) of the class members' FDCPA claims,

*see* JA111, unless they can establish a basis for equitable tolling.  The district court held that equitable tolling applies to a class member's claim only if "(1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to lack of diligence on his part."  JA113–14 (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).  Thus, to avoid the one-year time bar, each class member will have to show that the "defendants fraudulently deprived [him] of notice of their debt collection action[n]."  JA114.  And that, in turn, would require the court to examine whether and when each class member *actually* received notice of the lawsuit against him.

The district court's own decision on the motions to dismiss illustrates the difficulty that these individual inquiries pose for class treatment.  In that decision, the court dismissed the claim of a named plaintiff who "receive[d] a copy of the summons and complaint by mail from Mel Harris, LLC sometime before a default judgment was entered against her."  JA115.  But it declined to dismiss the claims of two other named plaintiffs who "allege that they discovered the default judgments entered against them after December 28, 2008."  JA114.  Undertaking the same factual investigation with respect to over 100,000 debtors—especially alongside individualized inquiries into liability, injury, causation, and damages—would overwhelm the district court, and makes Plaintiffs' damages claims unsuitable for class-wide adjudication.

*    *    *

33

To evaluate the facts and circumstances of more than 100,000 class members, and thereby to adjudicate the injury, causation, and damages issues for each of them, would "requir[e] separate mini-trial[s] of an overwhelming[ly] large number of individual claims," and the "staggering problems of logistics thus created make the damage aspect of [the] case predominate, and render the case unmanageable as a class action." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977) (en banc) (footnotes and internal quotation marks omitted; second and fourth alterations in original); *see also, e.g.*, *McLaughlin*, 522 F.3d at 234 (no predominance due to individualized questions of reliance, injury, causation, damages, and timeliness); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 159, 190 (3d Cir. 2001) (no predominance due to individualized questions of injury). The Supreme Court has recognized that "[q]uestions of individual damage calculations" alone can "overwhelm questions common to the class." *Behrend*, 133 S. Ct. at 1433; *see also*, *e.g.*, *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307–08 (5th Cir. 2003) (no predominance due to individualized questions of damages). In this case, damages questions are only the last in a long line of complicated and fact-intensive issues that can only be resolved on an individualized basis. The district court should have rejected class certification under Rule 23(b)(3).

## II.   The District Court Erred By Certifying FDCPA Classes Because The FDCPA Does Not Extend To Communications Made To State-Court Officials.

Even apart from the Rule 23(a) problems, and predominance obstacles to certification under Rule 23(b)(3), the district court erred by certifying any of Plaintiffs' FDCPA claims for class treatment. That is because the FDCPA "does not

extend to communications that are allegedly meant to mislead the judge in a state court action," as Plaintiffs allege here. *O'Rourke*, 635 F.3d at 939. Because those claims "cannot succeed as a matter of law," certification was inappropriate. *McLaughlin*, 522 F.3d at 228 (citation omitted).

The FDCPA aims to protect debtors from being misled by debt collectors. The statute prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and provides an illustrative list of practices intended to trick consumers—*e.g.*, impersonating a federal officer, *id.* § 1692e(1); misrepresenting an amount owed, *id.* § 1692e(2)(A); or falsely claiming to be an attorney, *id.* § 1692e(3). By prohibiting these practices, "[t]he statute is designed to provide information that helps consumers to choose intelligently." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009).

The purpose of these provisions is not furthered, however, by extending them to cover communications made either to third parties not affiliated with the debtors that the statute seeks to protect, or in circumstances otherwise having no chance of debtor deception. This Court has accordingly held that a debtor may not recover under the FDCPA for "misleading" "communication[s]" to people *other than* the debtor—at least where the third party does not "stand in the [debtor's] shoes." *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002); *see also, e.g.*, *Okyere v. Palisades Collection, LLC*, No. 12 Civ. 1453, 2013 WL 1173992, at *10 (S.D.N.Y. Mar. 22, 2013) ("For a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor directly."). Indeed, this

35

Court noted in *Kropelnicki* that it would "find serious flaws" in an argument that the FDCPA is violated by misrepresentations to third parties even "where a party alleges that *his attorney* has been misled to the party's detriment."  290 F.3d at 127 (emphasis added).  Although *Kropelnicki* did "not . . . need to rule" on the issue, it recognized that, "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."  *Id.* at 128.  Holding otherwise "would thwart the obvious purpose of the statute."  *Ibid.* (internal quotation marks omitted).

That view accords with a number of other circuits.  The Seventh, Eight, and Ninth Circuits have all held that the FDCPA does not cover misrepresentations made to unaffiliated third parties.  *See O'Rourke*, 635 F.3d at 939, 941–44 (FDCPA "does not extend to communications that are allegedly meant to mislead the judge in a state court action"); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) ("hold[ing] that communications directed solely to a debtor's attorney are not actionable under the [FDCPA]"); *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 954–55 (8th Cir. 2006) ("false, deceptive, or misleading representation[s]" not "to the plaintiff . . . do not fall within the 'general application' of [the FDCPA]") (emphasis omitted).  And even more directly, the only circuit decision to have directly addressed the issue here—the Seventh Circuit's opinion in *O'Rourke*—squarely held that "communications" directed to the "judge in a state court action" cannot support FDCPA liability.  635 F.3d at 939.

36

*O'Rourke* involved a state-court complaint that attached an allegedly false exhibit with the aim of convincing the judge to grant a default judgment against the debtor.  635 F.3d at 940–41.  Acknowledging the FDCPA's "broa[d]" language, the court held that "[t]here must be a limiting principle" and concluded that, "when read in light of the Act's purpose and numerous provisions, the prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges."  *Id.* at 941–42.  The FDCPA "keep[s] consumers from being intimidated or tricked by debt collectors" and prohibits "misleading statement[s] . . . [that] have the ability to influence a *consumer's* decision."  *Ibid.*  "By drawing the line at communications directed at consumers—'any natural person obligated or allegedly obligated to pay any debt'—and those who stand in their shoes, the Act fits its purpose: protecting consumers."  *Id.* at 943.  Because judges "stand as impartial decision-makers in the discharge of their office" to "ensure that the process is followed," "neither [as] a consumer's advocate nor his adversary," they do not "stand in the shoes of the consumer."  *Id.* at 944.

The Seventh Circuit's holding is supported by basic principles of federalism. A contrary holding would paralyze state debt-collection proceedings and federalize large swaths of state-court legal practice, transmuting any arguably misleading in-court statement into a federal civil claim for damages.  *See Kropelnicki*, 290 F.3d at 127 (noting that this Court's FDCPA decisions aim to "protect debt collectors against liability for bizarre or idiosyncratic interpretations" of their communications (brackets and citation omitted)).  But this form of "Congressional interference" with the orderly adjudication of claims in state "would upset the usual con-

stitutional balance of federal and state powers." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991). Because Congress did not "make its intention to do so 'unmistakably clear in the language of the statute,'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)), the FDCPA cannot properly be read to cover state-court submissions.

*    *    *

The affidavits of merit and service at issue here were intended for the clerks and judges of the NYCCC, who acted as "intermediaries" with the full ability to "protect the consumer" if they concluded in a given case that a default judgment was unwarranted. *Kropelnicki*, 290 F.3d at 128. The FDCPA does not extend to such communications.

## III. The District Court Erred By Failing To Exclude From The Class Definition Purported Damages Claims That Are Barred By The *Rooker-Feldman* Doctrine.

Plaintiffs now intend to seek recovery of any amounts paid under default judgments as "remitt[ance] . . . damages." Pls.' 23(f) Opp. at 15; *see also*, *e.g.*, JA331. Permitting them to seek and recover such damages would directly violate the *Rooker-Feldman* doctrine. The district court lacks subject-matter jurisdiction to adjudicate any claims for those damages, and the district court accordingly should have excluded remittance damages from the class definition.

### A. The Lower Federal Courts Lack Jurisdiction To Consider Collateral Challenges To State-Court Judgments.

Named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the *Rooker-Feldman*

38

doctrine prohibits lower federal courts from exercising jurisdiction over claims that are essentially appeals from state-court judgments. Instead, 28 U.S.C. § 1257 vests such jurisdiction exclusively in the Supreme Court of the United States. Thus, the lower federal courts cannot adjudicate any "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine applies to default judgments obtained in state court in the same manner as any other type of judgment. *See Ballyhighlands, Ltd. v. Bruns*, No. 98-9373, 182 F.3d 898 (table), 1999 WL 377098, at *2 (2d Cir. May 28, 1999); *see also*, *e.g.*, *Forjone v. Federated Fin. Corp. of Am.*, 816 F. Supp. 2d 142, 147 (N.D.N.Y. 2011); *Ackermann v. Doyle*, 43 F. Supp. 2d 265, 273 (E.D.N.Y. 1999).

Following *Exxon Mobil*, this Court has enumerated four requirements for applying *Rooker-Feldman*. The federal-court plaintiff must (1) have lost in state court; (2) "complain of injuries caused by a state court judgment"; and (3) "invite review and rejection" of the state-court judgment. Finally, (4) the state-court judgment must have been issued before the federal suit began. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citations omitted).

*Hoblock* observed that a complaint of injury from an underlying state-court judgment is "the core requirement from which the others derive," and thus "focusing on it helps clarify when the doctrine applies." 422 F.3d at 87. This requirement is implicated when the state-court judgment is the "source" of the injury—

that is, the harm derives from that judgment and would not have occurred in its absence. In those circumstances, the "invite review and rejection" requirement is typically satisfied as well: A plaintiff who claims that a state-court judgment caused him injury, and seeks damages as a result, necessarily invites the federal court to hold the judgment in error and to reject it. *See id.* at 85 n.4. Accordingly, the "causal relationship" between the state-court judgment and the alleged injury is the central question on which application of the *Rooker-Feldman* doctrine turns. *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007).

### B. By Seeking "Remittance" Damages, Plaintiffs Complain Of Injuries Directly Caused By State-Court Default Judgments In Violation Of *Rooker-Feldman.*

The damages sought by Plaintiffs in the amount of any funds "extracted" from class members in connection with the default judgments are the quintessential example of injuries that were caused by state-court judgments and are therefore barred under the *Rooker-Feldman* doctrine. Defendants were able to obtain those funds only by executing on the default judgments, which enabled and authorized them to institute collection actions and other forms of execution. The default judgments were the actual *mechanism* by which Defendants obtained those funds. By contrast, if Defendants had merely filed the affidavits of merit or service without applying for (and being awarded) default judgments, they would have had no ability to take the money or property, and thus those damages never would have materialized. The connection between the default judgments and the claimed injuries is the very model of a "causal relationship." *McKithen*, 481 F.3d at 97–98.

40

It is well established that, if a state-court judgment awards money or property to a creditor, a federal action for its return—or for the equivalent in damages—is barred under *Rooker-Feldman.*  Whether the case involves the repossession of a car in connection with a state-court judgment, *Gray v. Americredit Fin. Serv., Inc.*, No. 07 Civ. 4039, 2009 WL 1787710, at *2, *4–*5 (S.D.N.Y. June 23, 2009), or the foreclosure of a house, *Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, No. 06-CV-1640, 2007 WL 1160433, at *3 (E.D.N.Y. Apr. 18, 2007), *aff'd*, No. 07-2224, 2008 WL 4962990 (2d Cir. Nov. 21, 2008), the rule is the same:  Because the injury was caused by the state court judgment, any federal action for damages as a result of the judgment is barred by the *Rooker-Feldman* doctrine.  As this Court recognized in affirming the district court in *Trakansook*, "[t]o the extent that [the plaintiff] argues she was injured by the state court's decision foreclosing on her property," the district court lacked jurisdiction "because the claim 'complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.'"  No. 07-2224, 2008 WL 4962990, at *1 (quoting *Hoblock*, 422 F.3d at 86).

Indeed, district courts in this circuit have reached precisely this conclusion in cases with facts highly similar to those here.  In *Coble v. Cohen & Slamowitz, LLP*, the Southern District of New York rejected an attempt to plead two "actual damages subclasses" of consumers who had been garnished or had bank accounts restrained as a result of default judgments that had allegedly been obtained improperly; the plaintiffs sought "to recover actual damages under the FDCPA and state law in the amounts collected post-judgment."  No. 11 Civ. 1037, 2013 WL

1500418, at *1, *2 (S.D.N.Y. Apr. 10, 2013) (emphasis omitted).  But because the defendants "would have had no right to collect those monies without the State Judgment," "the State Judgment caused the actual damages sought to be recovered" and thus the proposed amendments were "barred by the *Rooker-Feldman* doctrine."  *Id.* at *2; *see also Raydos v. Cohen & Slamowitz, LLP*, No. 08-cv-4A, 2009 WL 2929166, at *2 (W.D.N.Y. Sept. 9, 2009) (noting that an FDCPA claim challenging wage garnishment and restraint of a bank account in reliance on a state-court default judgment would create *Rooker-Feldman* problems because "[t]he State Judgment . . . caused at least part of any actual damages that [the debtor] could have claimed").

The same principles apply here.  Any funds that LR Credit "extracted" from class members were obtained exclusively by means of the default judgments, in the absence of which no money could have been collected.  The default judgments therefore "caused" the injuries of which Plaintiffs are complaining, and *Rooker-Feldman* bars any recovery in federal court.  That is true regardless of whether the money taken from any class member represents the entire amount of the default judgment or only part:  Either way, any funds that were collected through means of the default judgment implicate the *Rooker-Feldman* doctrine.[6]

---

6   *Rooker-Feldman* does permit suits for injuries caused by conduct independent of a state-court judgment.  If the filing of a false affidavit of merit or service *by itself* caused harm to an individual debtor—perhaps if the debtor learned that such an affidavit had been filed against him and then spent money challenging it—an action for that injury might be permissible in federal court.  As explained above, the fact that any such injuries are necessarily individualized further confirms that class certification is inappropriate.  *See supra* at 31–32.  But even if that were not

[Footnote continued on next page]

**C.    The District Court Was Required To Exclude "Remittance" Damages From The Class Definition.**

Because Plaintiffs' remittance-damages theory is inconsistent with the *Rooker-Feldman* doctrine, LR Credit asked the district court to emphasize, as part of its obligation to "define the class and the class claims, issues, or defenses," Fed. R. Civ. P. 23(c)(1)(B), that these amounts are not included within the class definition. The district court, however, declined to address the issue because "[t]he class certification order does not purport to address the damages, if any, that may be awarded," and damages can be "addressed later . . . if necessary." SA43. This decision ignores Rule 23's requirement that the district court provide a "full and clear articulation of the litigation's contours *at the time of class certification*." *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 186 (3d Cir. 2006) (emphasis added).

Under Rule 23(c)(1)(B), "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses." This requirement "helps district courts, appellate courts, attorneys, and parties all proceed with more information and mutual understanding." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 (1st Cir. 2009) (citing Fed. R. Civ. P. 23 advisory comm. notes on 2003 amendments). It also helps ensure compliance with Rule 23(c)(4),

_____

[Footnote continued from previous page]

so, there would be no justification for allowing class-wide adjudication of damages claims seeking recovery of the total amount of all executions on the default judgments, which is precisely the $100-plus million windfall that Plaintiffs and their counsel seek here. Those amounts were obtained exclusively through the default judgments themselves.

which "imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified." *Chiang v. Veneman*, 385 F.3d 256, 267 (3d Cir. 2004).

For this reason, district courts must carve out claims or issues from their class-certification orders when those claims or issues are not appropriate for class treatment. *See*, *e.g.*, *Behrend*, 133 S. Ct. at 1431 (noting that, "in its certification order, the District Court limited respondents' proof of antitrust impact to [one] theory [of harm]") (internal quotation marks omitted). Indeed, the district court did so *in this case* when it excluded Plaintiffs' FDCPA claim from the Rule 23(b)(2) class after acknowledging that the FDCPA does not authorize injunctive relief. *See* SA1. To provide appropriate guidance for the parties, and to define the precise scope of future class litigation, the district court should have done the same with respect to Plaintiffs' non-cognizable claims for remittance damages. The court's decision that the validity of those claims could be postponed until some later stage of the litigation is inconsistent with its duties under Rule 23.

## IV. The District Court Erred In Certifying An Injunctive Class Asserting RICO Claims Because The Civil RICO Statute Does Not Permit Private Parties To Seek Injunctive Relief.

Because Plaintiffs cannot satisfy Rule 23(a), they necessarily cannot obtain certification of an injunctive class under Rule 23(b)(2). Yet the district court's Rule 23(b)(2) certification was erroneous for an additional reason: Although the Rule 23(b)(2) class includes claims under RICO, that statute does not permit private injunctive relief. And while the court acknowledged that "neither injunctive nor declaratory relief is available under the FDCPA" and accordingly excluded

44

*that* claim from the Rule 23(b)(2) class, SA34–35, it erroneously failed to do the same for Plaintiffs' RICO claims.

"[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on that issue." *McLaughlin*, 522 F.3d at 228 (citation omitted). And whether RICO authorizes injunctive relief at all bears directly on whether "injunctive" relief is "appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2), and thus on whether certification is possible.

While this Court has "never definitively ruled on the issue" whether RICO permits a private plaintiff to seek injunctive relief, *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 243 (S.D.N.Y. 2002), the Court has repeatedly emphasized that it "seems altogether likely that [RICO] as it now stands was not intended to provide private parties injunctive relief." *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482, 489 n.20 (2d Cir. 1984), *rev'd on other grounds*, 473 U.S. 479 (1985); *see also Trane Co. v. O'Connor Sec.*, 718 F.2d 26, 28–29 (2d Cir. 1983) ("We have the same doubts as to the propriety of private party injunctive relief."). Those "doubts" (*Trane Co.*, 718 F.2d at 28) were well-founded, as the civil RICO statute does not authorize private parties to seek injunctive relief.

## A. The Text Of The RICO Statute Does Not Authorize Private Injunctive Relief.

The statute that creates RICO's rights of action for both private parties and the government, 18 U.S.C. § 1964, authorizes only a private remedy for damages, and reserves to the government the power to bring civil actions for injunctive re-

lief.  This is clear from subsection (c)—the provision authorizing *private* actions—which mentions only damages:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*Id.* § 1964(c).  The Supreme Court has repeatedly emphasized that, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mort. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979); *see also, e.g.*, *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) (requiring "strong indicia of a contrary congressional intent" to negate the implication that "Congress provided precisely the remedies it considered appropriate").  And because "Congress expressly granted private litigants a right to seek damages under the [RICO] statute, while remaining taciturn about a private litigant's ability to seek injunctive relief," a court "can neither infer a meaning that is unexpressed, nor ignore Congress's seemingly willful silence on the matter."  *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 445–46 (S.D.N.Y. 2008).

The remainder of Section 1964 provides additional confirmation that Congress did not intend to authorize an injunctive remedy for private litigants.  Subsection (a) grants federal jurisdiction to "prevent and restrain violations of section 1692," 18 U.S.C. § 1964(a), but subsection (b) authorizes only "[t]he Attorney General" to "institute proceedings [there]under," *id.* § 1964(b).  The private right of action in subsection (c) does not refer to subsection (a)'s grant of equitable ju-

46

risdiction.  But if Congress intended for private litigants *also* to be authorized to institute injunctive proceedings, it could easily have done so—and it certainly knew how.  *See*, *e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979).

### B.   The History Of The RICO Statute Demonstrates That Private Parties Cannot Pursue Injunctive Relief.

The history of Section 1964 removes any doubt on the issue.  When first passed by the Senate and transmitted to the House, the bill that eventually became RICO (S. 30) included what later became Section 1964(a) and (b), and no private right of action at all.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 486 (1985) ("The civil remedies in the bill passed by the Senate, S. 30, were limited to injunctive actions by the United States . . . ."); *see also* S. Rep. No. 91-617, at 24, 34, 80–83, 160 (1969).  Subsections (a) and (b) mimicked—and still do—Section 4 of the Sherman Act, 15 U.S.C. § 4, which was passed roughly eighty years earlier and had been construed by the Supreme Court to authorize injunctive actions only by the government, not by private parties.  *See Minnesota v. N. Sec. Co.*, 194 U.S. 48, 70–71 (1904).  If Congress had "intended a private RICO plaintiff to be able to obtain injunctive relief, it surely would have avoided language that had previously been held by the Supreme Court not to permit such relief."  *DeMent v. Abbott Capital Corp.*, 589 F. Supp. 1378, 1383 (N.D. Ill. 1984).

The private right of action—subsection (c)—was added only later, in committee by the House, without changing the remainder of Section 1964, and was "modeled . . . on the civil-action provision of the federal antitrust laws, [Section] 4 of the Clayton Act."  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267

(1992); *see also Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 150–51 (1987); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 241 (1987); *Sedima*, 473 U.S. at 489; H.R. Rep. No. 91-1549, at 35, 58 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4010, 4034. "[T]he House Committee's addition of the private damages remedy" thus did "not alte[r] the public-action thrust of the other subsection[s] of S. 30." *DeMent*, 589 F. Supp. at 1383 (citation omitted). And its model in the Clayton Act, Section 4, was *understood* to allow private actions only for damages—as the Supreme Court had previously construed it. *See Paine Lumber Co. v. Neal*, 244 U.S. 459, 471 (1917) ("[A] private person cannot maintain a suit for an injunction under [Section] 4 of the [Clayton Act].").[7]  A *different* section of the Clayton Act, Section 16—which RICO did not incorporate— authorized private injunctive actions. *See* 15 U.S.C. § 26. One "may fairly credit the 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used first in [Section] 7 of the Sherman Act, and later in the Clayton Act's [Section] 4." *Holmes*, 503 U.S. at 268. But while Section 4 of the Clayton Act does not permit injunctive relief, and thus "[p]rivate antitrust plaintiffs can . . . secure injunctive relief only by virtue of a separate section of the Clayton Act which expressly provides for private equita-

---

[7]    Section 4 of the Clayton Act was a "re-enact[ment]" of the "treble-damages remedy for persons injured by antitrust violations . . . first provided in [Section] 7 of the Sherman Act." *Pfizer Inc. v. India*, 434 U.S. 308, 311 (1978); *see also Holmes*, 503 U.S. at 267 n.13; *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 644 n.16 (1981). The Sherman Act had also been construed to preclude private injunctive actions. *See N. Sec. Co.*, 194 U.S. at 70–71.

ble actions," "RICO contains no parallel provision to section 16's grant of a private right to injunctive relief." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1087 (9th Cir. 1986).

Indeed, two separate amendments that would have authorized private injunctive actions were proposed and rejected by the House—once in committee and again on the chamber floor. *See* 116 Cong. Rec. 27,739 (1970) (committee); *id.* at 35,228; 35,346 (floor); *see also Sedima*, 473 U.S. at 487. The sponsor of both, Congressman Steiger, complained that the bill passed by the House "fail[ed] to provide . . . [an] important substantive remed[y] included in the Clayton Act: . . . equitable relief in suits brought by private citizens." 116 Cong. Rec. 35,227; 35,228 (1970). But other members were concerned about "the potential consequences that this new remedy might have," and so Mr. Steiger's amendments were omitted from the final bill. 116 Cong. Rec. 35,346 (remarks of Rep. Poff); *see also Agency Holding Corp.*, 483 U.S. at 154–55 (citing 116 Cong. Rec. 35,346). Subsequent Congresses have twice considered "broaden[ing] even further the remedies available under RICO" by "permit[ing] private actions for injunctive relief," *Agency Holding Corp.*, 483 U.S. at 155, and both times have declined to do so, *see* S. 16, 92d Cong. (1972); S. 13, 93d Cong. (1973).

### C.    The Weight Of Authority Confirms That RICO Does Not Authorize Injunctive Relief In Private Lawsuits.

Unsurprisingly given the text and history of the statute, the caselaw supports the conclusion that RICO does not authorize private injunctive actions. The Supreme Court has repeatedly indicated that it understands Section 1964(c) to be a

"private treble-damages" provision. *Agency Holding Corp.*, 483 U.S. at 150–52; *see also*, *e.g.*, *McMahon*, 482 U.S. at 240–41; *Sedima*, 473 U.S. at 486–88, 490, 493. "The Supreme Court's apparent endorsement of the conclusion . . . reinforces this reading of the statute." *Wollersheim*, 796 F.2d at 1084 (citing *Sedima*, 473 U.S. at 486–87).

Consistent with these decisions, the Ninth Circuit has squarely held that "injunctive relief is not available to a private party in a civil RICO action." *Wollersheim*, 796 F.2d at 1084. It concluded that the "plain wording" of Section 1964 "limit[s] private plaintiffs only to damages, costs, and fees" and found "*no indication* [otherwise] in the language." *Id.* at 1088. Together with the legislative history's "clear message" that Congress affirmatively intended not to authorize a private injunctive remedy, the Ninth Circuit concluded that the evidence "suggest[s] overwhelmingly that no private equitable action should be implied under civil RICO." *Id.* at 1086, 1088. At least two other courts of appeals have expressed strong doubts regarding the propriety of injunctive relief in civil RICO cases. *See Johnson v. Collins Entm't Co.*, 199 F.3d 710, 726 (4th Cir. 1999); *In re Fredeman Litig.*, 843 F.2d 821, 828–30 (5th Cir. 1988).[8] This Court should hold accordingly,

---

[8] The only court of appeals decision to reach a contrary conclusion is the Seventh Circuit's opinion in *National Organization for Women, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir. 2001). The Supreme Court granted review of that decision but ultimately reversed on other grounds. *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003). During briefing before the Supreme Court, however, the United States argued that "the sole authority to seek final and interim injunctive relief against racketeering activities and enterprises is given to the Attorney General." U.S. Br. 7, *Scheidler*, 537 U.S. 393 (Nos. 01-1118 & 01-1119). Thus, the

[Footnote continued on next page]

50

and reverse the district court's certification of a Rule 23(b)(2) injunctive class that includes RICO claims.

*     *     *

The district court in this case certified Rule 23(b)(2) and Rule 23(b)(3) classes seeking injunctive relief and damages under (variously) the FDCPA, RICO, and state law. Because the putative class members do not share the theory of injury advanced by the class proponents in support of certification, certification of any class was inappropriate. Certification was especially inappropriate for the Rule 23(b)(3) class because individualized questions of liability, injury, causation, damages, and timeliness predominate over any common questions.

In addition to these fatal defects, no FDCPA class should have been certified because the FDCPA does not extend to the conduct challenged by Plaintiffs—namely, supposedly false court filings. The district court improperly declined to exclude Plaintiffs' non-cognizable claims for remittance damages from the class definition, even though that theory of damages is squarely foreclosed by the *Rooker-Feldman* doctrine. And the court below erred in including RICO claims in the Rule 23(b)(2) injunctive class because RICO does not authorize private injunctive relief.

---

[Footnote continued from previous page]
United States has joined the weight of authority in concluding that RICO does not permit injunctive relief in private lawsuits.

## CONCLUSION

For the foregoing reasons, the district court's order granting class certification should be reversed or, at a minimum, vacated.

Dated: September 25, 2013          Respectfully submitted,

_/s/ Miguel A. Estrada_

| | |
|---|---|
| Michael Zimmerman | Miguel A. Estrada |
| ZIMMERMAN JONES BOOHER LLC | *Counsel of Record* |
| Kearns Building, Suite 721 | Scott P. Martin |
| 136 South Main Street | GIBSON, DUNN & CRUTCHER LLP |
| Salt Lake City, UT  84101 | 1050 Connecticut Avenue, N.W. |
| (801) 924-0200 | Washington, D.C.  20036 |
| | (202) 955-8500 |
| Lewis Harry Goldfarb | |
| Adam R. Schwartz | Ralph C. Ferrara |
| MCELROY, DEUTSCH, MULVANEY | PROSKAUER ROSE LLP |
| & CARPENTER LLP | 1001 Pennsylvania Avenue, NW |
| 1300 Mount Kemble Avenue | Washington, DC  20004 |
| Morristown, NJ  07962 | (202) 416-6800 |
| (973) 425-8689 | |
| Mark D. Harris | |
| PROSKAUER ROSE LLP | |
| Eleven Times Square | |
| New York, NY  10036 | |
| (212) 969-3000 | |

*Counsel for Leucadia National Corporation;*
*L-Credit, LLC; LR Credit, LLC; LR Credit 10, LLC;*
*LR Credit 14, LLC; LR Credit 18, LLC; LR Credit 21, LLC;*
*Joseph A. Orlando; and Philip M. Cannella*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,975 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman typeface.


   /s/ Miguel A. Estrada
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2013, an electronic copy of (1) the foregoing Brief for Appellants Leucadia National Corporation; L-Credit, LLC; LR Credit, LLC; LR Credit 10, LLC; LR Credit 14, LLC; LR Credit 18, LLC; LR Credit 21, LLC; Joseph A. Orlando; and Philip M. Cannella; (2) the parties' Special Appendix; and (3) the parties' Joint Appendix (Volumes I through III) were filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system. The cover pages only of the sealed Volumes IV and V of the parties' Joint Appendix were also filed electronically, with paper copies to follow by hand delivery to the Clerk on September 26, 2013.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system, with service of the sealed JA Volumes IV and V to be effected by overnight delivery to all counsel of record.

    /s/ Miguel A. Estrada
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036