# 13-2742-cv(L),
## 13-2747-cv(CON), 13-2748-cv(CON)

# United States Court of Appeals
## for the
## Second Circuit

MONIQUE SYKES; REA VEERABADREN; KELVIN PEREZ; and CLIFTON ARMOOGAM, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

– v. –

*(For Continuation of Caption See Reverse Side of Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPELLEES' APPENDIX

NEW ECONOMY PROJECT
176 Grand Street, Suite 300
New York, New York 10013
(212) 680-5100

MFY LEGAL SERVICES, INC.
299 Broadway, 4th Floor
New York, New York 10007
(212) 417-3701

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

CHARLES J. OGLETREE, JR.
Harvard Law School
1563 Massachusetts Avenue
Boston, Massachusetts 02138
(617) 495-5097

*Attorneys for Plaintiffs-Appellees*

MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS; MICHAEL YOUNG;
DAVID WALDMAN; KERRY LUTZ; TODD FABACHER; LEUCADIA NATIONAL
CORPORATION; L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC;
LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC; JOSEPH A.
ORLANDO; PHILIP M. CANNELLA; SAMSERV, INC.; WILLIAM MLOTOK;
BENJAMIN LAMB; MICHAEL MOSQUERA; and JOHN ANDINO,

*Defendants-Appellants,*

MEL HARRIS JOHN/JANE DOES 1–20; LR CREDIT JOHN/JANE DOES 1–20;
and SAMSERV JOHN/JANE DOES 1–20,

*Defendants.*

i

# Table of Contents

**Page**

Declaration of Herman De Jesus, for Plaintiffs, in Support of
Motion for Class Certification, Dated April 15, 2011.......... AA-1

Declaration of Eisha Jain, for Plaintiffs, in Support of Motion
for Class Certification and to Amend the Complaint,
Dated April 15, 2011............................................ AA-4

Exhibit A to Jain Declaration -
Summons and Complaint, Dated June 27, 2008 (*LR Credit
18, LLC v. Monique Sykes*, Civil Court, County of Bronx,
Index No. 55929/08) ............................................ AA-8

Exhibit B to Jain Declaration -
Affidavit of Service, Sworn to July 25, 2008
(Omitted herein)

Exhibit C to Jain Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to September 16, 2008 ................................ AA-10

Exhibit D to Jain Declaration -
Judgment on Default, Dated October 7, 2008.................... AA-11

Exhibit E to Jain Declaration -
Summons and Complaint, Dated April 12, 2006 (*LR
Credit 10, LLC v. Rea L. Moukengeschaie*, Civil Court,
County of Queens, Index No. 46440-06) ............................ AA-13

Exhibit F to Jain Declaration -
Affidavit of Service, Sworn to May 25, 2005
(Omitted herein)

Exhibit G to Jain Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to July 7, 2006........................................... AA-15

Exhibit H to Jain Declaration -
Judgment on Default, Dated August 8, 2006 .................... AA-16

Exhibit I to Jain Declaration -
Summons and Complaint, Dated October 8, 2007
(*LR Credit 14, LLC v. Kelvin Perez*, Civil Court,
County of Bronx, Index No. 86522/07) ............................ AA-17

ii

**Page**

Exhibit J to Jain Declaration -
Affidavit of Service, Sworn to December 26, 2007
(Omitted herein)

Exhibit K to Jain Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to February 5, 2008..................................................... AA-19

Exhibit L to Jain Declaration -
Judgment on Default, Dated February 19, 2008 .................. AA-20

Exhibit M to Jain Declaration -
Summons and Complaint, Dated May 27, 2010 (*LR Credit
21, LLC v. Clifton D. Armoogam*, Civil Court, County of
Queens, Index No. 65393-10) ............................................. AA-21

Exhibit N to Jain Declaration -
Affidavit of Service, Dated July 1, 2010 (Omitted herein)

Exhibit O to Jain Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to August 26, 2010.................................................... AA-23

Exhibit P to Jain Declaration -
Judgment on Default, Dated September 15, 2010................ AA-24

Exhibit Q to Jain Declaration -
Proposed Third Amended Class Action Complaint
and Jury Demand.................................................................. AA-25

Declaration of Matthew D. Brinckerhoff, for Plaintiffs,
in Support of Motion for Class Certification,
Dated August 1, 2011.......................................................... AA-111

Exhibit A to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to September 16, 2008 ............................................. AA-114

Exhibit B to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to July 7, 2006.......................................................... AA-115

Exhibit C to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to February 5, 2008.................................................. AA-116

iii

**Page**

Exhibit D to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to August 26, 2010 .................................................... AA-117

Exhibit E to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to June 23, 2009 ....................................................... AA-118

Exhibit F to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to September 30, 2008 .............................................. AA-119

Exhibit G to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to April 7, 2009 ........................................................ AA-120

Exhibit H to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to June 16, 2009 ....................................................... AA-121

Exhibit I to Brinckerhoff Declaration -
Affidavit of Merit of Todd Fabacher,
Sworn to July 24, 2007 ........................................................ AA-122

Exhibit J to Brinckerhoff Declaration -
Affirmation of Seth Schlanger,
Dated September 14, 2006 ................................................... AA-123

Exhibit K to Brinckerhoff Declaration -
Affidavit of William Mlotok, Sworn to July 12, 2011 ......... AA-129

Exhibit L to Brinckerhoff Declaration -
Affidavit of John Andino, Sworn to July 23, 2011 .............. AA-130

Exhibit M to Brinckerhoff Declaration -
Transcript of Conference, Dated June 27, 2011 ................... AA-131

Declaration of Evan S. Cohan, Dated July 31, 2011 ................ AA-147

Declaration of Carolyn E. Coffey, Dated August 1, 2011 ....... AA-149

Declaration of Bruce Lazarus, Dated August 1, 2011 .............. AA-152

Declaration of Nicholas Egleson, Dated April 14, 2011 .......... AA-155

Exhibit A to Egleson Declaration -
Deposition Transcript of Todd Fabacher,
Dated March 1, 2011 (Omitted herein)

iv

**Page**

Declaration of Nicholas Egleson, Dated July 31, 2011............ AA-160

Exhibit A to Egleson Declaration -
Table Entitled "Simultaneous Visits to
Different Addresses" ........................................................... AA-168

Exhibit B1 to Egleson Declaration -
Table Entitled "Mosquera Impossible Travel
10/2/2008"............................................................................ AA-169

Exhibit B2 to Egleson Declaration -
Table Entitled "Lamb Impossible Travel
12/8/2007"............................................................................ AA-171

Exhibit B3 to Egleson Declaration -
Table Entitled "Stevens Impossible Travel
10/15/2007".......................................................................... AA-174

Exhibit B4 to Egleson Declaration -
Table Entitled "Rivera Impossible Travel
12/15/2007".......................................................................... AA-176

Exhibit B5 to Egleson Declaration -
Table Entitled "Andino Impossible Travel
1/28/2008"............................................................................ AA-178

Exhibit B6 to Egleson Declaration -
Table Entitled "Abdelrahman Impossible Travel
10/6/2008"............................................................................ AA-181

Exhibit C to Egleson Declaration -
Table Entitled "High Volume of Visits per Day
by Top Six Servers" ............................................................ AA-183

Exhibit D to Egleson Declaration -
Table Entitled "Service Methods in NYC Civil
by Top Six Servers for Claimed Services"........................... AA-184

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONIQUE SYKES, RUBY COLON, REA
VEERABADREN, FATIMA GRAHAM,
KELVIN PEREZ, SAUDY RIVERA, PAULA
ROBINSON, and ENID ROMAN, individually
and on behalf of all others similarly situated,

                              Plaintiffs,

     - against -

MEL S. HARRIS AND ASSOCIATES LLC;
MEL S. HARRIS; MICHAEL YOUNG;
DAVID WALDMAN; KERRY LUTZ; TODD
FABACHER; MEL HARRIS JOHN/JANE
DOES 1-20; LEUCADIA NATIONAL
CORPORATION; L-CREDIT, LLC; LR
CREDIT, LLC; LR CREDIT 10, LLC; LR
CREDIT 12, LLC; LR CREDIT 14, LLC; LR
CREDIT 18, LLC; LR CREDIT 19, LLC;
JOSEPH A. ORLANDO; PHILIP M.
CANNELLA; LR CREDIT JOHN/JANE
DOES 1-20; SAMSERV, INC.; WILLIAM
MLOTOK; BENJAMIN LAMB; MICHAEL
MOSQUERA; JOHN ANDINO; HUSAM AL-
ATRASH; ASSMAT ABDELRAHMAN; and
SAMSERV JOHN/JANE DOES 1-20,

                              Defendants.

ECF Case
No. 09 Civ. 8486(DC)

**DECLARATION OF
HERMAN DE JESUS**

HERMAN DE JESUS declares under the penalty of perjury, pursuant to 28
U.S.C. § 1746, that the following is true and correct:

     1.     I am a Senior Program Associate with the Neighborhood Economic

Development Advocacy Project, counsel for Plaintiffs in this action.

     2.     In September and November 2009, I conducted research to determine: (1)

the number of lawsuits filed by LR Credit entities from 2006 through November 2009 in

the New York City Civil Court; and (2) the frequency with which LR Credit entities were

represented in these actions by Defendant Mel S. Harris and Associates, LLC ("Mel

Harris LLC").

      3.     To conduct this research, I searched the NYS Unified Court System's E-

Courts case information system ("E-Courts"), available at

http://iapps.courts.state.ny.us/webcivilLocal/LCMain, for cases in which a party named

"LR Credit" was the plaintiff.  Use of this search term generated results for all LR Credit

entities that had filed lawsuits, including LR Credit 10, LLC; LR Credit 12, LLC; LR

Credit 14, LLC; LR Credit 18, LLC; and LR Credit 19, LLC, among others.  Because the

LR Credit entities had filed so many lawsuits, I performed a separate search for each of

the five counties in New York City per year from 2006 through November 2009.  I

manually reviewed each set of search results and noted each instance in which a firm

other than Defendant Mel Harris LLC represented the LR Credit plaintiff.  I added the

results of each search in order to obtain:  (1) the cumulative total of cases filed by LR

Credit entities in New York City Civil Court from 2006 through November 2009; and (2)

the cumulative total of cases filed by LR Credit entities in New York City Civil Court

from 2006 through November 2009 in which Defendant Mel Harris LLC represented the

plaintiff.

      4.     My research revealed that LR Credit entities filed 124,838 cases in the

New York City Civil Court from 2006 through November 2009 and that Defendant Mel

Harris LLC represented the plaintiff in 99.63% of the cases.

      5.     In conducting this research, I could not determine the exact number of

default judgments entered in these cases.  However, I did observe that the vast majority

AA-3

of cases were marked as "disposed" with no appearance by the defendant, indicating a

high likelihood that a default judgment was entered.

6.      I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 15, 2011
       New York, NY

_HERMAN DE JESUS_

HERMAN DE JESUS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE SYKES, RUBY COLON, REA VEERABADREN, FATIMA GRAHAM, KELVIN PEREZ, SAUDY RIVERA, PAULA ROBINSON, and ENID ROMAN, individually and on behalf of all others similarly situated, | ECF Case<br>No. 09 Civ. 8486 (DC) |
| Plaintiffs, | |
| - against - | **DECLARATION OF EISHA JAIN** |
| MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS; MICHAEL YOUNG; DAVID WALDMAN; KERRY LUTZ; TODD FABACHER; MEL HARRIS JOHN/JANE DOES 1-20; LEUCADIA NATIONAL CORPORATION; L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC; LR CREDIT 12, LLC; LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 19, LLC; JOSEPH A. ORLANDO; PHILIP M. CANNELLA; LR CREDIT JOHN/JANE DOES 1-20; SAMSERV, INC.; WILLIAM MLOTOK; BENJAMIN LAMB; MICHAEL MOSQUERA; JOHN ANDINO; HUSAM AL-ATRASH; ASSMAT ABDELRAHMAN; and SAMSERV JOHN/JANE DOES 1-20, | |
| Defendants. | |

EISHA JAIN, an attorney duly admitted to practice in the Southern District of New York, declares under penalty of perjury as follows:

1.     I am associated with the law firm of Emery Celli Brinckerhoff & Abady LLP, which, along with MFY Legal Services and the Neighborhood Economic Development Advocacy Project, represents Plaintiffs in the above-captioned matter. I submit this declaration in support of Plaintiffs' motion for class certification and motion to amend the complaint.

1

### Documents Concerning Plaintiff Monique Sykes

2.      Attached as Exhibit A is a true and correct copy of the Summons and Complaint in the matter LR Credit 18, LLC v. Monique Sykes, Civil Court, County of Bronx, Index No. 55929/08 ("Leucadia lawsuit against Ms. Sykes"). The summons is date stamped June 27, 2008.

3.      Attached as Exhibit B is a true and correct copy of the affidavit of service. dated July 25, 2008, and submitted by Samserv Defendants in the Leucadia lawsuit against Ms. Sykes.

4.      Attached as Exhibit C is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated September 16, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Sykes.

5.      Attached as Exhibit D is a true and correct copy of the default judgment entered against Ms. Sykes on October 7, 2008 for the amount of $2522.61.

### Documents Concerning Plaintiff Rea Veerabadren (formerly Rea L. Moukengeschaie)

6.      Attached as Exhibit E is a true and correct copy of the Summons and Complaint in the matter LR Credit 11, LLC v. Rea L. Moukengeschaie, Civil Court, County of Queens, Index No. 46440-06 ("Leucadia lawsuit against Ms. Veerabadren). The summons is date stamped April 12, 2006.

7.      Attached as Exhibit F is a true and correct copy of the affidavit of service, dated May 25, 2005, and submitted by Samserv Defendants in the Leucadia lawsuit against Ms. Veerabadren.

8.      Attached as Exhibit G is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated July 7, 2006, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Veerabadren.

9.      Attached as Exhibit H is a true and correct copy of the default judgment entered against Ms. Veerabadren on August 8, 2006 for the amount of $7260.29.

***Documents Concerning Kelvin Perez***

10.     Attached as Exhibit I is a true and correct copy of the Summons and Complaint in the matter LR Credit 14, LLC v. Kelvin Perez, Civil Court, County of Bronx, Index No. 86522/07 ("Leucadia lawsuit against Mr. Perez").

11.     Attached as Exhibit J is a true and correct copy of the affidavit of service, dated December 26, 2007, and submitted by Samserv Defendants in the Leucadia lawsuit against Mr. Perez.

12.     Attached as Exhibit K is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated February 5, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Perez.

13.     Attached as Exhibit L is a true and correct copy of the default judgment entered against Mr. Perez on February 19, 2008 for the amount of $2009.99.

***Documents Concerning Clifton D. Armoogam***

14.     Attached as Exhibit M is a true and correct copy of the Summons and Complaint in the matter LR Credit 21, LLC v. Clifton D. Armoogam, Civil Court, County of Queens, Index No. 65393-10  ("Leucadia lawsuit against Mr. Armoogam).  The summons is date stamped May 27, 2010.

15.     Attached as Exhibit N is a true and correct copy of the affidavit of service, dated July 1, 2010, and submitted by Samserv Defendants in the Leucadia lawsuit against Mr. Armoogam.

16.    Attached as Exhibit O is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated August 26, 2010, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Armoogam.

17.    Attached as Exhibit P is a true and correct copy of the default judgment entered against Mr. Armoogam on September 15, 2010 for the amount of $6,264.88.

**_Plaintiffs' Proposed Third Amended Class Action Complaint_**

18.    Attached as Exhibit Q is a true and correct copy of Plaintiffs' proposed Third Amended Class Action Complaint.

Dated: April 15, 2011
       New York, New York

                                        /s/
                              EISHA JAIN

CONSUMER CREDIT TRANSACTION
**IMPORTANT!! You Are Being Sued!! This is a Court Paper - A SUMMONS.**

Don't throw it away!! Talk to a Lawyer right away. Part of your pay can be taken from you (Garnisheed) if you do not bring this to court, or see a Lawyer. Your property can be taken and your credit rating can be hurt!! You may have to pay other costs too!! If you can't pay for your own Lawyer bring these papers to this court right away. The clerk (personal appearance) will help you.

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

LR CREDIT 18, LLC

|  | |
|---|---|
| | Plaintiff, |
| | Plaintiff's Residence: |

Index No.

C/O L-CREDIT, LLC 315 PARK AVE SOUTH
NEW YORK, NY 10010

-AGAINST-

**SUMMONS - ORIGINAL**

MONIQUE S SYKES
777 MACE AVE APT 7C
BRONX, NY 10467

055320

Defendant(s)
The Basis of Venue is: Defendant's Residence

To the above named defendant(s):
YOU ARE HEREBY SUMMONED to appear in the CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX, at the office of the clerk of the said Court at 851 GRAND CONCOURSE in the county of BRONX, City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the clerk; upon your failure to answer, judgment will be taken against you for the sum of $2359.51 with interest on the sum of $1907.51 from date of the filing of complaint, and the costs of this action.

Dated 06/10/2008

By: Kerry H. Lutz
Mel S. Harris and Associates, LLC
Attorneys for Plaintiff
5 Hanover Square, 8th Floor
New York, NY 10004
(212)571-4900 ext. 3998

FEE PAID
JUN 27 2008
CIVIL COURT
BRONX COUNTY

Note the law provides that:
a) If this summons served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY DAYS after such service: or  b) If this summons is served by it's delivery to any person other than you personally or is served outside the City of New York, or by publication; or by any other means other than personal delivery to you within the City of New York, you are allowed THIRTY DAYS after the proof of service is filed with the Clerk of this Court within which to appear and answer.

887227-1 / LRCR18 / 5149230750022307 28289/5

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

LR CREDIT 18, LLC
                    PLAINTIFF(S)                    Index No.
                                     **COMPLAINT**

        -AGAINST-

MONIQUE S SYKES

        DEFENDANT(S)

Plaintiff by its attorneys, Mel S. Harris and Associates LLC, complaining of the defendant(s) respectfully allege upon information and belief as follows:

1. Plaintiff, LR CREDIT 18, LLC a LIMITED LIABILITY CORPORATION doing business within the State of NY, is a passive debt buyer exempt from (i) from the definition of a "debt collection agency" and (ii) the licensing provisions under the New York City Administrative Code §§ 20-489 and 20-490, respectively, as interpreted by the New York City Department of Consumer Affairs.

2. Upon information and belief defendant(s) resides or is employed in the county in which this action is brought; or that the defendant(s) transacted business within the county in which this action is brought in person or through an agent and that the instant cause of action arose out of said transaction.

3. Upon information and belief that the defendant(s) entered into a Retail Charge Account Agreement [Account Num#5149230750022307], with JPMORGAN CHASE BANK, wherein defendant agreed to pay JPMORGAN CHASE BANK all amounts charged to said account by the authorized use thereof.

4. Upon information and belief the agreement containing the terms and conditions governing the use of the charge account, including terms of payment was mailed to defendant(s).

5. Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests therein.

6. Upon information and belief thereafter defendant incurred charges by use of the said Charge Account in the sum of $2359.51, including accrued interest from defendant(s) date of default 10/16/2005, no part of which sum has been paid, although duly demanded.

7. There is now due and owing to plaintiff from defendant(s) the agreed total sum of $2359.51 with interest on $1907.51 from date of the filing of complaint.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2359.51 together with interest on $1907.51 from date of the filing of complaint, plus the costs of this action.

**Dated 06/10/2008**

Mel S. Harris and Associates LLC
Attorneys for Plaintiff

NEDAP-0685

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

Index No. 55929 BCV08

---

LR CREDIT 18, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

MONIQUE S SYKES

DEFENDANT(S)

---

STATE OF NEW YORK          )
COUNTY OF NEW YORK      ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#5149230750022307, owed to **JPMORGAN CHASE BANK.** As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **JPMORGAN CHASE BANK,** wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing an unpaid agreed balance of $2359.51.

That although duly demanded no part of the total sum of $2359.51 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2359.51 together with interest on $1907.51 from 06-27-2008 plus the costs of this action.

signed: _____

Sworn to before me this **16 day Of September, 2008.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

LR CREDIT 18, LLC
Plaintiff's Address:
C/O L-CREDIT, LLC 315 PARK AVE SOUTH
NEW YORK, NY 10010

Index No. 55929 BCV08

Plaintiff

against                        **JUDGMENT ON DEFAULT**

MONIQUE S SYKES
777 MACE AVE APT 7C
BRONX, NY 10467

Defendant(s)

| | | |
|---|---|---|
| Amount claimed in complaint | $ | 2359.51 |
| Less Attorney fees claimed [**waived**] | $ | 0.00 |
| Less Account Credit | $ | 0.00 |
| (Suit Balance) | $ | 2359.51 |
| Interest @ 9% on $1907.51 from 06-27-2008 | $ | 38.10 |
| Sub Total | $ | 2397.61 |

| | | | |
|---|---|---|---|
| Costs By Statute | $20.00 | | |
| Service Of Summons & Complaint | $20.00 | | |
| Filing of Summons & Complaint | $45.00 | | |
| Prospective Marshals Fees | $40.00 | | |
| Total Fees | | $ | 125.00 |
| Total | | $ | 2522.61 |

KERRY LUTZ, a partner of the firm Mel S Harris And Associates, LLC, attorneys of record for the plaintiff; affirms under the penalties of perjury that service of the summons and complaint has been made; that the disbursements specified herein have been or will necessarily be incurred and are reasonable in amount; that the time for the defendant(s) to appear or answer has expired and the plaintiff is entitled to judgment by default.

On 8/7/2008 affirmant mailed in a properly addressed and sealed envelope by first class mail a copy of the summons and complaint. Such envelope was deposited in an official depository of the U.S. Postal Service within the State of New York, to the defendant(s) herein at said defendant(s) last known residence address:MONIQUE S SYKES 777 MACE AVE APT 7C BRONX, NY 10467. Said envelope was marked "personal and confidential" not indicating that it was from an attorney or concerning an alleged debt. Same has not been returned. Said mailing herein was not less than twenty (20) days prior to the submission of this judgment for entry.

This action is against a natural person based on nonpayment of a contractual obligation. The summons and complaint contained and displayed at the top thereof the words, legend and caveat required by Sec (D) (F) of N.Y.C.C.C.R.208.6 This affirmation is also made in compliance with the Soldiers and Sailors Civil Relief Act of 1940 and amendments, and the N.Y.S. Soldiers and Sailors Relief Act of 1951, the said defendant(s) is (are) not at the present time in the Military Service of the U.S. and my belief is based upon the facts stated in the Non Military Affidavit heretofore filed herein.

Dated: New York, N.Y.: 09-16-2008

**BY: KERRY LUTZ**
**Mel S Harris And Associates, LLC**
**Attorneys for plaintiff**
**5 Hanover Square 8FL, New York, NY 10004 Tel: (212) 571-4900**
Judgment is rendered in favor of LR CREDIT 18, LLC residing at C/O L-CREDIT, LLC 315 PARK AVE SOUTH NEW YORK, NY
10010, against MONIQUE S SYKES , whose respective address(s) is/are 777 MACE AVE APT 7C BRONX, NY  10467 in the
sum of $2359.51 with interest of $38.10 and with the sum of  $125.00 costs and disbursements, amounting in all to the sum of  $2522.61
and it is adjudged that the plaintiff have execution therefor.

JUDGMENT ENTERED ON:_____   CLERK _____

887227-1 / LRCR18 / 5149230750022307        12843/26        OCT 0 7 2008

## CONSUMER CREDIT TRANSACTION
### IMPORTANT!! You Are Being Sued!! This is a Court Paper - A SUMMONS.

Don't throw it away!! Talk to a Lawyer right away. Part of your pay can be taken from you (Garnisheed) if you do not bring this to court, or see a Lawyer. Your property can be taken and your credit rating can be hurt!! You may have to pay other costs too!! If you can't pay for your own Lawyer bring these papers to this court right away. The clerk (personal appearance) will help you.

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS

046440

| | | |
|---|---|---|
| LR CREDIT 10, LLC | | |
| | Plaintiff, | Index No. |
| | | **SUMMONS** |
| -AGAINST- | | Plaintiff's Residence |
| | | C/O L-CREDIT, LLC 315 PARK AVE SOUTH |
| | | NEW YORK, NY 10010 |
| REA L MOUKENGESCHAIE | | |
| 4820 48TH ST APT 3F | | |
| FLUSHING, NY 11377 | | |
| | | Defendant(s) |

The Basis of Venue is: Defendant's Residence

To the above named defendant(s):
YOU ARE HEREBY SUMMONED to appear in the CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS, at the office of the clerk of the said Court at 89-17 SUTPHIN BOULEVARD in the county of QUEENS, City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the clerk; upon your failure to answer, judgment will be taken against you for the sum of $8035.29 with interest on the sum of $5700.98 from 03-21-2006 and the costs of this action.

**Dated 3/27/2006**

By: David Waldman
Mel S. Harris and Associates, LLC
Attorneys for Plaintiff
116 John Street Suite 1510
New York, NY 10038
(212)571-4900 ext. 3998

**Address for Payments:**
LRCR 10
PO Box 30132
New York, NY10087-0132

Note the law provides that:
a) If this summons served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY DAYS after such service: or  b) If this summons is served by it's delivery to any person other than you personally or is served outside the City of New York, or by publication, or by any other means other than personal delivery to you within the City of New York, you are allowed THIRTY DAYS after the proof of service is filed with the Clerk of this Court within which to appear and answer.

FILED
GENERAL CLERK
APR 12 2006
CIVIL COURT-QUEENS COUNTY
2006

275786-3 / LRCR10 / 85729409          14729/20

Case 1:09-cv-08486-DC Document 72-5 Filed 04/15/11 Page 3 of 3

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
_____

LR CREDIT 10, LLC
                    PLAINTIFF(S)                      Index No.
                                        **COMPLAINT**
         -AGAINST-

REA L MOUKENGESCHAIE

         DEFENDANT(S)
_____

Plaintiff by its attorneys, Mel S. Harris and Associates LLC, complaining of the defendant(s) respectfully allege upon information and belief as follows:

1. Plaintiff, LR CREDIT 10, LLC a LIMITED LIABILITY COMPANY doing business within the State of NY.
2. Upon information and belief defendant(s) resides or is employed in the county in which this action is brought; or that the defendant(s) transacted business within the county in which this action is brought in person or through an agent and that the instant cause of action arose out of said transaction.
3. Upon information and belief that the defendant(s) entered into a Retail Charge Account Agreement, with SEARS wherein defendant agreed to pay SEARS all amounts charged to said account by the authorized use thereof.
4. Upon information and belief the agreement containing the terms and conditions governing the use of the charge account, including terms of payment was mailed to defendant(s).
5. Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests therein.
6. Upon information and belief thereafter defendant incurred charges by use of the said Charge Account in the sum of $6987.21 no part of which sum has been paid, although duly demanded.
7. Defendant(s) having defaulted in payment under the terms of the agreement has incurred thereby agreed upon reasonable attorney fees of 15.00%, to wit: $1048.08.
8. There is now due and owing to plaintiff from defendant(s) the agreed total sum of $8035.29 with interest on $5700.98 from 03-21-2006.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $8035.29 together with interest on $5700.98 from 03-21-2006 plus the costs of this action.

Mel S. Harris and Associates LLC
Attorneys for Plaintiff                    **Address for Payments:**
116 John Street Suite 1510                 LRCR 10
New York, NY 10038                         PO Box 30132
(212)571-4900 ext. 3998                    New York, NY 10087-0132

275786-3 / LRCR10 / 85729409          14729/20



NEDAP-0017

COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 046440/06

---

LR CREDIT 10, LLC

                    PLAINTIFF
                                   **AFFIDAVIT OF MERIT**

         AGAINST

REA L MOUKENGESCHAIE
                    DEFENDANT(S)

---

STATE OF NEW YORK          )
COUNTY OF NEW YORK         ) ss

**Todd Fabacher** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff's assignor in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from the assignor, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 10, LLC [plaintiff] is a** LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of a debt owed to **SEARS.** As such LR CREDIT 10, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with plaintiff's assignor wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant by the assignor in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $6987.21.

That although duly demanded no part of the total sum of $6987.21 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $6987.21 together with interest on $5700.98 from 04-12-2006 plus the costs of this action.

                    signed:

Sworn to before me this **07 day Of July, 2006.**

         Michael Young
    Notary Public - State of New York
         No. 01YO4930598
       Qualified in Queens County
    Commission Expires June 20, 2010

275786-3 / LRCR10 / 85729409

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS

LR CREDIT 10, LLC
  Plaintiff's Address:
C/O L-CREDIT, LLC 315 PARK AVE SOUTH
NEW YORK, NY 10010                                   Index No. 046440/06

          against                                    Plaintiff
                                                     **JUDGMENT ON DEFAULT**
REA L MOUKENGESCHAIE
4820 48TH ST APT 3F                                                    QUEENS COUNTY
FLUSHING, NY  11377
                                    Defendant(s)

| | | |
|---|---|---|
| Amount claimed in complaint | $ | 8035.29 |
| Less Attorney fees claimed [waived] | $ | -1048.08 |
| Less Payments Made | $ | 0.00 |
| (Suit Amount Less Payments) | $ | 6987.21 |
| Interest @ 9% on $5700.98 from 04-12-2006 | $ | 118.08 |
| Sub Total (Suit Amount and Interest Less Payments) | $ | 7105.29 |

|  |  | | |
|---|---|---|---|
| Costs By Statute | $50.00 | | |
| Service Of Summons & Complaint | $20.00 | | |
| Filing of Summons & Complaint | $45.00 | | |
| Prospective Marshals Fees | $40.00 | | |
| Total Fees | | $ | 155.00 |
| Total | | $ | 7260.29 |

KERRY LUTZ, a partner of the firm Mel S Harris And Associates, LLC, attorneys of record for the plaintiff, affirms under the penalties of perjury that service of the summons and complaint has been made; that the disbursements specified herein have been or will necessarily be incurred and are reasonable in amount; that the time for the defendant(s) to appear or answer has expired and the plaintiff is entitled to judgment by default.

On 6/7/2006 affirmant mailed in a properly addressed and sealed envelope by first class mail a copy of the summons and complaint. Such envelope was deposited in an official depository of the U.S. Postal Service within the State of New York, to the defendant(s) herein at said defendant(s) last known residence address:REA L MOUKENGESCHAIE 4820 48TH ST APT 3F  FLUSHING, NY 11377. Said envelope was marked "personal and confidential" not indicating that it was from an attorney or concerning an alleged debt. Same has not been returned. Said mailing herein was not less than twenty (20) days prior to the submission of this judgment for entry.

This action is against a natural person based on nonpayment of a contractual obligation. The summons and complaint contained and displayed at the top thereof the words, legend and caveat required by Sec (D) (F) of N.Y.C.C.C.R.208.6   This affirmation is also made in compliance with the Soldiers and Sailors Civil Relief Act of 1940 and amendments, and the N.Y.S. Soldiers and Sailors Relief Act of 1951; the said defendant(s) is (are) not at the present time in the Military Service of the U.S. and my belief is based upon the facts stated in the Non Military Affidavit heretofore filed herein.

Dated: New York, N.Y.: 07-05-2006

Mel S Harris And Associates, LLC
Attorneys for plaintiff
116 John Street, New York, NY 10038 Tel: (212) 571-4900

Judgment is rendered in favor of LR CREDIT 10, LLC residing at C/O L-CREDIT, LLC 315 PARK AVE SOUTH NEW YORK, NY 10010, against REA L MOUKENGESCHAIE , whose respective address(s) is/are 4820 48TH ST APT 3F FLUSHING, NY 11377 in the sum of $6987.21 with interest of $118.08 and with the sum of $155.00 costs and disbursements, amounting in all to the sum of $7260.29 and it is adjudged that the plaintiff have execution therefor.

JUDGMENT ENTERED ON: ___AUG 0 8 2006___   CLERK 

275786-3 / LRCR10 / 85729409                1627/43

## CONSUMER CREDIT TRANSACTION
### IMPORTANT!! You Are Being Sued!! This is a Court Paper - A SUMMONS.

Don't throw it away!! Talk to a Lawyer right away. Part of your pay can be taken from you (Garnisheed) if you do not bring this to court, or see a Lawyer. Your property can be taken and your credit rating can be hurt!! You may have to pay other costs too!! If you can't pay for your own Lawyer bring these papers to this court right away.  The clerk (personal appearance) will help you.

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX.

LR CREDIT 14, LLC

|  |  |
|---|---|
| Plaintiff, | Index No. :    086522 |
| Plaintiff's Residence: | C/O L-CREDIT, LLC 315 PARK AVE SOUTH NEW YORK, NY 10010 |

-AGAINST-                                      **SUMMONS - ORIGINAL**

KELVIN PEREZ
239 BALCOM AVE APT 3
BRONX, NY 10465

Defendant(s)
The Basis of Venue is: Defendant's Residence

To the above named defendant(s):
YOU ARE HEREBY SUMMONED to appear in the CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX, at the office of the clerk of the said Court at 851 GRAND CONCOURSE in the county of BRONX, City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the clerk; upon your failure to answer, judgment will be taken against you for the sum of $1846.8 with interest on the sum of $1460.98 from date of the filing of complaint, and the costs of this action.

**Dated 10/8/2007**

By: Kerry H. Lutz
Mel S. Harris and Associates, LLC
Attorneys for Plaintiff
5 Hanover Square, 8th Floor
New York, NY 10004
(212)571-4900 ext. 3998

Note the law provides that:
a) If this summons served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY DAYS after such service: or  b) If this summons is served by it's delivery to any person other than you personally or is served outside the City of New York, or by publication, or by any other means other than personal delivery to you within the City of New York, you are allowed THIRTY DAYS after the proof of service is filed with the Clerk of this Court within which to appear and answer.



NEDAP-0617

COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

CREDIT 14, LLC

PLAINTIFF(S)       Index No.

# COMPLAINT

-AGAINST-

KELVIN PEREZ

DEFENDANT(S)

Plaintiff by its attorneys MEL S HARRIS AND ASSOCIATES LLC complaining of the defendant(s) upon information and belief respectfully allege as follows:

1 - Plaintiff is a domestic limited liability company organized under the laws of the State of New York..

2 - At all times hereinafter mentioned defendant(s) was and still is a resident of the County in which this action is brought; or that defendant(s) transacted business within the county in which this action is brought in person or through and agent or is employed therein.

3 - Defendant(s) entered into a Retail Installment Contract with plaintiff's assignor **BALLY TOTAL FITNESS CLUBS** for the use of such BALLY TOTAL FITNESS CLUBS's premises and related health and fitness services provided therein.

4 - Plaintiff's assignor **BALLY TOTAL FITNESS CLUBS** duly performed all conditions on its part to be performed under the Retail Installment Contract, a copy of which agreement underlying the transaction was delivered to the defendant(s) at or before the time of the transaction.

5.- Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests pertinent thereto.

6 - Defendant(s) defaulted in payment and under the terms of the Retail Installment Contract plaintiff opted to accelerate the agreed balance then due and owing from defendant(s) to plaintiff in the agreed sum of $1846.8, including accrued interest from defendant(s) date of default 10/31/2004, no part of which sum has been paid, although duly demanded.

7 - Due demand for payment of the agreed sum of $1846.8 has been made but same has not been received.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $1846.8 together with interest on $1460.98 from date of the filing of complaint, plus the costs and disbursements of this action.

**Dated 10/8/2007**

Mel S. Harris and Associates LLC
Attorneys for Plaintiff
5 Hanover Square, 8th Floor
New York, NY 10004
(212)571-4900 ext. 3998

777186-1 / LRCR14 / 15802770          24119/7



NEDAP-0616

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX
Index No. 86522 BCV07

LR CREDIT 14, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

KELVIN PEREZ

DEFENDANT(S)

STATE OF NEW YORK        )
                         ) ss
COUNTY OF NEW YORK       )

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 14, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of Account Num#2601258131005, owed to **BALLY TOTAL FITNESS CLUBS**. As such LR CREDIT 14, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

**BALLY TOTAL FITNESS CLUBS** duly performed all conditions on its part to be performed under the Retail Installment Contract, a copy of which agreement underlying the transaction was delivered to the defendant(s) at or before the time of the transaction.

Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests pertinent thereto.

Defendant(s) defaulted in payment and under the terms of the Retail Installment Contract plaintiff opted to accelerate the agreed balance then due and owing: to wit -- $1846.80.

That although duly demanded no part of the total sum of $1846.80 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $1846.80 together with interest on $1460.98 from 11-05-2007 plus the costs of this action.

signed: _____

Sworn to before me this **05 day Of February, 2008.**

O'CONNELL HORNE
Notary Public - State of New York
No. 01HO6119203
Qualified in New York County
Commission Expires 11-29-2008

777186-1 / LRCR14 / 15802770



NEDAP-0620

Bronx County Civil Court
CIVIL JUDGMENT

Plaintiff(s):
LR Credit 14, LLC

vs.

Defendant(s):
KELVIN PEREZ

Index Number:  CV-086522-07/BX

Judgment issued:   On Default

On Motion of:

Mel S. Harris & Associates LLC
5 Hanover Square, 8th Floor, New York, NY
10004-2614

| | | | | | |
|---|---|---|---|---|---|
| Amount claimed | $1,846.80 | Cost By Statute | $20.00 | Transcript Fee | $0.00 |
| Less Payments made | $0.00 | Index Number Fee | $45.00 | County Clerk Fee | $0.00 |
| Interest    11/05/2007 at 9% | $38.19 | Service Fee | $20.00 | Enforcement Fee | $40.00 |
| Attorney fees | $0.00 | Non Military | $0.00 | Other Disbursements | $0.00 |
| | | Notice of Trial | $0.00 | Other Costs | $0.00 |
| | | Jury Demand | $0.00 | | |

| Total Damages | $1,884.99 | Total Costs & Disbursements | $125.00 | Judgment Total | $2,009.99 |
|---|---|---|---|---|---|

The following named parties, addressed and identified as creditors below:

Plaintiff creditor(s) and address

(1) LR Credit 14, LLC
315 PARK AVE SOUTH, NEW YORK, NY 10010-

Shall recover of the following parties, addresses and identified debtors below

Defendant debtor(s) and address

(1) KELVIN PEREZ
239 BALCOM AVE., #3, BRONX, NY 10465-

Judgment entered at the Bronx County Civil Court, 851 Grand Concourse, Bronx, NY 10451, in the STATE OF NEW YORK in the total amount of $2,009.99 on 02/19/2008 at 08:10 AM.

Judgment sequence 1

Jack Baer, Chief Clerk Civil Court

Page 1 of 1

NEDAP-0619

## CONSUMER CREDIT TRANSACTION
### IMPORTANT!! You Are Being Sued!! This is a Court Paper - A SUMMONS.

Don't throw it away!! Talk to a Lawyer right away. Part of your pay can be taken from you (Garnisheed) if you do not bring this to court, or see a Lawyer. Your property can be taken and your credit rating can be hurt!! You may have to pay other costs too!!  If you can't pay for your own Lawyer bring these papers to this court right away.  The clerk (personal appearance) will help you.

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS          **065383**

| | | |
|---|---|---|
| LR CREDIT 21, LLC | | |
| | Plaintiff, | Index No. |
| | Plaintiff's Residence: | C/O L-CREDIT 315 PARK AVE SOUTH |
| | | NEW YORK, NY 10010 |
| -AGAINST- | | **SUMMONS - ORIGINAL** |
| CLIFTON D ARMOOGAM | | |
| 10455 108TH ST | | |
| SOUTH RICHMOND HILL, NY  11419 | | |
| | | Defendant(s) |

The Basis of Venue is: Defendant's Residence

To the above named defendant(s):

YOU ARE HEREBY SUMMONED to appear in the CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS, at the office of the clerk of the said Court at 89-17 SUTPHIN BOULEVARD in the county of QUEENS, City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the clerk; upon your failure to answer, judgment will be taken against you for the sum of $4891.65 plus interest from 12/9/2007, plus the costs of this action.

Dated 04/13/2010

**FILED**
GENERAL CLERK
MAY 27 2010
CIVIL COURT-QUEENS COUNTY
2010

By: David Waldman
Mel S. Harris and Associates, LLC
Attorneys for Plaintiff
5 Hanover Square, 8th Floor
New York, NY 10004
(212)571-4900 ext. 3998

**Address for Payments:**
LRCR
PO Box 30132
New York, NY 10087-0132

Note the law provides that:

a) If this summons served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY DAYS after such service: or  b) If this summons is served by it's delivery to any person other than you personally or is served outside the City of New York, or by publication, or by any other means other than personal delivery to you within the City of New York, you are allowed THIRTY DAYS after the proof of service is filed with the Clerk of this Court within which to appear and answer.

990156-1 / LRCR21 / 426684108140094538178/42

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS

LR CREDIT 21, LLC

               PLAINTIFF(S)               Index No.

# COMPLAINT

-AGAINST-

CLIFTON D ARMOOGAM

       DEFENDANT(S)

Plaintiff by its attorneys, Mel S. Harris and Associates LLC, complaining of the defendant(s) respectfully allege upon information and belief as follows:

1. Plaintiff, LR CREDIT 21, LLC a LIMITED LIABILITY COMPANY doing business within the State of NY, with offices located at 315 PARK AVE SOUTH 20th FL, New York, New York. It is licensed by the New York City Department of Consumer Affairs. It's license number is 1341064.
2. Upon information and belief defendant(s) resides or is employed in the county in which this action is brought; or that the defendant(s) transacted business within the county in which this action is brought in person or through an agent and that the instant cause of action arose out of said transaction.
3. Upon information and belief that the defendant(s) entered into a Retail Charge Account Agreement [Account Num#4266841081400945], with CHASE BANK USA NA, wherein defendant agreed to pay CHASE BANK USA NA all amounts charged to said account by the authorized use thereof.
4. Upon information and belief the agreement containing the terms and conditions governing the use of the charge account, including terms of payment was mailed to defendant(s).
5. Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests therein.
6. Upon information and belief thereafter defendant incurred charges by use of the said Charge Account in the sum of $4891.65 no part of which sum has been paid, although duly demanded.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $4891.65 plus interest from 12/9/2007, plus the costs of this action.

Dated 04/13/2010

_____
Mel S. Harris and Associates LLC
Attorneys for Plaintiff
5 Hanover Square, 8th Floor
New York, NY 10004
(212)571-4900 ext. 3998

Address for Payments:
LRCR
PO Box 30132
New York, NY 10087-0132

990156 1 / LRCR21 / 4266841081400945 38178742

COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 65383 QCV10

LR CREDIT 21, LLC

                    PLAINTIFF
                                    **AFFIDAVIT OF MERIT**

        AGAINST

CLIFTON D ARMOOGAM
                    DEFENDANT(S)

STATE OF NEW YORK          )
COUNTY OF NEW YORK         ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY,that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business,and that I am thereby fully and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 21, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. LR CREDIT 21, LLC is the assignee and purchaser of Account Num#4266841081400945, owed to **CHASE BANK USA NA**. As such LR CREDIT 21, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **CHASE BANK USA NA**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but on 12-09-2007, defendant had defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $4891.65. That although duly demanded no part of the total sum of $4891.65 has been paid.

In accordance with CCM-186A this cause of action accrued in the state of NY having a 6 year statute of limitations with respect to collection of debts of this kind. After reasonable inquiry, I have reason to believe that the applicable statute of limitations had not expired as of the date this lawsuit had been commenced.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $4891.65 together with interest on $4891.65 from 12-09-2007 plus the costs of this action.

        signed: _____

Sworn to before me this **26 day of August, 2010**.

        **Michael Young**
        **Notary Public - State of New York**
        **No. 01YO4930598**
        **Qualified in Queens County**
        **Commission Expires June 20, 2014**

990156-1 / LRCR21 / 4266841081400945



AA-24

Queens County Civil Court
Civil Judgment

Plaintiff(s):
LR CREDIT 21, LLC

vs.

Defendant(s):
CLIFTON D ARMOOGAM

Index Number:  CV-065383-10/QU

Judgment issued:   On Default

On Motion of:

Mel S. Harris & Associates LLC
5 Hanover Square, 8th Floor, New York, NY
10004-2614

| | | | | | |
|---|---|---|---|---|---|
| Amount claimed | $4,891.65 | Index Number Fee | $45.00 | Transcript Fee | $0.00 |
| Less Payments made | $0.00 | Consumer Credit Fee | $0.00 | County Clerk Fee | $0.00 |
| Less Counterclaim Offset | $0.00 | Service Fee | $20.00 | Enforcement Fee | $40.00 |
| Interest  12/09/2007 at 9% | $1,218.23 | Non-Military Fee | $0.00 | Other Disbursements | $0.00 |
| Attorney Fees | $0.00 | Notice of Trial Fee | $0.00 | Other Costs | $0.00 |
| Cost By Statute | $50.00 | Jury Demand Fee | $0.00 | | |

| Total Damages | $6,109.88 | Total Costs & Disbursements | $155.00 | Judgment Total | $6,264.88 |
|---|---|---|---|---|---|

The following named parties, addressed and identified as creditors below:

Plaintiff creditor(s) and address

(1) LR CREDIT 21, LLC
C/O L-CREDIT LLC 315 PARK AVE SOUTH, New York, NY 10010-

Shall recover of the following parties, addresses and identified as debtors below:

Defendant debtor(s) and address

(1) CLIFTON D ARMOOGAM
10455 108TH ST, South Richmond Hill, NY 11419-

Judgment entered at the Queens County Civil Court, 89-17 Sutphin Boulevard, Jamaica, NY 11435, in the STATE OF NEW YORK in the total amount of **$6,264.88 on 09/15/2010 at 11:53 AM.**

Judgment sequence 1

_Jack Baer_

Jack Baer, Chief Clerk Civil Court

Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE SYKES, REA VEERABADREN, KELVIN PEREZ, and CLIFTON ARMOOGAM, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | ECF Case |
| | No. 09 Civ. 8486(DC) |
| - against - | |
| MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS; MICHAEL YOUNG; DAVID WALDMAN; KERRY LUTZ; TODD FABACHER; MEL HARRIS JOHN/JANE DOES 1-20; LEUCADIA NATIONAL CORPORATION; PHLCORP HOLDING LLC; BALDWIN ENTERPRISES, INC.; TLCO GROUP HOLDINGS, INC.; DARSEN, LLC; PLRC, LLC; RUSHMORE RECOVERY MANAGEMENT, LLC; L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC; LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC; JOSEPH A. ORLANDO; PHILIP M. CANNELLA; ZALMAN JACOBS; LR CREDIT JOHN/JANE DOES 1-20; SAMSERV, INC.; WILLIAM MLOTOK; BENJAMIN LAMB; MICHAEL MOSQUERA; JOHN ANDINO; and SAMSERV JOHN/JANE DOES 1-20, | THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND |
| Defendants. | |

Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez, and Clifton Armoogam on behalf of themselves and all others similarly situated, for their complaint, allege, upon personal knowledge as to themselves and information and belief as to other matters, as follows:

## INTRODUCTION

1.      This class action seeks to vindicate the rights of more than 100,000 New

1

York City residents who have been victimized for years by a massive scheme to deprive them of due process and fraudulently obtain and enforce thousands of default judgments worth millions of dollars in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), New York General Business Law § 349, and New York Judiciary Law § 487.

2.      The primary players in this fraudulent enterprise are (1) a law firm, Mel S. Harris and Associates LLC, and its principals (the "Mel Harris Defendants"); (2) a publicly traded corporation, Leucadia National Corporation, its shell and alter ego debt buying companies—L-Credit, LLC, LR Credit, LLC, LR Credit 10, 14, 18, and 21, LLC—and their principals (the "Leucadia Defendants"); and (3) a process serving agency, Samserv, Inc., and its principal (the "Samserv Defendants").

3.      Since 2006, the Leucadia Defendants have filed more than 100,000 "consumer credit actions," or debt collection lawsuits, in the Civil Court of the City of New York ("Civil Court"). The Mel Harris Defendants represent the Leucadia Defendants in virtually all of the debt collection lawsuits they bring. The vast majority of these lawsuits result in default judgments in favor of the Leucadia Defendants. On information and belief, more than 90% of the people sued by the Leucadia and Mel Harris Defendants do not appear in court.

4.      On information and belief, in nearly all of these lawsuits, Defendants engage in "sewer service"—failing to serve the summons and complaint and then filing fraudulent affidavits of service. The Leucadia and Mel Harris Defendants regularly hire the Samserv Defendants to perform this task. Defendants' practice of sewer service deprives Plaintiffs and putative class members of due process; without notice of the lawsuit filed against them, Plaintiffs and putative class members are denied their day in court. On information and

2

belief, sewer service is the primary reason so few of the people sued by Defendants appear in court to defend themselves.

5.      On information and belief, in nearly all of these lawsuits, Defendants do not possess and cannot obtain proof that the people they sue owe the alleged debts.

6.      In order to secure default judgments, the Leucadia and Mel Harris Defendants file false affidavits of service claiming that people were served when they were not, and false affidavits of merit claiming that Defendants have personal knowledge of the facts necessary to secure a default judgment when they do not. Relying on these false affidavits, the Civil Court issues default judgments against Plaintiffs and putative class members.

7.      After Defendants have fraudulently obtained default judgments, they proceed to wrongfully restrain bank accounts, garnish wages, threaten to seize personal property, and/or pressure people into unaffordable payment plans. These fraudulent judgments appear on people's credit reports, preventing them from obtaining housing, employment, insurance, and affordable credit.

8.      Plaintiffs seek to end these abhorrent practices once and for all. Plaintiffs and putative class members are entitled to preliminary and permanent injunctive relief, including disgorgement, declaratory relief, and damages.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and 18 U.S.C. §§ 1961-68, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965.

## PARTIES

*Plaintiffs*

10.    Plaintiff Monique Sykes is a 30-year-old mother of two who resides in Bronx, New York.  Ms. Sykes is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

11.    Plaintiff Rea Veerabadren is a 58-year-old Mauritian immigrant who resides in Queens, New York.  Ms. Veerabadren is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

12.    Plaintiff Kelvin Perez is a 39-year-old Bronx resident.  Mr. Perez is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

13.    Plaintiff Clifton Armoogam is a 40-year-old Trinidadian immigrant who resides in Queens, New York.  Mr. Armoogam is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

*Defendants*

14.    Defendants Mel S. Harris and Associates LLC, Mel S. Harris, Michael Young, David Waldman, Kerry Lutz, Todd Fabacher, and Mel Harris John/Jane Does 1-20 are referred to collectively as the "Mel Harris Defendants."

15.    Defendant Mel S. Harris and Associates LLC ("Mel Harris LLC") is a New York limited liability company with its principal place of business at 5 Hanover Square, 8th Floor, New York, New York 10004.  Defendant is a law firm and is regularly engaged in the business of collecting consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits, on behalf of its clients and co-conspirators, including but not limited to Defendants L-Credit, LLC, LR Credit, LLC, and LR Credits 10, 14, 18 and 21,

-4-

LLC, who are also debt collectors. Defendant Mel Harris LLC's principal business is debt collection. It is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

16.    Defendant Mel S. Harris ("Harris") is a natural person, and the Senior Member and a Manager of Defendant Mel Harris LLC. Defendant Harris is a member and/or principal of Defendant Rushmore Recovery Management, LLC. Defendant Harris regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Harris is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

17.    Defendant Todd Fabacher ("Fabacher") is a natural person who is employed by Defendants Mel Harris LLC, Leucadia National Corporation, L-Credit, LLC, LR Credit, LLC and/or LR Credits 10, 14, 18 and 21, LLC. Defendant Fabacher claims to be the "authorized and designated custodian of records" for all or nearly all of the accounts on which Defendants file suit. Defendant Fabacher regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Fabacher is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

18.    Defendant Michael Young ("Young") is a natural person, and the Executive Director and Chief Operating Officer of Defendant Mel Harris LLC. Defendant Young is a member and/or principal of Defendant Rushmore Recovery Management, LLC. Defendant Young notarizes all or nearly all of Defendant Fabacher's affidavits of merit. Defendant Young regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant is a "debt

-5-

collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

19.    Defendant David Waldman ("Waldman") is a natural person, and a Member and Manager of Defendant Mel Harris LLC. Defendant Waldman is a member and/or principal of Defendant Rushmore Recovery Management, LLC. Defendant Waldman regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Waldman is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

20.    Defendant Kerry Lutz ("Lutz") is a natural person, and a partner of Defendant Mel Harris LLC. Defendant Lutz is a member and/or principal of Defendant Rushmore Recovery Management, LLC. Defendant Lutz regularly collects, directly or indirectly, consumer debts alleged to be due to another via the mail, telephone, internet, and civil debt collection lawsuits. Defendant Lutz is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

21.    Defendants "Mel Harris LLC John/Jane Does 1-20" are persons associated with Defendant Mel Harris LLC who were involved in the violations of law alleged in this Complaint.

22.    Defendants LR Credit 10, LLC, LR Credit 14, LLC, LR Credit 18, LLC, and LR Credit 21, LLC, are referred to collectively as "LR Credits 10, 14, 18 and 21."

23.    Defendants Leucadia National Corporation, PHLCorp Holding LLC, Baldwin Enterprises, Inc., TLCO Group Holdings, LLC, Darsen, LLC, PLRC, LLC, Rushmore Recovery Management, LLC, L-Credit, LLC, LR Credit, LLC, LR Credits 10, 18 and 21, Joseph A. Orlando, Philip M. Cannella, Zalman Jacobs, and Leucadia John/Jane Does 1-20 are

referred to collectively as the "Leucadia Defendants."

24.     Defendants L-Credit, LLC, LR Credit, LLC, and LR Credits 10, 14, 18 and 21 are also referred to collectively as the "LR Credit Defendants."

25.     Defendant Leucadia National Corporation ("Leucadia") is a corporation with its principal place of business at 315 Park Avenue South, 20th Floor, New York, New York 10010. Leucadia is the parent company of PHLCorp Holding LLC, Baldwin Enterprises, Inc., TLCO Group Holdings, Inc., Darsen, LLC, PLRC, LLC, and the LR Credit Defendants. On information and belief, the LR Credit Defendants are wholly-owned subsidiaries of Leucadia. The president and vice president of LR Credit, LLC and LR Credits 10, 14, 18 and 21 are high-ranking Leucadia executives. Leucadia and the LR Credit Defendants share the same address. On information and belief, Leucadia has complete control over the LR Credit Defendants' debt collection activities, and the LR Credit Defendants are mere instrumentalities of Leucadia. On information and belief, all of the profits of the LR Credit Defendants flow directly to Leucadia. Accordingly, through its wholly-owned subsidiaries, Leucadia is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection. Defendant Leucadia is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

26.     Defendant PHLCorp Holding LLC ("PHLCorp") is a Pennsylvania corporation whose principal place of business, on information and belief, is at 529 East South Temple, Salt Lake City, Utah 84102. On information and belief, PHLCorp transacts business in New York. PHLCorp is a wholly-owned subsidiary of Defendant Leucadia. PHLCorp is the

sole corporate owner of Defendant Baldwin Enterprises, Inc., which is the sole corporate owner of Defendant TLCO Group Holdings, Inc., which is the sole corporate owner of Defendant Darsen, LLC, which is the sole corporate owner of Defendant PLRC, LLC, which is the sole corporate owner of Defendant L-Credit, LLC.  On information and belief, through its wholly-owned subsidiaries, PHLCorp is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection.  Defendant PHLCorp is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

27.     Defendant Baldwin Enterprises, Inc. ("Baldwin Enterprises") is a Colorado corporation whose principal place of business, on information and belief, is at 529 East South Temple, Salt Lake City, Utah 84102.  On information and belief, Baldwin Enterprises transacts business in New York.   Baldwin Enterprises is a wholly-owned subsidiary of Defendant PHLCorp, which is a wholly-owned subsidiary of Defendant Leucadia.  Baldwin Enterprises is the sole corporate owner of Defendant TLCO Group Holdings, Inc., which is the sole corporate owner of Defendant Darsen, LLC, which is the sole corporate owner of Defendant PLRC, LLC, which is the sole corporate owner of Defendant L-Credit, LLC.  On information and belief, through its wholly-owned subsidiaries, Baldwin Enterprises is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection.  Defendant Baldwin Enterprises is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Defendant

Joseph A. Orlando is Vice President of Baldwin Enterprises.

28.    Defendant TLCO Group Holdings, Inc. ("TLCO") is a Delaware

corporation whose principal place of business, on information and belief, is at 529 East South

Temple, Salt Lake City, Utah 84102.  On information and belief, TLCO transacts business in

New York.  TLCO is a wholly-owned subsidiary of Defendant Baldwin Enterprises, which is a

wholly-owned subsidiary of Defendant PHLCorp, which in turn is a wholly-owned subsidiary of

Defendant Leucadia.  TLCO is the sole corporate owner of Defendant Darsen, LLC, which is the

sole corporate owner of Defendant PLRC, LLC, which in turn is the sole corporate owner of

Defendant L-Credit, LLC.  On information and belief, through its wholly-owned subsidiaries,

TLCO is a purchaser and collector of defaulted consumer debts; is regularly engaged in the

business of collecting, directly or indirectly, consumer debts alleged to be due to another via

mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt

collection.  Defendant TLCO is a "debt collector" as defined by the FDCPA, 15 U.S.C. §

1692a(6).

29.    Defendant Darsen, LLC ("Darsen") is a Delaware limited liability

company whose principal place of business, on information and belief, is at 529 East South

Temple, Salt Lake City, Utah 84102.  On information and belief, Darsen transacts business in

New York.  Darsen is a wholly-owned subsidiary of Defendant TLCO, which is a wholly-owned

subsidiary of Defendant Baldwin Enterprises, which is a wholly-owned subsidiary of Defendant

PHLCorp, which is a wholly-owned subsidiary of Defendant Leucadia.  Darsen is the sole

corporate owner of Defendant PLRC, LLC, which is the sole corporate owner of Defendant L-

Credit, LLC.  On information and belief, through its wholly-owned subsidiaries, Darsen is a

purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection. Defendant Darsen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

30.    Defendant PLRC, LLC ("PLRC") is a New York limited liability company. On information and belief, PLRC transacts business in New York. PLRC's registered agent in the State of New York is C T Corporation System, 111 Eighth Avenue, New York, New York 10011. PLRC is a wholly-owned subsidiary of Defendant Darsen, which is a wholly-owned subsidiary of Defendant TLCO, which is a wholly-owned subsidiary of Defendant Baldwin Enterprises, which is a wholly-owned subsidiary of Defendant PHLCorp, which is a wholly-owned subsidiary of Defendant Leucadia. PLRC is the sole corporate owner of Defendant L-Credit, LLC. Through its wholly-owned subsidiaries, PLRC is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection. Defendant PLRC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Defendant Philip M. Cannella is Vice President of PLRC.

31.    Defendant Rushmore Recovery Management, LLC ("Rushmore") is a New York limited liability company with its principal place of business at 5 Hanover Square, 8th Floor, New York, NY 10004. Defendant Rushmore and Defendant Mel Harris LLC share the same address. Defendant Rushmore's members and principals include Defendant Harris, Defendant Waldman, Defendant Young, and Defendant Lutz. Defendant Rushmore is a partner

-10-

with Defendant L-Credit in the joint venture that formed Defendant LR Credit, LLC. Defendant Rushmore is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection. Defendant Rushmore is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

32.    Defendant L-Credit LLC ("L-Credit") is a Delaware limited liability company. L-Credit transacts business in New York and lists its address as 315 Park Avenue South, New York, New York 10010. However, L-Credit has no registered agent for service of process in the State of New York and is not currently registered with the New York Department of State. On information and belief, L-Credit is a wholly-owned subsidiary of Leucadia. In turn, L-Credit is the sole corporate owner of Defendant LR Credit, LLC. Defendant L-Credit is a partner with Defendant Rushmore in the joint venture that formed Defendant LR Credit, LLC. In legal pleadings, LR Credit Defendants list their addresses as c/o L-Credit, LLC. L-Credit is a purchaser and collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and is principally engaged in debt collection. Defendant L-Credit is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

33.    Defendant LR Credit, LLC is a Delaware limited liability company. LR Credit, LLC transacts business in New York and is located at 315 Park Avenue South, 20th Floor, New York, New York 10010. Defendant's registered agent in the State of New York is C T Corporation System, 111 Eighth Avenue, New York, NY 10011. LR Credit, LLC is wholly

owned by L-Credit. LR Credit, LLC is also the sole owner of Defendants LR Credits 10, 14, 18

and 21. The President and Vice President of LR Credit, LLC are high-ranking Leucadia

executives. LR Credit, LLC is licensed as a debt collection agency by the New York City

Department of Consumer Affairs ("DCA"). LR Credit, LLC is a purchaser and collector of

defaulted consumer debts; is regularly engaged in the business of collecting, directly or

indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil

debt collection lawsuits; and is principally engaged in debt collection. Defendant LR Credit,

LLC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

34.    Defendants LR Credits 10, 14, 18 and 21 are New York limited liability

companies. They transact business in New York and are located at 315 Park Avenue South, 20th

Floor, New York, NY 10010. Their registered agent in the State of New York is C T

Corporation System, 111 Eighth Avenue, New York, NY 10011. LR Credits 10, 14, 18 and 21

are wholly owned by Defendant LR Credit, LLC. The president and vice president of LR Credits

10, 14, 18 and 21 are high-ranking Leucadia executives. In legal pleadings, LR Credits 10, 14,

18 and 21 each list their address as c/o L-Credit, LLC. LR Credits 10, 14, 18 and 21 are licensed

as debt collection agencies by the DCA. They are purchasers and collectors of defaulted

consumer debts; are regularly engaged in the business of collecting, directly or indirectly,

consumer debts alleged to be due to another via mail, telephone, internet, and civil debt

collection lawsuits; and are principally engaged in debt collection. Defendants LR Credits 10,

14, 18 and 21 are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

35.    Defendant Joseph A. Orlando ("Orlando") is a natural person. Defendant

Orlando is Vice President and Chief Financial Officer of Leucadia, Vice President of Baldwin

-12-

Enterprises, and President of LR Credit, LLC and LR Credits 10, 14, 18 and 21. In his capacity

as President of LR Credit, LLC and LR Credits 10, 14, 18 and 21, Defendant Orlando is a

purchaser and collector of defaulted consumer debts; is regularly engaged in the business of

collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone,

internet, and civil debt collection lawsuits; and is principally engaged in debt collection.

Defendant Orlando is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

36.    Defendant Philip M. Cannella ("Cannella") is a natural person. Defendant

Cannella is Assistant Vice President and Director of Taxes of Leucadia, and Vice President of

LR Credit, LLC and LR Credits 10, 14, 18 and 21. Defendant Philip M. Cannella is also Vice

President of PLRC, LLC. In his capacity as Vice President of LR Credit, LLC and LR Credits

10, 14, 18 and 21, and as Vice President of PLRC, Defendant Cannella is a purchaser and

collector of defaulted consumer debts; is regularly engaged in the business of collecting, directly

or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil

debt collection lawsuits; and is principally engaged in debt collection. Defendant Cannella is a

"debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

37.    Defendant Zalman Jacobs ("Jacobs") is a natural person. At the time of

the events related herein through approximately March 2008, Defendant Jacobs was a Managing

Director at Leucadia, Vice President of L-Credit, LR Credit, and LR Credit 10, and, on

information and belief, Vice President of LR Credits 14, 18 and 21. At the time of the events

related herein through approximately March 2008, in his capacity as Managing Director at

Leucadia, Vice President of L-Credit, LR Credit, and LR Credits 10, 14, 18 and 21, Defendant

Jacobs was a purchaser and collector of defaulted consumer debts; was regularly engaged in the

business of collecting, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; was principally engaged in debt collection; and was a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

38.     Defendants "Leucadia John/Jane Does 1-20" are persons associated with the Leucadia Defendants who were involved in the violations of law alleged in this Complaint.

39.     Defendants Samserv, Inc., William Mlotok, Benjamin Lamb, Michael Mosquera, John Andino, and Samserv John/Jane Does 1-20 are referred to collectively as the "Samserv Defendants."

40.     Defendant Samserv, Inc. ("Samserv") is a New York corporation with its principal place of business at 140 Clinton Street, LF, Brooklyn, New York 11201. Defendant Samserv is a process serving agency regularly engaged in the business of collecting consumer debts by assisting the other defendants in this case to file and maintain civil debt collection lawsuits and to obtain default judgments in those cases by utilizing the mail, telephone and internet. Samserv regularly collects, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits. Defendant Samserv is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

41.     Defendant William Mlotok ("Mlotok") is a natural person who resides at 17 Hollywood Drive, Plainview, New York 11803. Defendant Mlotok is the Chairman and Chief Executive Officer of Defendant Samserv. Defendant Mlotok is regularly engaged in the business of collecting consumer debts by assisting the other defendants to file and maintain civil debt collection lawsuits and to obtain default judgments in those cases by utilizing the mail, telephone and internet. Defendant Mlotok regularly collects, directly or indirectly, consumer

-14-

debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits. Defendant Mlotok is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

42.     Defendant Benjamin Lamb ("Lamb") is a natural person who works for Defendant Samserv as a process server. Defendant Lamb's address is unknown to Plaintiffs' counsel at this time. Defendant Lamb is regularly engaged in the business of collecting consumer debts by assisting the other defendants to file and maintain civil debt collection lawsuits and to obtain default judgments in those cases by utilizing the mail, telephone and internet. Defendant Lamb regularly collects, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits. Defendant Lamb is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

43.     Defendant Michael Mosquera ("Mosquera") is a natural person who resides at 1613 East 15th Street, Brooklyn, New York 11229. At the time of the events related herein, Defendant Mosquera worked for Defendant Samserv as a process server; was regularly engaged in the business of collecting consumer debts by assisting the other defendants to file and maintain civil debt collection lawsuits and to obtain default judgments in those cases by utilizing the mail, telephone and internet; regularly collected, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits; and was a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Defendant Mosquera's application to renew his process server license with the New York City Department of Consumer Affairs was denied in February 2011. On information and belief, he is not currently licensed to serve process in New York City.

44.     Defendant John Andino ("Andino") is a natural person who resides at 555

-15-

Central Park Ave, Apt. 361, Scarsdale, NY 10583 and works for Defendant Samserv as a process server. Defendant Andino is regularly engaged in the business of collecting consumer debts by assisting the other defendants to file and maintain civil debt collection lawsuits and to obtain default judgments in those cases by utilizing the mail, telephone and internet. Defendant Andino regularly collects, directly or indirectly, consumer debts alleged to be due to another via mail, telephone, internet, and civil debt collection lawsuits. Defendant Andino is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

45.    Defendants "Samserv John/Jane Does 1-20" are persons associated with Defendant Samserv who were involved in the violations of law alleged in this Complaint.

## FACTS

A.    *Background Facts*

1.    *Debt Buyers*

46.    New York City is an epicenter for debt collection lawsuits. According to records obtained from the Civil Court, debt collectors have been filing nearly 300,000 lawsuits *per year* since 2006. A substantial number of these lawsuits were brought by debt buyers.

47.    "Debt buyers" are companies, like the Leucadia Defendants, that buy defaulted, charged-off debts for pennies on the dollar and then seek to collect the full face value of the debts for themselves. Many debt buyers also resell debts to other debt buyers. Thus it is not uncommon for debts to be bought and sold numerous times over.

48.    Debts are priced on a sliding scale, with freshly charged-off debts commanding a higher price than older debts that other debt buyers and collection agencies have previously tried and failed to collect. There is even an active market for debts that are past the

statute of limitations and for debts that have previously been discharged in bankruptcy.

49.    A typical purchased portfolio of debts contains, for each account listed in the portfolio, the consumer's name, Social Security number, last known address and telephone number, and the account number, charge-off date, date and amount of last payment, and alleged amount owed.  This information is transmitted to the debt buyer electronically in the form of a spreadsheet and is often referred to as "media."  The debt buyer typically does not purchase or obtain documents showing an indebtedness between the original creditor and debtor, such as a contract and any subsequent amendments to the contract, account statements, customer service records, or customer dispute records.

50.    Some debt purchase and sale agreements provide that the debt buyer may go back to the original creditor and obtain account documentation for only a limited period of time and in only a limited number of accounts, such as 2% of accounts.  Other purchase and sale agreements provide that the debt buyer may *never* obtain *any* documentation for any debts in the portfolio.  In addition, each time a debt is resold, it becomes less likely that the purchaser will be able to obtain documentation of the debt.

51.    As a result, most debt buyers have significant difficulty substantiating their claims, which has been widely recognized as a problem for the industry and for consumers. *See*, *e.g.*, Federal Trade Commission, *Collecting Consumer Debts: The Challenges of Change* (2009) (discussing problem and proposing solutions).

52.    Debt buyers use multiple tools to collect consumer debts, including contacting consumers directly by mail, telephone, text message and e-mail, reporting the debt to credit reporting agencies, and hiring other debt collectors to collect the debt for them.

Increasingly, however, debt buyers have turned to the courts to collect consumer debts.

53.     Under New York law, debt buyers, like other plaintiffs in civil lawsuits, bear the burden of proof in legal actions.  In order to prevail, the debt buyer must submit admissible evidence demonstrating that it is the rightful owner of the account and that the defendant actually owes the debt in the precise amount claimed.  *See, e.g., Citibank v. Martin*, 807 N.Y.S.2d 284 (Civ. Ct. N.Y. County 2005).

54.     Debt buyers generally do not obtain additional account documentation prior to bringing a lawsuit against a consumer.  Instead, debt buyers generally bring lawsuits based solely upon the skeletal "media" obtained upon purchase of the account portfolio.  This "media" is not sufficient to meet the debt buyer's burden of proof as the plaintiff in a lawsuit.

55.     Furthermore, because purchase and sale agreements severely limit or wholly eliminate debt buyers' ability to obtain documentation of the debts from the original creditor, debt buyers are actually *unable* to obtain admissible evidence of the debt in the vast majority of cases that they file.

56.     Recent court decisions confirm that many debt buyers do not possess, and cannot obtain, the evidence required to make out a prima facie case.  *See, e.g., PRA III, LLC v. Gonzalez*, 54 A.D.3d 917 (App. Div. 2d Dep't. 2008); *CACH, LLC v. Davidson*, 21 Misc. 3d 1106(A) (Civ. Ct. N.Y. County 2008); *PRA III, LLC v. McDowell*, 15 Misc.3d 1135(A) (Civ. Ct. Richmond County 2007); *Rushmore v. Skolnick*, 15 Misc.3d 1139(A) (Dist. Ct. Nassau County 2007); *Citibank v. Martin*, 11 Misc.3d 219 (Civ. Ct. N.Y. County 2005); *Palisades Collection, LLC v. Gonzalez*, 10 Misc.3d. 1058(A) (Civ. Ct. N.Y. County 2005); *Colorado Capital Investments, Inc. v. Villar*, 06/18/09 N.Y.L.J. 27, col. 3 (Civ. Ct. N.Y. County); *Palisades*

*Collection, LLC v. Haque*, 4/13/06 N.Y.L.J. 20 (Civ. Ct. Queens County); *CACV of Colorado, LLC v. Chowdhury*, Index No. 94642/07 (Civ. Ct. Bronx County Feb. 19, 2009) (unpublished); *CACH v. Cummings,* Index No. 2274/07 (Civ. Ct. N.Y. County Nov. 10, 2008) (unpublished); *CACV of Colorado Capital Investments v. Pierog*, No. 64449/05 (Civ. Ct. N.Y. County, Sep. 2, 2008) (unpublished).

      57.    Because of the high rate of defaults by defendants in debt collection lawsuits, however, debt buyers are rarely put to their proof.

      58.    Consumers appear to defend themselves in only about 10% of the cases in the Civil Court, and debt buyers obtain default judgments in the vast majority of lawsuits that they bring. On information and belief, sewer service is the primary reason so few defendants appear in court.

**B.    "Sewer Service"**

      59.    The term "sewer service" is widely used to describe the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit of service. Sewer service deprives people of due process because they do not get notice of the lawsuits and are denied their day in court. Default judgments are then entered on the basis of defendants' failure to appear. As the affidavit of service often appears facially valid—indeed, its very purpose is to pass facial review—the fraud generally goes undetected unless the defendant discovers and challenges the fraudulent affidavit after a default judgment has been entered.

      60.    Sewer service has a long history in New York City. During the late 1960s and early 1970s, the Civil Court was inundated with tainted consumer claims, many of which were reduced to judgment when the defendant defaulted as a result of sewer service. When the

court learned of the widespread fraud, it employed its general police powers to vacate thousands of default judgments.

61.     Sewer service remained "rampant" into the 1980s, according to a 1986 report issued by the Office of the New York State Attorney General and the New York City Department of Consumer Affairs (the "Joint Report"). The Joint Report concluded that 39% of all service in New York City was sewer service, and that "a staggering number of illegal default judgments—48,649, or one third of all default judgments—are entered annually."

62.     The Joint Report further concluded that low pay for process servers was the primary cause of sewer service. At the time, debt collection attorneys paid $6 to $12 to process serving agencies per service of process in a debt collection lawsuit. The agencies, in turn, generally paid only $3 to the individual process server who was assigned the task of serving the defendant. Moreover, the process server was paid only for completed services, not for unsuccessful attempts.

63.     The Joint Report detailed the experience of an investigator for the New York City Department of Consumer Affairs who worked for one month as a licensed process server in order to determine whether a process server could attempt to effect proper service and still make a living at the prevailing pay scales. During that month, the investigator was given over 400 papers to serve and was paid $3 per completed service.

64.     According to the Joint Report, the investigator was unable to serve almost one-half of the papers because the defendants no longer lived at the addresses provided for service. After making 537 attempts, the investigator was able to serve only 217 complaints, resulting in earnings of about $600 before deductions for taxes and expenses (such as gas).

Thus, the investigator made less than half of the minimum wage.

65.     The Joint Report concluded that process serving agencies, by underbidding the true cost of proper service, effectively sold sewer service.

66.     Finally, the Joint Report included a comprehensive review of the logs of 37 randomly selected process servers. The Joint Report found that 95% of the process servers reported duplicate, or "superman," services. That is, they claimed to have served process at two or more different places at the exact same time—a physical impossibility.

67.     In 1987, the New York Court of Appeals noted "a continuing and pervasive problem of unscrupulous service practices by licensed process servers." *Barr v. Dep't of Consumer Affairs*, 70 N.Y.2d 821, 822-23 (1987). The Court explained:

> These practices deprive defendants of their day in court and lead to fraudulent default judgments. Often associated with consumer debt collection and landlord-tenant litigation, questionable service practices have their greatest impact on those who are poor and least capable of obtaining relief from the consequences of an improperly imposed default judgment.

68.     Sewer service in debt collection cases remains rampant to this day.

69.     In April 2008, acknowledging the high rate of defaults in debt collection lawsuits, the Civil Court issued a new directive requiring that the clerk mail an additional notice to defendants in consumer credit actions.

70.     In June 2008, MFY Legal Services ("MFY") issued a report, *Justice Disserved* ("Justice Disserved"), documenting highly questionable process serving practices in consumer credit cases.

71.     On June 13, 2008, the New York City Department of Consumer Affairs held a public hearing on process servers in New York City ("DCA hearing"). Testimony at the

hearing revealed that: (a) process serving agencies generally charge between $15 and $45 for service of a summons and complaint in a consumer credit action in New York City; (b) the companies retain most of the fees to pay for overhead; (c) individual process servers were paid between $3 and $6 per completed service.

72.     Process servers in debt collection lawsuits today are thus paid basically the same wages as they were *23 years ago*. In 1986, subway fare was $1 and a gallon of gas cost 93 cents. Since 1986, the cost of living has increased substantially and the minimum wage has more than doubled, yet process server wages have remained stagnant at a rate that was insufficient to cover the costs of proper service even then. Process servers in other types of legal actions are paid substantially more.

73.     At the DCA hearing, every process serving agency that testified said debt collection attorneys will not pay for service attempts that are not completed. In other words, a process server who visits the last known address of a debtor and learns that the debtor has moved or died will only be paid if he perjures himself. The Vice President of the New York State Professional Process Servers Association questioned the ethics of debt collectors paying only for completed service and will not accept contracts with such a condition.

74.     On information and belief, the Mel Harris and LR Credit Defendants will pay defendant Samserv and other process serving agencies only for completed service, thereby knowingly promoting the use of false affidavits of service.

75.     Moreover, at the DCA hearing, executives from three different process serving agencies testified that they refused to accept work from consumer debt collection attorneys because they could not make a profit based on the low fees the collection attorneys

demand unless their process servers engaged in sewer service. For those who testified, this meant that they cannot do business with operations like those run by the Mel Harris and LR Credit Defendants. Others, however, like the Samserv Defendants are less scrupulous and thus willing to join and further a fraudulent enterprise.

76.    In 2008 and 2009, after the DCA hearing, the Office of the New York State Attorney General ("Attorney General") audited the process server logs of a single process serving agency called American Legal Process ("ALP").

77.    The Attorney General found that: (a) ALP was paid $30-$35 by the debt collection law firms per service of a summons and complaint in a consumer matter (usually credit card related); and (b) ALP in turn paid its process servers as little as $3 per service and no more than $7 per service, for an average of $5.

78.    The Attorney General reviewed process server logs for internal inconsistencies and found countless examples of sewer service. For example, one process server claimed to have made 69 service attempts in a single day in two different New York counties that were 400 miles apart—at 8:19 a.m., he claimed to have attempted service on a defendant in Brooklyn, and one minute later, at 8:20 a.m., on another defendant in Western New York. The Attorney General found that the process server would have had to drive more than 10,000 miles that day to make all his purported service attempts, and further found that such physically impossible movements were documented repeatedly throughout the service logs of ALP's 20 busiest process servers.

79.    The Attorney General also uncovered significant notary fraud on the part of ALP's owner.

80.    In July 2009, the Attorney General and Chief Administrative Judge of the New York Courts sued American Legal Process and 37 debt collection law firms and debt collectors, seeking to overturn 100,000 default judgments that had been entered as a result of sewer service by ALP's process servers.

81.    On information and belief, the practices exposed by the Attorney General are not unique to ALP, but are standard practice throughout the debt collection and process serving industries.

82.    Debt collection law firms and their debt buyer clients plainly benefit from sewer service. By not serving consumer debt defendants, debt collection firms like Defendant Mel Harris LLC and debt buyers like the LR Credit Defendants are able to generate hundreds of thousands of judgments by default on cases where they could never prevail on the merits because they do not have evidence to make out a prima facie case. Once default judgments are fraudulently obtained, they are used to restrain people's bank accounts, garnish their wages, seize their property, damage their credit reports, and/or pressure them into unaffordable payment plans.

83.    Proceeds from the illegal scheme are then used to fund the purchase of new debts, which are then pursued by commencing new actions without the ability to actually prove that a debt is owed, using sewer service, which is followed by the filing of new perjurious affidavits of service and merit, thus securing new default judgments. And, the cycle continues.

C.    *Civil Court Procedures*

84.    In New York City, actions arising out of a consumer credit transaction, including debt collection actions, are primarily commenced in the Civil Court, which has

jurisdiction over actions seeking to recover monetary damages of $25,000 or less. N.Y. Civ. Ct. Act § 202.

      85.    A plaintiff must serve the defendant with the summons and complaint in a manner authorized by CPLR 308. This can be done by: (1) "delivering the summons within the state to the person to be served," CPLR 308(1) ("Personal Service"); or (2) "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailing the summons and complaint to the person's last known residence or actual place of business, CPLR 308(2) ("Substitute Service").

      86.    A plaintiff must exercise due diligence to serve the defendant by personal or substitute service. CPLR 308(4). Courts have interpreted the term "due diligence" to mean three attempts on different days at different times of the day. When personal or substitute service "cannot be made with due diligence," a plaintiff may effect service by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" of the person and mailing the summons and complaint to the person's last known residence or actual place of business, CPLR 308(4) ("conspicuous place service" or "nail and mail service").

      87.    When a defendant fails to appear in the action, the plaintiff may seek a default judgment. CPLR 3215(a).

      88.    In order to obtain a default judgment, the plaintiff must submit (a) proof of service, in the form of an affidavit by the process server, and (b) proof of "the claim, the default, and the amount due by affidavit made by the party." CPLR 3215(f).

-25-

89.     In debt collection actions, the plaintiff also must submit an affidavit that additional notice has been given to the defendant at least twenty days prior to the plaintiff's application for a default judgment.  This additional notice consists of mailing a copy of the summons to the defendant at (in order of preference) the defendant's residence, place of employment, or last known residence.  The additional notice may be mailed simultaneously with service of the summons upon the defendant.  CPLR 3215(g)(3).

90.     In addition, section 130-1.1-a of the Rules of the Chief Judge of New York requires every pleading, written motion and other paper served or filed with the court to be signed by an attorney.  When an attorney signs a paper, he or she "certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous . . . and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct . . .".  22 NYCRR § 130-1.1-a(b).

91.     Under the Soldiers' and Sailors' Civil Relief Act of 1940, as amended by the Servicemembers Civil Relief Act of 2003, codified at 50 U.S.C. App. § 500 *et. seq,* no default judgment in a civil action or proceeding may be entered unless the plaintiff first submits an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. App. § 521(b)(1).  The information necessary to complete this affidavit is typically, if not always, obtained via the internet from the Department of Defense Manpower Data Center.

92.     In debt collection actions filed in the Civil Court, a plaintiff must provide the clerk with an additional notice of the lawsuit and a stamped envelope addressed to the

defendant "at the address at which process was served." The clerk then mails this additional

notice to the defendant. 22 N.Y.C.R.R. 208.6(h).

93.    "The clerk, upon submission of the requisite proof, shall enter judgment

for the amount demanded in the complaint . . . plus costs and interest." CPLR 3215(a).

94.    Once a plaintiff obtains a default judgment against a person, it may

enforce the judgment by, among other things, restraining the person's bank account, garnishing

the person's wages, or seizing the person's personal property. *See, e.g.*, CPLR 5222, 5231, and

5232. A plaintiff's attorney may institute these proceedings directly "as officers of the court,"

without any judicial intervention or scrutiny.

**D.**    ***Defendants' Facts***

95.    Defendants routinely use the Civil Court to collect debts from consumers.

96.    On information and belief, the Leucadia Defendants brought 29,910 debt

collection actions in the Civil Court in 2008 alone. The Mel Harris Defendants represented the

Leucadia Defendants in all but three of these cases.

97.    When the figures for 2006, 2007 and 2008 are combined, the Leucadia

Defendants brought 104,341 debt collection actions in the Civil Court, and the Mel Harris

Defendants represented the Leucadia Defendants more than 99% of the time.

98.    The Leucadia Defendants, including Leucadia National Corporation, and

the Mel Harris Defendants have a longstanding business relationship in which they have formed

joint ventures to purchase portfolios of defaulted debts for collection through litigation and other

means.

99.    When the Leucadia and Mel Harris Defendants file debt collection

-27-

lawsuits in the Civil Court, they frequently hire Defendant Samserv to "serve process," or, more accurately stated, to provide an affidavit of service that Defendants know is highly likely to be false. On information and belief, Defendant Samserv is the process service company in the majority of cases filed by the Leucadia and Mel Harris Defendants. On information and belief, the LR Credit and Mel Harris Defendants will pay Defendant Samserv for completed service, but will make no payment for unsuccessful attempts.

100.    On information and belief, Defendant Samserv and its individual process servers frequently engage in sewer service. When this happens, Plaintiffs and putative class members are deprived of due process because they do not receive notice of the lawsuit and therefore do not appear to defend themselves. The Mel Harris and Leucadia Defendants then apply for default judgments against the non-appearing individuals.

101.    In order to obtain the default judgments, Defendants file fraudulent affidavits of service with the court. In these affidavits, Defendant Samserv's process servers claim to have served defendants with legal process when they have not, in fact, done so.

102.    Furthermore, on information and belief, Defendant Mlotok, Samserv's Chairman and CEO, is personally involved in the fraud, as he notarizes all or most of these false affidavits.

103.    On information and belief, the Leucadia and Mel Harris Defendants all know or reasonably should know that most of the affidavits of service are false and that most of the default judgments they obtain are the result of sewer service.

104.    On information and belief, although Defendants secure default judgments in tens of thousands of lawsuits every year, service of process in the majority of those lawsuits is

-28-

allegedly done by only a handful of individual process servers.

105.    One of these individual process servers is Defendant Mosquera, whose license was suspended in 2000 for filing a false affidavit of service, whose process serving practices were the subject of further investigation in 2009 by the New York City Department of Consumer Affairs, and whose application to renew his process server license was denied by the New York City Department of Consumer Affairs in February 2011.

106.    Before seeking these tens of thousands of default judgments per year, Defendants are required to review each and every affidavit of service and file it with the court. As a small number of individual process servers claim to serve an astoundingly large number of defendants, simply by undertaking this review, Defendants would have known that all of the alleged service could not possibly have occurred as claimed.

107.    On information and belief, Defendant Mel Harris LLC pays Defendant Samserv no more than $20 per completed service, of which the individual process servers are paid only $3 to $6. On information and belief, Defendant Mel Harris LLC is or should be well aware that process servers are paid only $3 to $6.

108.    In addition, the MFY report on process server practices found that more than 90% of consumers allegedly served by process servers retained by Defendant Mel Harris LLC did not appear in court, suggesting a high rate of sewer service.

109.    In addition to a facially valid affidavit of service, the Mel Harris and Leucadia Defendants are required to submit two additional affidavits in order to obtain a default judgment—a military service affidavit stating that the Civil Court defendant is not in the military and an affidavit setting forth the empirical basis for the unpaid debt claim based on personal

-29-

knowledge.

110.    On information and belief, the Mel Harris Defendants obtain the information necessary for completing the military service affidavit by accessing, over the internet, a database of military personnel maintained by the Department of Defense Manpower Data Center.  On information and belief, the Mel Harris Defendants utilize the internet and database to submit specific military status inquiries, and to retrieve military service information for specific individuals from the database.

111.    On information and belief, in addition to filing false affidavits of service, the Mel Harris and Leucadia Defendants also submit another kind of false affidavit to the court when seeking a default judgment.  This affidavit is usually titled "Affidavit of Merit."

112.    Defendant Todd Fabacher, who claims to be "an authorized and designated custodian of records," is the witness in the vast majority of the affidavits of merit filed by Defendants Mel Harris and LR Credits 1 through 20.

113.    On information and belief, Defendant Fabacher signs approximately 40,000 affidavits per year, or an average of 165 affidavits per work day.  In these affidavits, Defendant Fabacher claims to be "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action."

114.    On information and belief, Defendant Fabacher lacks personal knowledge of most of the facts, and all of the key facts, set forth in these affidavits.  For example, Defendant Fabacher routinely swears that he has personal knowledge that the defendant had a credit account with a certain company; that the defendant incurred charges on the account; that statements were mailed to the defendant; that the defendant defaulted in payment; and that the amount alleged in

the complaint is, in fact, due and owing. On information and belief, however, Defendant

Fabacher does not have personal knowledge of these alleged "facts."

115.    In these affidavits, Defendant Fabacher further claims to "maintain the

daily records and accounts in the regular course of business, including records maintained by and

obtained by plaintiff's assignor." He also identifies the Leucadia Defendants as "the assignee

and purchaser of" an account owed to a particular creditor.

116.    These statements are deceptive and misleading. Defendant Fabacher's

affidavits are drafted in such a manner as to suggest that Defendant Fabacher and/or the other

Defendants have obtained or could obtain documentation of the debt from the original creditor,

including evidence of an indebtedness between the original creditor and debtor, such as a

contract and any subsequent amendments to the contract, account statements, customer service

records, or customer dispute records. On information and belief, however, the Mel Harris and

Leucadia Defendants have not obtained documentation from the original creditor, nor are they

able or intending to obtain such documentation in the vast majority, if not all, cases.

117.    On information and belief, the Mel Harris and Leucadia Defendants

authorize and/or have knowledge of the deceptive and misleading nature of Defendant

Fabacher's affidavits. On information and belief, the affidavits are purposely drafted in this

manner in order to give court personnel the impression that the Mel Harris and Leucadia

Defendants have met the statutory requirements for obtaining a default judgment, when in fact,

Defendants have not and cannot meet those requirements.

118.    On information and belief, the Mel Harris and Leucadia Defendants,

working in concert, submit fraudulent and deceptive affidavits of merit to the court in order to

obtain default judgments to which they are not entitled. Based on these affidavits, the Civil Court issues tens of thousands of default judgments every year in Defendants' favor against Plaintiffs and other similarly situated unsuspecting victims.

119.    Plaintiffs and members of the putative class are substantially harmed when Defendants use the default judgments to freeze their bank accounts, garnish their wages, and pressure them into making settlement agreements on debts of dubious merit for which little or no documentation is available. They are also harmed when these judgments appear on their credit reports, preventing them from obtaining housing, employment, or affordable credit.

**E.    *Individual Plaintiff Facts***

**1.    *Monique Sykes***

120.    Plaintiff Monique Sykes is 30 years old and lives in the Bronx with her husband and her two young children. Ms. Sykes' husband is the family breadwinner. He works as a union carpenter, but it has been difficult for him to find steady employment in the last year. At the time of the events recounted here, Mr. Sykes was receiving Unemployment Benefits, which was the family's only source of income. Ms. Sykes has no income of her own, as she stays home to care for their children.

121.    On or about June 27, 2008, Defendant Mel Harris LLC commenced a lawsuit against Ms. Sykes in Bronx County Civil Court. Defendant LR Credit 18 was the plaintiff in the suit.

122.    The suit alleged that Ms. Sykes owed money to LR Credit 18, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "JPMorgan Chase Bank."

-32-

123.    Ms. Sykes believes that it is possible she owes this debt, but she is not sure, as she does not recognize the amount.

124.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Sykes.

125.    Ms. Sykes was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

126.    On or about July 25, 2008, Defendant Samserv prepared an affidavit attesting that Ms. Sykes had been served with process in accordance with New York law. The affidavit was purportedly signed by Defendant Lamb and notarized by Defendant Mlotok.

127.    The affidavit of service contains false statements. Specifically:

A.    The process server swore that he left the papers with a "Ms. Rolanda" at Ms. Sykes' residence, but no such person resides with Ms. Sykes and her family.

B.    The process server swore that he spoke to "Ms. Rolanda" and confirmed that Ms. Sykes was not in the military, but Ms. Sykes does not know "Ms. Rolanda," so this person would be unable to confirm her military status.

C.    The process server swore that he went to Ms. Sykes' apartment on July 18, 2008, at 7:15 p.m., but Ms. Sykes would have been home at that time, and no process server came to her door. With two children under the age of three, the Sykes family was always home in the evenings.

D.    The process server swore that he mailed a copy of the summons and complaint to Ms. Sykes on July 24, 2008, but she never received a copy of the summons and complaint by mail.

-33-

128.    On or about August 1, 2008, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

129.    In or about September or October 2008, Defendants sought a default judgment against Ms. Sykes.

130.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Lutz "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

131.    Defendant Lutz also affirmed that he sent a copy of the summons and complaint to Ms. Sykes via U.S. mail on August 7, 2008. Ms. Sykes did not receive this mailing.

132.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Lillian Mathew stating her belief that Ms. Sykes was not in the military. Ms. Mathew obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center. This transaction took place on September 11, 2008, at 12:46:06.

133.    As part of their application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

134.    In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action." On information and belief, this claim is false.

135.    In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and

-34-

obtained from plaintiff's assignor."

136.    This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from JPMorgan Chase Bank and that Defendants have evidence that Ms. Sykes owes this debt. Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

137.    On October 7, 2008, the court entered a default judgment against Ms. Sykes. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

138.    On or about July 2, 2009, Ms. Sykes learned about the lawsuit for the first time when she received a letter via U.S. mail from a New York City marshal threatening to take her personal property. Defendant Mel Harris LLC caused the marshal to mail this letter to Ms. Sykes.

139.    On July 7, 2009, Ms. Sykes filed a motion seeking to vacate the default judgment and dismiss the case due to improper service. The motion was granted on July 31, 2009, and the case was dismissed.

140.    Because the dismissal was "without prejudice," however, Ms. Sykes is at risk of being sued and subjected to improper service for a second time.

141.    In addition, Ms. Sykes has incurred economic harm because of Defendants' actions. For example, Ms. Sykes had to spend money copying her file and on transportation to and from the courthouse. She had to take a cab on at least one occasion because the MTA had suspended service on her subway line. In addition, her husband had received

offers of work, which he had to turn down so that he could stay home with the children while Ms. Sykes went to court.

### 2.    *Rea Veerabadren*

142.    Plaintiff Rea Veerabadren is a 58-year-old immigrant from Mauritius who lives in Queens, New York.  Ms. Veerabadren has worked full-time as a nanny for about 25 years to support herself and her daughter.  During her years of employment, Ms. Veerabadren has steadily set aside a portion of her earnings for her retirement.

143.     On or about April 12, 2006, Defendant Mel Harris LLC commenced a lawsuit against Ms. Veerabadren in Queens County Civil Court.  Defendant LR Credit 10 was the plaintiff in the suit.

144.    The suit alleged that Ms. Veerabadren owed money to LR Credit 10, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "Sears."

145.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Veerabadren.

146.    Ms. Veerabadren was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

147.    On or about May 25, 2006, Samserv prepared an affidavit attesting that Ms. Veerabadren had been served with process in accordance with New York law.  The affidavit was purportedly signed by Defendant Mosquera and notarized by Defendant Mlotok.

148.    The affidavit of service contains false statements.  Specifically:

A.    The process server swore that he left the papers with a "Mr Victor" at Ms.

-36-

Veerabadren's residence, but no such person resides with Ms. Veerabadren.

B.    The process server swore that he spoke to "Mr Victor" and confirmed that Ms. Veerabadren was not in the military, but Ms. Veerabadren does not know "Mr Victor," so this person would be unable to confirm her military status.

C.    The process server swore that he went to Ms. Veerabadren's apartment on May 11, 2006 at 9:23 p.m., but Ms. Veerabadren would have been home at that time, and no process server came to her door.

D.    The process server swore that he mailed a copy of the summons and complaint to Ms. Veerabadren on May 18, 2006, but she never received a copy of the summons and complaint by mail.

149.    On or about May 25, 2006, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

150.    In or about July 2006, Defendants sought a default judgment against Ms. Veerabadren.

151.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Lutz "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

152.    Defendant Lutz also affirmed that he sent a copy of the summons and complaint to Ms. Veerabadren via U.S. mail on June 7, 2006.  Ms. Veerabadren did not receive this mailing.

153.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Lillian Mathew stating her belief that Ms. Veerabadren was not

in the military.  Ms. Mathew obtained the information necessary to complete this affidavit by

accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction

took place on July 6, 2006, at 9:31:21.

154.    As part of its application for a default judgment, Defendants submitted an

affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by

Defendant Young.

155.    In the affidavit, Defendant Fabacher claims that he is "an authorized and

designated custodian of records for the plaintiff's assignor."  On information and belief, this

claim is false and misleading, as it suggests that Defendant Fabacher is an authorized and

designated custodian of records for Sears and that Defendants have evidence that Ms.

Veerabadren owes this debt.  On information and belief, Defendant Fabacher is not an authorized

and designated custodian of records for Sears, and Defendants have no such evidence.

156.    In the affidavit, Defendant Fabacher claims that he is "fully and personally

familiar with, and have [sic] personal knowledge of, the facts and proceedings relating to the

within action."  On information and belief, this claim is false.

157.    In the affidavit, Defendant Fabacher claims that he maintains "the daily

records and accounts in the regular course of business, including records maintained by and

obtained from plaintiff's assignor."

158.    This claim is misleading, as it suggests that Defendant Fabacher and the

other Defendants are in possession of documentation obtained from Sears and that Defendants

have evidence that Ms. Veerabadren owes this debt.  On information and belief, Defendants have

no such evidence and have no information about this debt other than the "media," which is

inadmissible in court.

159.    On August 8, 2006, the court entered a default judgment against Ms.

Veerabadren.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit

of merit submitted to the court by Defendants.

160.    In January 2008, Ms. Veerabadren learned about the lawsuit for the first

time when she received a telephone call from an employee of Defendant Mel Harris LLC, who

said that they had a judgment against her for a Sears debt and that they would restrain her bank

account.

161.    Ms. Veerabadren previously owned a Sears account, but remembers that

she had to stop making payments on that account in or around 1998 – eight years before

Defendants Mel Harris LLC and LR Credit 10 commenced the lawsuit – because she could no

longer afford to make payments.

162.    Furthermore, though Ms. Veerabadren remembered having had only <u>one</u>

Sears account, she had already been sued by another debt buyer on a Sears account.  This other

debt buyer had also obtained a default judgment against her and seized money from her bank

account and filed a satisfaction of judgment.  (Ms. Veerabadren subsequently vacated this default

judgment and recovered her money from this other debt buyer.)

163.    Because Ms. Veerabadren remembered having had only <u>one</u> Sears

account, she did not understand how she could have two judgments against her for the same

alleged debt.  She therefore informed Defendant Mel Harris LLC that another debt buyer had

already sued her and seized money from her bank account for the same Sears debt.

164.    Defendant Mel Harris LLC told Ms. Veerabadren to send them proof.  She

therefore obtained a copy of a satisfaction of judgment filed by attorneys for the other debt buyer

in the other lawsuit, and faxed a copy to Defendant Mel Harris LLC.

165.    Ms. Veerabadren then called Defendant Mel Harris LLC to confirm that

they had received her fax.  She was told that their judgment might be for a different Sears

account, though Ms. Veerabadren remembered having had only one Sears account.  Defendant

Mel Harris LLC told her to provide the Sears account number sued on in the other lawsuit, and

she did.  Defendant Mel Harris LLC told her that they would look into the matter.

166.    Nevertheless, in or around February 2008, Ms. Veerabadren discovered

that her bank account had been restrained by Defendant Mel Harris LLC.  Ms. Veerabadren was

charged a $125 legal processing fee by her bank because of the restraint.

167.    Ms. Veerabadren called Defendant Mel Harris LLC again to tell them that

she did not owe the money that they claimed, but they said that she did owe the money.

168.    Defendant Mel Harris LLC then levied upon her bank account, seizing all

of its contents.

169.    On December 12, 2008, Ms. Veerabadren filed a motion seeking to vacate

the default judgment, recover her levied funds, and dismiss the case due to improper service.  On

December 23, 2008, Ms. Veerabadren and Defendant Mel Harris LLC entered into a stipulation

vacating the default judgment and returning the levied funds to Ms. Veerabadren, though not

reimbursing her for her bank's $125 legal processing fee.  On December 16, 2009, Ms.

Veerabadren and Defendant Mel Harris LLC entered into a stipulation discontinuing the lawsuit.

170.    Because the discontinuance was "without prejudice," however, Ms.

Veerabadren is at risk of being sued and subjected to improper service for a second time.

171.    Ms. Veerabadren has incurred economic harm because of Defendants' actions.  For example, Ms. Veerabadren was charged a $125 legal processing fee because of Defendants' restraint upon her bank account; lost the use of her levied funds for nearly one year; had to spend money on transportation to and from the courthouse, as well as to and from her lawyer's office; and had to miss numerous days of work to go to court and to her lawyer's office.

### 3.    *Kelvin Perez*

172.    Plaintiff Kelvin Perez is 39 years old and lives in the Bronx with his wife, whom he supports.  For the past three years, he has worked part-time as an English as a Second Language teacher at a non-profit housing organization.

173.    On or about November 5, 2007, Defendant Mel Harris LLC commenced a lawsuit against Mr. Perez in Bronx County Civil Court.  Defendant LR Credit 14 was the plaintiff in the suit.

174.    The suit alleged that Mr. Perez owed money to LR Credit 14, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "Bally Total Fitness Clubs."

175.    Mr. Perez has never held a Bally Total Fitness Clubs membership, or even entered a Bally Total Fitness Club.  He has also never owned a credit card.

176.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Mr. Perez.

177.    Mr. Perez was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

178.    On or about December 20, 2007, Defendant Samserv prepared an affidavit

-41-

attesting that Mr. Perez had been served with process in accordance with New York law at his residence at 239 Balcom Ave., Apt. 3, Bronx, NY. The affidavit was purportedly signed by Defendant Andino and notarized by Defendant Mlotok.

179. The affidavit of service contains false statements. Specifically:

A. The process server swore that 239 Balcom Ave. Apt. 3, Bronx, NY was the last known actual place of residence for Mr. Perez. However, Mr. Perez has never lived at this address, nor is he familiar with it.

B. The process server swore that he spoke to "Mr. Santiago" and confirmed Mr. Perez's address and non-military status, but Mr. Perez does not know "Mr. Santiago," so this person would be unable to confirm his residence or military status.

C. The process server swore that he mailed a copy of the summons and complaint to Mr. Perez on December 18, 2007, but Mr. Perez never received a copy of the summons and complaint by mail.

180. On or about December 26, 2007, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

181. On or about January or February 2008, Defendants sought a default judgment against Mr. Perez.

182. On information and belief, as part of their application for a default judgment, Defendants submitted an affirmation in which they "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

183. On information and belief, Defendants also affirmed that they sent a copy

-42-

of the summons and complaint to Mr. Perez via U.S. mail.  Mr. Perez did not receive this mailing.

184.    On information and belief, as part of their application for a default judgment, Defendants submitted a nonmilitary affidavit stating their belief that Mr. Perez was not in the military.  Defendants obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.

185.    On information and belief, as part of their application for a default judgment, Defendants submitted an affidavit of merit.

186.    On information and belief, in the affidavit, Defendants claim that they are "fully and personally familiar with, and have [sic] personal knowledge of, the facts and proceedings relating to the within action."  On information and belief, this claim is false.

187.    On information and belief, in the affidavit, Defendants claim that they maintain "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

188.    This claim is misleading, as it suggests that Defendants are in possession of documentation obtained from Bally Total Fitness Clubs and that Defendants have evidence that Mr. Perez owes this debt.  Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

189.    On February 19, 2008, the court entered a default judgment against Mr. Perez.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

190.    In or about September 2009, Mr. Perez learned about the lawsuit for the

first time when he went to his bank to deposit a paycheck, and was informed by the teller that his account had been frozen, due to a default judgment entered against him by LR Credit 14. At the time, Mr. Perez had approximately $500 in his account.

191.    The bank teller gave Mr. Perez a notice that indicated that his bank account had been frozen by LR Credit 14. Mr. Perez did not recognize LR Credit 14, nor did he recognize the debt. He contacted a representative of Defendant Mel Harris LLC, whose contact information was on the notice, and was informed that the debt was for a Bally Total Fitness Clubs account.

192.    Mr. Perez explained that he had never had a Bally Total Fitness Club membership, and that he had never lived at any of the addresses the representative had on file for him. In response, Defendant Mel Harris LLC's representative informed Mr. Perez that criminal charges would be filed against him if he did not pay.

193.    Mr. Perez called his bank, and explained that there had been a mistake. He believed his bank account would be unfrozen eventually, and in the meantime, he used a check-cashing service to access his paychecks, rather than depositing them in his bank.

194.    A few months later, Mr. Perez applied for a credit card, and was denied. Mr. Perez obtained a copy of his credit report, which showed the default judgment entered against him by Defendant LR Credit 14.

195.    Around this time, Mr. Perez also applied to several jobs which required potential applicants to complete credit checks. Mr. Perez obtained interviews for at least two of these positions, and believes he was denied job offers due to his negative credit report.

196.    In or around this time, Mr. Perez also sought to move into a three-

-44-

bedroom apartment with his wife. Each of his applications was denied due to his negative credit report.

197. Mr. Perez was ultimately forced to move with his wife into a studio apartment that his wife already owned. Although Mr. Perez would have preferred to live in a three-bedroom, he was forced to move into a studio because his credit report caused him to be rejected from every other apartment for which he applied.

198. On or about December 18, 2009, Mr. Perez filed a motion seeking to vacate the default judgment and dismiss the case on the grounds that he was not served with process.

199. On December 31, 2009, Stacey Schwartz, an associate of Defendant Mel Harris LLC, submitted an affirmation in opposition to Mr. Perez's motion.

200. In her affirmation, Ms. Schwartz stated that she is "familiar with the facts and circumstances of this action."

201. Ms. Schwartz also stated that Defendant Mel Harris LLC had sent Mr. Perez a validation letter and served him. Despite Mr. Perez's express statements to the contrary, Ms. Schwartz represented that Mr. Perez did not deny either owning a Bally Total Fitness Club account or living at the address listed for service of process on the affidavit of service.

202. On February 12, 2010, Defendant Mel Harris LLC stipulated to discontinuing the action against Mr. Perez.

203. Mr. Perez has suffered economic harm as a result of Defendants' actions. Mr. Perez was forced to incur fees each time he used a check-cashing service to cash his paycheck, because he was unable to access his bank account. The negative credit report he

-45-

received as a result of Defendants' action impeded his ability to obtain full-time employment and housing. He has also incurred numerous other costs in his repeated visits to court to attempt to vacate the judgment entered against him. Mr. Perez does not know whether the negative credit report he received as a result of the default judgment will continue to affect his ability to find housing or employment in the future.

### 4.   *Clifton Armoogam*

204.   Plaintiff Clifton Armoogam is a 40-year-old immigrant from Trinidad who lives in Queens, New York. Mr. Armoogam is a low-wage worker who works full-time to support himself, his wife, and his young child.

205.   On or about May 27, 2010, Defendant Mel Harris LLC commenced a lawsuit against Mr. Armoogam in Kings County Civil Court. Defendant LR Credit 21 was the plaintiff in the suit.

206.   The suit alleged that Mr. Armoogam owed money to LR Credit 21, which claimed that it was the assignee and purchaser of a credit card debt originally owed to an entity identified as "CHASE BANK USA NA." According to LR Credit 21's complaint, Mr. Armoogam incurred $4,891.65 on this Chase credit card account.

207.   Mr. Armoogam has never had any credit card accounts, let alone a Chase credit card account.

208.   Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Mr. Armoogam.

209.   Mr. Armoogam was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

-46-

210.    On or about June 24, 2010, Defendant Samserv prepared an affidavit attesting that Mr. Armoogam had been served with process in accordance with New York law. The affidavit was purportedly signed by Defendant Mosquera and notarized by Defendant Mlotok.

211.    The affidavit of service contains false statements.  Specifically:

A.    The process server swore that he left the papers with a "Ms. Shanice" at 10455 108th Street, South Richmond Hill, NY 11419, but Mr. Armoogam has never resided at this address, and knows no one named "Shanice." Instead, this is his sister's address, but her name is not Shanice, and she does not fit the physical description alleged in the affidavit of service.

B.    The process server swore that he spoke to "Ms. Shanice" and confirmed that Mr. Armoogam was not in the military, but Mr. Armoogam does not know a "Ms. Shanice," so this person would be unable to confirm his military status.

C.    The process server swore that he went to 10455 108th Street, South Richmond Hill, NY 11419 on June 14, 2010, at 8:26 a.m., but again, Mr. Armoogam has never lived at this address, and his sister would not have been home because she would have already left for work by that time.

D.    The process server swore that he mailed a copy of the summons and complaint to Mr. Armoogam on June 21, 2010, but Mr. Armoogam never received a copy of the summons and complaint by mail.

212.    On or about July 1, 2010, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

-47-

213.    In August 2010, Defendants sought a default judgment against Mr. Armoogam.

214.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Waldman "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

215.    Defendant Waldman also affirmed that he sent a copy of the summons and complaint to Mr. Armoogam via U.S. mail on July 9, 2010.  Mr. Armoogam did not receive this mailing.

216.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Cindy Jerez stating her belief that Mr. Armoogam was not in the military.  Ms. Jerez obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction took place on August 26, 2010, at 08:26:04.

217.    As part of their application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

218.    In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action."  Upon information and belief, this claim is false.

219.    In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

-48-

220.    This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from Chase Bank and that Defendants have evidence that Mr. Armoogam owes this debt.  Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

221.    On September 15, 2010, the court entered a default judgment against Mr. Armoogam.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

222.    In or around early March 2011, Mr. Armoogam learned about the lawsuit for the first time when his sister called and said that she had received some mail for him at her address.  This mail turned out to be a notice from a New York City marshal threatening to seize his personal property.  Defendant Mel Harris LLC caused the marshal to mail this letter to Mr. Armoogam.

223.    On March 14, 2011, Mr. Armoogam filed a motion seeking to vacate the default judgment and dismiss the case on the grounds that he was not served with process.  On March 24, 2011, the Court ordered the default judgment vacated.

224.    Mr. Armoogam has suffered economic harm because of Defendants' actions.  For example, Mr. Armoogam had to spend money copying his court file and on transportation to and from his lawyer's office.

F.    *Representative Non-Party Facts*

1.    *Ruby Colon*

225.    Ruby Colon is about 38 years old and lives in Brooklyn with her daughter,

-49-

who is in college.  Ms. Colon is disabled and subsists on food stamps and Supplemental Security Income (SSI).  She has no other sources of income.

226.    On or about May 22, 2007, Defendant Mel Harris LLC commenced a lawsuit against Ms. Colon in the Kings County Civil Court.  Defendant LR Credit 12 was the plaintiff in the lawsuit.

227.    The suit alleged that Ms. Colon owed money to LR Credit 12, which claimed that it was the purchaser and assignee of a debt originally owed to an entity identified as "Chase Manhattan Bank."  According to LR Credit 12's complaint, Ms. Colon incurred $2,078.18 in charges on the Chase Manhattan account.

228.    Ms. Colon believes that it is possible she incurred charges on this account, but she is not sure, as she does not recognize the amount.

229.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Colon.

230.    Ms. Colon was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

231.    On or about June 11, 2007, Defendant Samserv prepared an affidavit attesting that Ms. Colon had been served with process in accordance with New York law.  The affidavit was purportedly signed by Defendant Mosquera and notarized by Defendant Mlotok.

232.    The affidavit of service contains numerous false statements.  Specifically:

A.    The process server swore that he left the papers with a "Mr. Hector" at Ms. Colon's residence, but no such person resides with Ms. Colon and her daughter.

B.    The process server swore that he spoke to "Mr. Hector" and confirmed that Ms.

     Colon was not in the military or dependent on anyone in the military, but Ms.

     Colon does not know "Mr. Hector," so this person would be unable to confirm her

     military status.

C.     The process server swore that "Mr. Hector" was male with black hair and white

     skin, 36-50 years old, 5'9"-6'0", 161-200 lbs, and balding, but Ms. Colon does

     not know anyone who fits this description.

D.     The process server swore that he mailed a copy of the summons and complaint to

     Ms. Colon on June 11, 2007, but she never received a copy of the summons and

     complaint by mail.

233.    On or about June 12, 2007, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

234.    In or about July 2007, Defendants sought a default judgment against Ms. Colon.

235.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Lutz "affirm[ed] under the penalties of perjury that service of the summons and complaint had been made."

236.    Defendant Lutz also affirmed that he sent a copy of the summons and complaint to Ms. Colon via U.S. mail on June 20, 2007.  Ms. Colon did not receive this mailing.

237.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Lillian Mathew stating her belief that Ms. Colon was not in the military.  Ms. Mathew obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction

took place on July 19, 2007, at 16:13:18.

238.    As part of their application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

239.    In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action." Upon information and belief, this claim is false.

240.    In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

241.    This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from Chase Manhattan Bank and that Defendants have evidence that Ms. Colon owes this debt. Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

242.    On July 31, 2007, the court entered a default judgment against Ms. Colon. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

243.    In about November 2008, Ms. Colon learned of the lawsuit when she discovered that her bank account had been frozen.

244.    On December 3, 2009, Ms. Colon filed a motion seeking to vacate the default judgment and dismiss the case on the grounds that she was not served with process. On

December 10, 2009, Defendant Mel Harris LLC consented to vacate the default judgment and dismiss the case without prejudice.

245.    However, because the dismissal was "without prejudice," Ms. Colon is at risk of being sued and subjected to improper service for a second time.

246.    Ms. Colon has suffered economic harm because of Defendants' actions. Among other things, Ms. Colon has been unable to use her bank account, and instead has had to rely on a government debit card for her financial transactions and for access to her SSI benefits. The government debit card carries with it many fees and expenses not associated with a regular checking account. For example, Ms. Colon cannot write checks, and therefore has to purchase money orders. She has to pay fees when she withdraws money from an ATM, regardless of which bank she goes to. As a result, Ms. Colon has incurred significant expenses that she could have avoided had she been able to access her bank account.

### 2.    *Fatima Graham*

247.    Fatima Graham is about 30 years old and lives in Manhattan with her infant son. At the time of the events recounted here, Ms. Graham was pregnant and receiving Unemployment Insurance Benefits as her only income. Ms. Graham has since exhausted her unemployment benefits and now subsists entirely on Public Assistance and Food Stamps.

248.    On or about July 30, 2008, Defendant Mel Harris LLC commenced a lawsuit against Ms. Graham in New York County Civil Court. Defendant LR Credit 18 was the plaintiff in the suit.

249.    The suit alleged that Ms. Graham owed money to LR Credit 18, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as

"Providian Bank."

250. Ms. Graham believes that it is possible she owes this debt, but she is not sure, as she does not recognize the amount and the debt is quite old.

251. Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Graham.

252. Ms. Graham was never properly served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

253. Ms. Graham did receive a copy of the summons and complaint in the mail. On information and belief, this mailing was made by Defendant Mel Harris LLC and not a process server. Although Ms. Graham received the summons and complaint, she did not understand how to respond to it.

254. On or about August 20, 2008, Defendant Samserv prepared an affidavit attesting that Ms. Graham had been served with process in accordance with New York law. The affidavit was purportedly signed by Defendant Lamb and notarized by Defendant Mlotok.

255. The affidavit of service contains false statements. Specifically:

A.    The process server swore that he left the papers with a "Ms. Courtney" at Ms. Graham's residence, but no such person resides with Ms. Graham and her family.

B.    The process server swore that he spoke to "Ms. Courtney" and confirmed that Ms. Graham was not in the military, but Ms. Graham does not know "Ms. Courtney," so this person would be unable to confirm her military status.

C.    The process server swore that he went to Ms. Graham's apartment on August 7, 2008, at 3:13 p.m., but Ms. Graham would have been home at that time, and no

-54-

process server came to her door.  At the time, Ms. Graham was unemployed, pregnant and feeling extremely ill, so she was nearly always home.

D.  The process server swore that he mailed a copy of the summons and complaint to Ms. Graham on August 18, 2008, but she never received a copy of the summons and complaint by mail from a process server.

256.  On or about August 21, 2008, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

257.  In or about September or October 2008, Defendants sought a default judgment against Ms. Graham.

258.  As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Lutz "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

259.  Defendant Lutz also affirmed that he sent a copy of the summons and complaint to Ms. Graham via U.S. mail on August 29, 2008.

260.  As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Lillian Mathew stating her belief that Ms. Graham was not in the military.  Ms. Mathew obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction took place on September 25, 2008, at 17:45:31.

261.  As part of its application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by someone named Chantella Ulmer.

-55-

262.     In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and have [sic] personal knowledge of, the facts and proceedings relating to the within action." On information and belief, this claim is false.

263.     In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

264.     This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from Providian Bank and that Defendants have evidence that Ms. Graham owes this debt. Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

265.     On October 7, 2008, the court entered a default judgment against Ms. Graham. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

266.     In February 2009, Ms. Graham learned about the judgment when her bank account was frozen. Ms. Graham's bank charged her $125 for restraining her account, and Ms. Graham's receipt of her unemployment benefits was delayed.

267.     On February 19, 2009, Defendant Mel Harris LLC sent Ms. Graham a letter via U.S. mail advising her of her frozen bank account and inviting her to contact it to resolve her debt.

268.     When Ms. Graham's bank account was frozen, she was due to give birth in one week, she had no food in her apartment, and she also needed to pay rent. Ms. Graham had

no access to her funds and no family members or friends to help her.  In order to meet her basic living expenses, Ms. Graham was forced to borrow money from a private individual, which she had to repay the next week at 4% interest.

269.    When her bank account was frozen, Ms. Graham felt very depressed, helpless, and desperate.  Ms. Graham worried about her frozen bank account constantly, had tremendous anxiety, and difficulty sleeping and caring for her newborn baby.

270.    Because Ms. Graham lost $125 in bank fees, was delayed in receiving her unemployment checks, and had to repay her loan with interest, she fell behind in her rent.  Ms. Graham was never able to catch up.  Ultimately, her landlord sued her for nonpayment of rent, and she had to get a grant from the New York City Human Resources Administration to pay off her arrears.

271.    Ms. Graham's account remained frozen for the next ten months.  During this time, Ms. Graham has had no access to a bank account.  She has to pay for everything with money orders, which is expensive.

272.    In December 2009, Ms. Graham received a letter via U.S. mail from a New York City marshal threatening to take her personal property.  Defendant Mel Harris LLC caused the marshal to mail this letter to Ms. Graham.

273.    In December 2009, Ms. Graham obtained counsel and filed a motion seeking to vacate the default judgment and dismiss the case due to improper service.  Defendant Mel Harris LLC stipulated to vacate the default judgment on December 8, 2009, and to discontinue the case on December 15, 2009.

274.    However, because the dismissal was "without prejudice," Ms. Graham is

-57-

at risk of being sued and subjected to improper service for a second time.

### 3.    *Saudy Rivera*

275.    Saudy Rivera is 49 years old and lives in Brooklyn.  Ms. Rivera is disabled and cannot work.  She receives only Social Security disability benefits as income.

276.    On or about January 9, 2009, Defendant Mel Harris LLC commenced a lawsuit against Ms. Rivera in Kings County Civil Court.  Defendant LR Credit 19 was the plaintiff in the suit.

277.    The suit alleged that Ms. Rivera owed money to LR Credit 19, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "JPMorgan Chase Bank."  According to LR Credit 19's complaint, Ms. Rivera incurred $5,808.40 on this Chase account.

278.    Ms. Rivera previously had a Chase account, but remembers making only one small charge to the account, which she then paid off.  She remembers that other, fraudulent charges were made to the account; that Chase contacted her about those charges; and that she disputed those charges with Chase.  Also, Ms. Rivera remembers that the Chase account she had was most likely past the statute of limitations when Defendants commenced the lawsuit against her.

279.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Rivera.

280.    Ms. Rivera was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

281.    On or about February 6, 2009, Defendant Samserv prepared an affidavit

attesting that Ms. Rivera had been served with process in accordance with New York law. The affidavit was purportedly signed by Defendant Al-Atrash and notarized by Defendant Mlotok.

282.   The affidavit of service contains false statements. Specifically:

A.   The process server swore that he left the papers with a "Ms. Linda Rivera" at Ms. Rivera's residence, but no such person resides with Ms. Rivera.

B.   The process server swore that he spoke to "Ms. Linda Rivera" and confirmed that Ms. Rivera was not in the military, but Ms. Rivera does not know "Ms. Linda Rivera," so this person would be unable to confirm her military status.

C.   The process server swore that he went to Ms. Rivera's apartment on January 30, 2009, at 10:17 p.m., but Ms. Rivera would have been home at that time, and no process server came to her door.

D.   The process server swore that he mailed a copy of the summons and complaint to Ms. Rivera, but she never received a copy of the summons and complaint by mail.

283.   On or about February 17, 2009, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

284.   In or about April 2009, Defendants sought a default judgment against Ms. Rivera.

285.   As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Harris "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

286.   Defendant Harris also affirmed that he sent a copy of the summons and complaint to Ms. Rivera via U.S. mail on February 25, 2009. Ms. Rivera did not receive this

mailing.

287.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Angelise Torres stating her belief that Ms. Rivera was not in the military. Ms. Torres obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center. This transaction took place on April 2, 2009, at 09:38:40.

288.    As part of their application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

289.    In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action." Upon information and belief, this claim is false.

290.    In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

291.    This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from JPMorgan Chase Bank and that Defendants have evidence that Ms. Rivera owes this debt. Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

292.    On April 13, 2009, the court entered a default judgment against Ms. Rivera. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of

merit submitted to the court by Defendants.

293.    Upon information and belief, Defendants then restrained Ms. Rivera's bank account containing her disability benefits.  Because Ms. Rivera's disability benefits are exempt from debt collection, she was able to get her account released.  However, she was charged a legal processing fee by her bank.

294.    In or around October or November 2009, Ms. Rivera received a letter from a New York City marshal threatening to take her personal property.  Defendant Mel Harris LLC caused the marshal to mail this letter to Ms. Rivera.

295.    On December 23, 2009, Ms. Rivera filed a motion seeking to vacate the default judgment and dismiss the case on the grounds that she was not served with process.  On January 7, 2010, Defendant Mel Harris LLC consented to vacate the default judgment and discontinue the case without prejudice.

296.    Because the discontinuance was "without prejudice," however, Ms. Rivera is at risk of being sued and subjected to improper service for a second time.

297.    Ms. Rivera has suffered economic harm because of Defendants' actions. For example, upon information and belief, Ms. Rivera was charged a legal processing fee by her bank because of Defendants' restraint upon her bank account, and temporarily lost use of her restrained funds.  Ms. Rivera also had to spend money copying her file and on transportation to and from the courthouse and to and from her lawyer's office.

### 4.    *Paula Robinson*

298.    Paula Robinson is 45 years old and lives in the Bronx with her three children, who are all under the age of 13.  Ms. Robinson is a single mother and works full-time

as a home health aide to support herself and her children.

299.   On or about March 2, 2009, Defendant Mel Harris LLC commenced a lawsuit against Ms. Robinson in Bronx County Civil Court.  Defendant LR Credit 18 was the plaintiff in the suit.

300.   The suit alleged that Ms. Robinson owed money to LR Credit 18, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "Citibank/Sears."

301.   Ms. Robinson believes that it is possible she owes this debt, but she is not sure, as she does not recognize the amount or the account number.  Furthermore, any Sears account she had was most likely past the statute of limitations when Defendants commenced the lawsuit against her.

302.   Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Robinson.

303.   Ms. Robinson was never served with a summons and complaint, either personally, by substitute service, or by nail and mail service.

304.   On or about May 4, 2009, Defendant Samserv prepared an affidavit attesting that Ms. Robinson had been served with process in accordance with New York law. The affidavit was purportedly signed by Defendant Lamb and notarized by Defendant Mlotok.

305.   The affidavit of service contains false statements.  Specifically:

A.   The process server swore that he left the papers with a "Mr. Randy Williams" at Ms. Robinson's residence, but no such person resides with Ms. Robinson and her family.

-62-

B.    The process server swore that he spoke to "Mr. Randy Williams" and confirmed that Ms. Robinson was not in the military, but Ms. Robinson does not know "Mr. Randy Williams," so this person would be unable to confirm her military status.

C.    The process server swore that he mailed a copy of the summons and complaint to Ms. Robinson on April 29, 2009, but she never received a copy of the summons and complaint by mail.

306.    On or about May 7, 2009, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

307.    In or about June 2009, Defendants sought a default judgment against Ms. Robinson.

308.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Harris "affirm[ed] under the penalties of perjury that service of the summons and complaint has been made."

309.    Defendant Harris also affirmed that he sent a copy of the summons and complaint to Ms. Robinson via U.S. mail on May 14, 2009.  Ms. Robinson did not receive this mailing.

310.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Cindy Jerez stating her belief that Ms. Robinson was not in the military.  Ms. Jerez obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction took place on June 18, 2009, at 14:37:56.

311.    As part of their application for a default judgment, Defendants submitted

-63-

an affidavit of merit that was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

312.   In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action."  On information and belief, this claim is false.

313.   In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

314.   This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from Citibank/Sears and that Defendants have evidence that Ms. Robinson owes this debt.  Upon information and belief, Defendants have no such evidence and have no information about this debt other than the "media," which is inadmissible in court.

315.   On July 8, 2009, the court entered a default judgment against Ms. Robinson.  In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

316.   In February 2010, Ms. Robinson learned about the lawsuit for the first time when she received a letter via U.S. mail from a New York City marshal threatening to take her personal property and garnish her wages.  Defendant Mel Harris LLC caused the marshal to mail this letter to Ms. Robinson.

317.   On February 2, 2010, Ms. Robinson obtained counsel and filed a motion seeking to vacate the default judgment and dismiss the case due to improper service.  On

February 25, 2010, Defendant Mel Harris LLC consented to vacate the default judgment.

318.    Ms. Robinson has incurred economic harm as a result of this case.  Ms. Robinson is paid only for the hours that she works as a home health aid, and she has lost wages as a result of taking leave to retain counsel and to attend court to contest the default judgment that was entered against her.

### 5.    *Enid Roman*

319.    Enid Roman is 45 years old and lives in Brooklyn.  Ms. Roman is a single mother who works full-time to support herself and her children.

320.    On or about March 16, 2009, Defendant Mel Harris LLC commenced a lawsuit against Ms. Roman in Kings County Civil Court.  Defendant LR Credit 19 was the plaintiff in the suit.

321.    The suit alleged that Ms. Roman owed money to LR Credit 19, which claimed that it was the assignee and purchaser of a debt originally owed to an entity identified as "WAMU/PROVIDIAN BANK."  According to LR Credit 19's complaint, Ms. Rivera incurred $3437 on this WaMu/Providian account.

322.    Ms. Roman previously had a Providian account, but remembers that the Providian account she had was most likely past the statute of limitations when Defendants commenced the lawsuit against her.  She also does not remember ever owing $3437 on any account.

323.    Defendant Samserv claimed that its employees and/or agents served the summons and complaint upon Ms. Roman.

324.    Ms. Roman was never served with a summons and complaint, either

personally, by substitute service, or by nail and mail service.

325.    On or about April 22, 2009, Defendant Samserv prepared an affidavit attesting that Ms. Roman had been served with process in accordance with New York law.  The affidavit was purportedly signed by Defendant Abdelrahman and notarized by Defendant Mlotok.

326.    The affidavit of service contains false statements.  Specifically:

A.    The process server swore that he left the papers with a "Mr. John" at Ms. Roman's residence, but no such person resides with Ms. Roman.

B.    The process server swore that he spoke to "Mr. John" and confirmed that Ms. Roman was not in the military, but Ms. Roman does not know "Mr. John," so this person would be unable to confirm her military status.

C.    The process server swore that he went to Ms. Roman's apartment on April 14, 2009, at 12:20 p.m., but Ms. Roman would have been home at that time, and no process server came to her door.

D.    The process server swore that he mailed a copy of the summons and complaint to Ms. Roman, but she never received a copy of the summons and complaint by mail.

327.    On or about May 1, 2009, Defendants caused the fraudulent affidavit of service described above to be filed with the court.

328.    In June 2009, Defendants sought a default judgment against Ms. Roman.

329.    As part of their application for a default judgment, Defendants submitted an affirmation in which Defendant Harris "affirm[ed] under the penalties of perjury that service

of the summons and complaint has been made."

330.    Defendant Harris also affirmed that he sent a copy of the summons and complaint to Ms. Roman via U.S. mail on May 11, 2009.  Ms. Roman did not receive this mailing.

331.    As part of their application for a default judgment, Defendants submitted a nonmilitary affidavit signed by Cindy Jerez stating her belief that Ms. Roman was not in the military.  Ms. Jerez obtained the information necessary to complete this affidavit by accessing, over the internet, the Department of Defense Manpower Data Center.  This transaction took place on June 11, 2009, at 11:33:12.

332.    As part of their application for a default judgment, Defendants submitted an affidavit of merit which was purportedly signed by Defendant Fabacher and notarized by Defendant Young.

333.    In the affidavit, Defendant Fabacher claims that he is "fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the within action."  Upon information and belief, this claim is false.

334.    In the affidavit, Defendant Fabacher claims that he maintains "the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor."

335.    This claim is misleading, as it suggests that Defendant Fabacher and the other Defendants are in possession of documentation obtained from WaMu/Providian Bank and that Defendants have evidence that Ms. Roman owes this debt.  Upon information and belief, Defendants have no such evidence and have no information about this debt other than the

-67-

"media," which is inadmissible in court.

336.    On June 23, 2009, the court entered a default judgment against Ms. Roman. In doing so, the court relied upon the fraudulent affidavit of service and affidavit of merit submitted to the court by Defendants.

337.    In January 2010, Ms. Roman learned about the lawsuit for the first time when she received a letter via U.S. mail from a New York City marshal threatening to garnish her wages. Defendant Mel Harris LLC caused the marshal to mail this letter to Ms. Roman.

338.    On January 28, 2010, Ms. Roman filed a motion seeking to vacate the default judgment and dismiss the case on the grounds that she was not served with process. On February 11, 2010, the Court ordered the default judgment vacated.

339.    Ms. Roman has suffered economic harm because of Defendants' actions, including costs for copying her court file.

G.    **Class Action Allegations**

340.    Plaintiffs bring this case as a class action under three distinct subdivisions of Fed. R. Civ. P. 23(b).

341.    First, Plaintiffs seek certification of a Rule 23(b)(1)(A) and/or 23(b)(2) Class consisting of all persons who have been or will be sued by the Mel Harris Defendants as counsel for the Leucadia Defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought.

342.    The prosecution of separate actions by individual members of the proposed (b)(1)(A) and (b)(2) class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for defendants.

343.    Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(1)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

344.    On information and belief, the Rule (b)(1)(A) and (b)(2) class includes thousands of members.  They are so numerous that joinder of all Class members is impracticable.

345.    Second, plaintiffs seek certification of a Rule 23(b)(3) class consisting of all persons who have been sued by the Mel Harris Defendants as counsel for the Leucadia Defendants in actions commenced in New York City Civil Court and where a default judgment has been entered against them.

346.    All of the members of the Rule (b)(3) class were injured as a result of defendants' conduct.

347.    On information and belief, the Rule (b)(3) class includes tens of thousands of individuals.  They are so numerous that joinder of all Class members is impracticable.  There are numerous questions of law and fact common to the class.  Chief among them are whether Defendants' actions, as described above, violate the Fair Debt Collection Practices Act, the Racketeer Influenced and Corrupt Organizations Act, the New York Consumer Protection Act, and the New York Judiciary Law.  These common issues predominate over any individual issues.

348.    Defendants' conduct towards Plaintiffs and all absent members of the proposed classes has resulted in fraudulently obtained judgments of default being entered, which has, in turn, caused serious harm.  The claims and practices alleged in this complaint are common to all members of the class.

349.    The violations suffered by the individual plaintiffs are typical of those

suffered by the class. The entire class will benefit from the remedial and monetary relief sought in this action.

       350.    The individual plaintiffs have no conflict of interest with any putative absent class members, and will fairly and adequately protect the interests of the class. Counsel competent and experienced in federal class action and unfair debt collection practice litigation have been retained to represent the class. The Neighborhood Economic Development Advocacy Project (NEDAP) works to promote community economic justice and to eliminate discriminatory economic practices that harm communities and perpetuate inequality and poverty. Through its Consumer Law Project, NEDAP provides direct legal services to thousands of low income New Yorkers through a legal hotline and clinic, builds the capacity of legal services and community-based organizations to address consumer financial justice issues, and advocates for systemic reform. MFY Legal Services, Inc. ("MFY") provides advice and representation to over 10,000 New Yorkers each year, working in concert with neighborhood social service providers and community advocates, and initiates affirmative litigation that impacts many thousands of people. Through its Consumer Rights Project, MFY provides advice and representation to consumers who are harassed by debt collectors, sued in New York courts, and affected in various ways by consumer issues. Emery Celli Brinckerhoff & Abady LLP is a law firm with offices in New York City with extensive experience in class action lawsuits and civil right litigation that has served or is currently serving as class counsel in: *McBean v. City of New York*, 260 F.R.D. 120 (S.D.N.Y. 2009) (certifying Rule 23(b)(3) class of persons subjected to unlawful misdemeanor pre-trial strip search policy); *Casale v Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009) (certifying Rule 23(b)(2) and (b)(3) classes of persons arrested for subsections of loitering statute declared

unconstitutional); *Coultrip v. Pfizer*, No. 06 Civ. 9952 (AKH) (counsel for thousands of sales

representatives in nationwide collective action under the Fair Labor Standards Act); *McBean v.*

*City of New York*, No. 02 Civ. 5426 (GEL), 2007 WL 2947448 (S.D.N.Y. Oct. 05, 2007)

(certifying Rule 23(b)(2) class of persons subjected to unlawful misdemeanor pre-trial strip

search policy); *Brown v. Kelly*, 244 F.R.D. 222 (S.D.N.Y. 2007) (certifying Rule 23(b)(2)

bilateral plaintiff and defendant classes and Rule 23(b)(3) plaintiff class of persons arrested for

loitering for the purpose of begging); *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d

Cir. 2006) (reversing and certifying Rule 23(b)(3) class of persons subjected to unlawful

misdemeanor pretrial strip search policy); *D.D. v. New York City Dep't of Educ.*, No. 03-CV-

2489 (DGT), 2004 WL 633222 (E.D.N.Y., Mar. 30, 2004) (certifying Rule 23(b)(2) class of New

York City preschool children seeking to enforce the Individuals with Disabilities Education Act);

*Ingles v. Toro*, No. 01 Civ. 8279 (DC), 2003 WL 402565 (S.D.N.Y. Feb. 20, 2003) (certifying

Rule 23(b)(1) and (2) class).

351.    This action is superior to any other method for the fair and efficient

adjudication of this legal dispute, as joinder of all members of the class is impracticable, and the

damages suffered, although substantial, are small in relation to the extraordinary expense and

burden of individual litigation and therefore it is highly unlikely that individual actions will be

pursued.

352.    Managing this case as a class should not present any particular difficulty.

## FIRST CAUSE OF ACTION
(FDCPA, 15 U.S.C. § 1692)

353.    Plaintiffs hereby restate, reallege, and incorporate by reference all

-71-

foregoing paragraphs.

354.    Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

355.    A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such a prohibition includes the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Such a prohibition also includes the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

356.    A debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

357.    Nor may a debt collector "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

358.    A process server is exempted from the definition of a debt collector only insofar as the process server is in fact "serving or attempting to serve legal process." 15 U.S.C. § 1692a(6)(D).

359.    Defendants violated the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f by making false and misleading representations, and engaging in unfair and abusive practices.[*] Defendants' violations include, but are not limited to:

---

[*] This complaint does not allege FDCPA claims on behalf of Plaintiff Veerabadren.

A.    Producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not;

B.    Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when in fact it was not;

C.    Producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the facts necessary to obtain a default judgment, when in fact they do not;

D.    Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

E.    Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

F.    Using fraudulently obtained default judgments to extract money from Plaintiffs and class members.

360.    As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiffs have sustained actual damages in an amount to be proved at trial and are also entitled to statutory damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Civil RICO, 28 U.S.C. § 1962(c) & (d))

361.    Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

362.    Plaintiffs are natural persons, and as such are "persons" within the

meaning of 18 U.S.C. § 1961(3).

363.    Defendants are natural persons and corporate entities, and as such are "persons" within the meaning of 18 U.S.C. § 1961(3).

***The Enterprise***

364.    On information and belief, the Mel Harris Defendants, the Leucadia Defendants and the Samserv Defendants comprise three distinct groups of persons that together form an enterprise within the meaning of 18 U.S.C. § 1961(4).  Each and every defendant is employed by or associated with the enterprise.

365.    On information and belief, each group of defendants, the Mel Harris Defendants, the Leucadia Defendants and the Samserv Defendants, also qualify as separate and distinct enterprises within the meaning of 18 U.S.C. § 1961(4).  Each and every Mel Harris Defendant is employed by or associated with the Mel Harris enterprise; each Leucadia defendant is employed by or associated with the Leucadia enterprise; and each Samserv defendant is employed by or associated with the Samserv enterprise.

366.    On information and belief, the individuals and entities that constitute the Mel Harris Defendants, the Leucadia Defendants and the Samserv Defendants taken together are an association-in-fact within the meaning of 18 U.S.C. § 1961(4).

367.    The purpose of the enterprise and/or enterprises (collectively "Enterprise") is to secure default judgments through fraudulent means and to use those judgments to extract money from Plaintiffs and putative class members.  This is accomplished by the Leucadia Defendants and the Mel Harris Defendants buying debts for collection; the Mel Harris Defendants commencing actions in the Civil Court on behalf of the Leucadia Defendants; the

-74-

Mel Harris and Leucadia Defendants obtaining default judgments against Plaintiffs and putative class members through fraudulent means; and the Samserv Defendants providing fraudulent affidavits of service in furtherance of the scheme. The relationships between the three defendant groups are longstanding and ongoing.

368.    The Enterprise has for many, but no fewer than four, years been engaged in, and continues to be engaged in, activities that affect interstate commerce. Defendants' unlawful Enterprise in violation of RICO has been and remains longstanding, continuous and open ended.

**_Pattern of Racketeering Activity – Mail and Wire Fraud_**

369.    Defendants, individually and collectively, as an Enterprise, have engaged, directly or indirectly, a pattern of racketeering activity, as described below, in violation of 18 U.S.C. § 1962(c) & (d).

370.    Defendants, acting individually and as part of the Enterprise, have devised a scheme to defraud and to obtain money or property by means of false or fraudulent pretenses and representations. The scheme includes but is not limited to:

A.    Producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not;

B.    Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when it fact it was not;

C.    Producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the facts necessary to obtain a default

-75-

judgment, when in fact they do not;

D.    Misrepresenting that Defendants are in possession of or could obtain

documentation evidencing that Plaintiffs and class members owe a debt, when in

fact they do not possess and cannot obtain such documentation;

E.    Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain

default judgments against Plaintiffs and class members under false pretenses;

F.    Using fraudulently obtained default judgments to extract money from Plaintiffs

and class members.

371.    Defendants, acting individually and as part of the Enterprise, have made

fraudulent misrepresentations on specific occasions as follows:

A.    On May 25, 2006, December 26, 2007, August 1, 2008, and July 1, 2010,

Defendants filed fraudulent affidavits of service with the Civil Court falsely

stating that service had been made, when it was not.

B.    In July 2006, February 2008, October 2008, and August 2010, Defendants filed

false attorney affirmations with the Civil Court stating that service had been

made, when it was not.

C.    In July 2006, February 2008, October 2008, and August 2010, Defendants filed

fraudulent affidavits of merit with the Civil Court falsely claiming that

Defendants have personal knowledge of the facts necessary to secure a default

judgment, when they do not.

372.    The fraudulent misrepresentations listed above involving the individual

named plaintiffs are described in more detail in paragraphs 120 to 224 of this Amended

Complaint.

      373.    Defendants, acting individually and as part of the Enterprise, have used the mails and wires and have caused the mails and wires to be used, or reasonably knew the mails and wires would be used, in furtherance of their fraudulent scheme. Specifically:

A.    In a sworn affidavit, Defendant Mosquera stated that he sent a summons and complaint to Ms. Veerabadren via U.S. mail on May 18, 2006.

B.    On July 6, 2006, at 9:31 a.m., Lillian Mathew, an employee of Defendant Mel Harris LLC, used the interstate wires to access the Department of Defense Manpower Data Center in order to obtain information about Ms. Veerabadren's military status.

C.    In a sworn affirmation, Stacey Schwartz, an associate of Defendant Mel Harris LLC, stated that Defendant Mel Harris LLC sent a demand letter to Mr. Perez, in or around August 2007.

D.    In a sworn affidavit, Defendant Andino stated that he sent a summons and complaint to Mr. Perez via U.S. mail on December 18, 2007.

E.    In a sworn affirmation, Stacey Schwartz, an associate of Defendant Mel Harris LLC, stated that Defendant Mel Harris LLC sent a letter to Mr. Perez, in or around January 2008, stating that he had been served.

F.    In February 2008, Defendant Mel Harris LLC used the interstate wires to send an information subpoena with restraining notice to Ms. Veerabadren's bank, which resulted in the freezing of her bank account.

G.    In a sworn affirmation, Stacey Schwartz, an associate of Defendant Mel Harris

LLC, stated that Defendant Mel Harris LLC sent a notice to judgment debtor to Mr. Perez, in or around March 2008.

H.  In a sworn affidavit, Defendant Lamb stated that he sent a summons and complaint to Ms. Sykes via U.S. mail on July 24, 2008.

I.  In a sworn affirmation, Defendant Lutz stated that he sent a summons and complaint to Ms. Sykes via U.S. mail on August 7, 2008.

J.  On September 11, 2008, at 12:46 p.m., Lillian Mathews, an employee of Defendant Mel Harris LLC, used the interstate wires to access the Department of Defense Manpower Data Center in order to obtain information about Ms. Sykes' military status.

K.  In a sworn affidavit, Defendant Mosquera stated that he sent a summons and complaint to Mr. Armoogam via U.S. mail on June 21, 2010.

L.  In a sworn affirmation, Defendant Waldman stated that he sent a summons and complaint to Mr. Armoogam via U.S. mail on July 9, 2010.

M.  On August 26, 2010, at 8:26 a.m., Cindy Jerez, an employee of Defendant Mel Harris LLC, used the interstate wires to access the Department of Defense Manpower Data Center in order to obtain information about Mr. Armoogam's military status.

N.  At the direction of Defendant Mel Harris LLC, a New York City Marshal sent a notice of execution to Mr. Armoogam's sister via U.S. mail, which she then conveyed to Mr. Armoogam in or around February or March 2011.

O.  At the direction of Defendant Mel Harris LLC, a New York City Marshal sent a

notice of execution to Ms. Sykes via U.S. mail, which she received July 2, 2009.

P.    Defendants have used the mails and wires on tens, if not hundreds, of thousands

of other occasions that Plaintiffs cannot identify at this time but are known to

Defendants.

374.    Defendants have used the mails and wires in connection with every default

judgment that they have fraudulently obtained, and each use of the mails and wires has furthered

the fraudulent scheme and enabled Defendants to take money and property from Plaintiffs and

putative class members by means of false pretenses and representations.

375.    On information and belief, each and every defendant has specific

knowledge that the mails and wires are being utilized in furtherance of the overall purpose of

executing the scheme to defraud, and/or it was reasonably foreseeable that the mails and wires

would be used because the CPLR and other governing statutes make use of the mails and wires

mandatory.  Indeed, no default judgment can be obtained without approximately half a dozen

uses of the mail and wires, and frequently more.

376.    Each of the tens, if not hundreds, of thousands of uses of the mails and

wires in connection with Defendants' schemes to defraud, spanning a period of no fewer than

four years, constitutes a separate instance of mail and/or wire fraud within the meaning of 18

U.S.C. § 1341 and 1343, and thus is also a predicate act, which taken together, constitute "a

pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961 and 1962.

377.    In connection with Defendants' schemes, the acts of racketeering activity

have occurred after the effective date of the RICO statute, 18 U.S.C. § 1961 *et seq.*, and on

countless occasions over a substantial time period within ten years of each other.  The acts of

racketeering are an ongoing part of Defendants' regular way of doing business. The predicate

acts have been and will be repeated over and over again.

***Relationship of Pattern of Racketeering Activity to Enterprise***

378.    As described, the goal of Defendants' Enterprise is to obtain default

judgments through fraudulent means and to use those judgments to extract money and property

from Plaintiffs and putative class members.

379.    The pattern of racketeering activity described above is integral to

Defendants' scheme. Without engaging in mail and wire fraud, Defendants would be unable to

obtain the default judgments they seek.

380.    Each Defendant, individually and as a member of the Enterprise, has

conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through

the pattern of racketeering activity described above. Accordingly, each defendant has violated

18 U.S.C. § 1962(c).

381.    Moreover, each Defendant, has knowingly agreed and conspired to violate

the provisions of 18 U.S.C. § 1962(c), including the numerous predicate acts of mail and wire

fraud described above, and has thus violated 18 U.S.C. § 1962(d).

382.    As a direct and proximate result of the RICO violations described in this

Complaint, Plaintiffs and putative class members have suffered substantial injuries. Plaintiffs

and putative class members have been deprived of due process and have had money judgments

entered against them on default which have then been used to extract money from them by

restraining and levying on their bank accounts, causing them to incur bank fees and miss work

days, garnishing their wages, damaging their credit ratings, and/or leveraging these and other

means to secure agreements to pay more money to Defendants, thus constituting an injury to Plaintiffs' property within the meaning of 18 U.S.C. § 1964, by the actions of Defendants and their co-conspirators in violation of 18 U.S.C. § 1962(c) & (d).

383.    Defendants' misrepresentations to the courts secured the default judgments that caused concrete injury to Plaintiffs' property.  As a result, Plaintiffs have suffered damage to their property within the meaning of 18 U.S.C. § 1964, by the actions of defendants and their co-conspirators in violation of 18 U.S.C. § 1962(c) & (d).

384.    Defendants' conduct has involved and continues to pose a threat of long term criminality since it is believed to have commenced as long as a decade ago and has continued to the present.  The pattern of racketeering activity has been directed towards hundreds of thousands of persons, including Plaintiffs, and the pattern has spanned many years.

385.    For the violations of 18 U.S.C. § 1962 described in this Complaint, Plaintiffs are entitled to recover compensatory and treble damages in an amount to be determined at trial, and to a prospective order directing Defendants to disgorge their ill-gotten gains in order to deter them from engaging in similar conduct in the future.

### THIRD CAUSE OF ACTION
(NY GBL § 349)

386.    Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

387.    New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ."  N.Y. Gen. Bus. Law § 349(a).

388.    An individual "injured by reason of any violation of this section may bring

an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

389.    As enumerated above, Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their businesses.

390.    Defendants' conduct has a broad impact on consumers at large.

391.    Defendants committed the above-described acts willfully and/or knowingly.

392.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

393.    Defendants' violations include, but are not limited to:

A.    Producing and filing fraudulent affidavits of service that falsely claim that Plaintiffs and class members were served with a summons and complaint when in fact they were not;

B.    Producing and filing false attorney affirmations stating that service of the summons and complaint has been made, when it fact it was not;

C.    Producing and filing fraudulent affidavits of merit that falsely claim that Defendants have personal knowledge of the facts necessary to obtain a default judgment, when in fact they do not;

D.    Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

E.    Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain

default judgments against Plaintiffs and class members under false pretenses;

F.    Using fraudulently obtained default judgments to extract money from Plaintiffs

and class members.

394.    As a direct and proximate result of these violations of § 349 of the General

Business Law, Plaintiffs and class members have suffered compensable harm and are entitled to

preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and

attorney's fees.

### FOURTH CAUSE OF ACTION
(NY Jud. Law § 487)
(Against those Mel Harris Defendants who are attorneys)

395.    Plaintiffs hereby restate, reallege, and incorporate by reference all

foregoing paragraphs.

396.    New York law states that "an attorney or counsel who . . . is guilty of any

deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any

party . . .  [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by

the penal law . . . forfeits to the party injured treble damages, to be recovered in a civil action."

N.Y. Jud. Law § 487(1).

397.    As enumerated above, the Mel Harris Defendants violated § 487 of the

New York Judiciary Law by engaging in deceit or collusion, or consenting to deceit or collusion,

with the intention to deceive courts and opposing parties.

398.    The Mel Harris Defendants committed the above-described acts willfully

and/or knowingly.

399.    The Mel Harris Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and class members and unless enjoined, will cause further irreparable injury.

400.    The Mel Harris Defendants' violations include, but are not limited to:

A.    Preparing fraudulent, deceptive, and misleading affidavits and affirmations;

B.    Misrepresenting that Defendants are in possession of or could obtain documentation evidencing that Plaintiffs and class members owe a debt, when in fact they do not possess and cannot obtain such documentation;

C.    Using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs and class members under false pretenses;

D.    Using fraudulently obtained default judgments to extract money from Plaintiffs and class members.

401.    As a direct and proximate result of these violations of § 487 of the New York Judiciary Law, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and treble damages.


WHEREFORE, Plaintiffs and members of the class request the following relief jointly and severally as against all Defendants:

1.    An order certifying this case as a class action under Fed. R. Civ. P. 23;

2.    A judgment declaring that Defendants have committed the violations of law alleged in this action;

-84-

3.      An order enjoining and directing Defendants to comply with the NY CPLR in their debt collection activities, including without limitation:

        A.      Directing Defendants to cease engaging in debt collection practices that violate the FDCPA, RICO, NY GBL § 349, and NY Jud. Law § 487;

        B.      Directing Defendants to locate class members and notify them that a default judgment has been entered against them and that they have the right to file a motion with the court to re-open their case; to provide each class member with a copy of the affidavit of service filed in their action; and to notify the court of the index number of each class member's case;

        C.      Directing that Defendants serve process in compliance with the law in any and all future actions;

        D.      Directing Defendants to produce and file affidavits of merit in future actions that truthfully and accurately reflect their personal knowledge of the facts, or lack thereof;

4.      Actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

5.      Treble damages pursuant to RICO;

6.      Statutory damages pursuant to the FDCPA;

7.      Statutory and treble damages pursuant to NY GBL § 349;

8.      An order awarding disbursements, costs, and attorneys' fees pursuant to the

FDCPA, RICO, and NY GBL § 349;

9.      Treble damages pursuant to NY Jud. Law § 487; and

10.     Such other and further relief that may be just and proper.

Dated: April 15, 2011
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP
By: _____
Matthew D. Brinckerhoff
Eisha Jain
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5000

NEIGHBORHOOD ECONOMIC
DEVELOPMENT ADVOCACY PROJECT
(NEDAP)
Claudia Wilner
Joshua Zinner
Susan Shin
176 Grand Street, Suite 300
New York, NY 10013
(212) 680-5100

MFY LEGAL SERVICES, INC.
Carolyn E. Coffey
Anamaria Segura
Of Counsel to Christopher D. Lamb, Esq.
299 Broadway, 4th Floor
New York, NY 10007
(212) 417-3701

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE SYKES, REA VEERABADREN, KELVIN PEREZ, and CLIFTON ARMOOGAM, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> MEL S. HARRIS AND ASSOCIATES LLC; MEL S. HARRIS; MICHAEL YOUNG; DAVID WALDMAN; KERRY LUTZ; TODD FABACHER; MEL HARRIS JOHN/JANE DOES 1-20; LEUCADIA NATIONAL CORPORATION; L-CREDIT, LLC; LR CREDIT, LLC; LR CREDIT 10, LLC; LR CREDIT 14, LLC; LR CREDIT 18, LLC; LR CREDIT 21, LLC; JOSEPH A. ORLANDO; PHILIP M. CANNELLA; LR CREDIT JOHN/JANE DOES 1-20; SAMSERV, INC.; WILLIAM MLOTOK; BENJAMIN LAMB; MICHAEL MOSQUERA; JOHN ANDINO; and SAMSERV JOHN/JANE DOES 1-20, <br><br> Defendants. | ECF Case <br> No. 09 Civ. 8486(DC) <br><br><br> **DECLARATION OF MATTHEW D. BRINCKERFHOFF** |

MATTHEW D. BRINCKERHOFF, an attorney duly admitted to practice in the Southern District of New York, declares under penalty of perjury as follows:

1.    I am a member of Emery Celli Brinckerhoff & Abady LLP, which, along with MFY Legal Services and the Neighborhood Economic Development Advocacy Project, represents Plaintiffs in this action. I submit this declaration in further support of Plaintiffs' motion for class certification.

2. Attached as Exhibit A is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated September 16, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Sykes.

3. Attached as Exhibit B is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated July 7, 2006, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ms. Veerabadren.

4. Attached as Exhibit C is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated February 5, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Perez.

5. Attached as Exhibit D is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated August 26, 2010, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Mr. Armoogam.

6. Attached as Exhibit E is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated June 23, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Paula Robinson, a former plaintiff in this matter.

7. Attached as Exhibit F by Todd Fabacher and dated September 30, 2008, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Fatima Graham, a former plaintiff in this matter.

8. Attached as Exhibit G is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated April 7, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Saudy Rivera, a former plaintiff in this matter.

2

9.      Attached as Exhibit H is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated July 24, 2007, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Enid Roman, a former plaintiff in this matter.

10.      Attached as Exhibit I is a true and correct copy of the affidavit of merit signed by Todd Fabacher and dated June 16, 2009, and submitted by Mel Harris Defendants in the Leucadia lawsuit against Ruby Colon, a former plaintiff in this matter.

11.      Attached as Exhibit J is a true and correct copy of the Affirmation of Seth Schlanger dated September 14, 2006.

12.      Attached as Exhibit K is a true and correct copy of Affidavit of William Mlotok dated July 12, 2011 regarding Samserv logbooks.

13.      Attached as Exhibit L is a true and correct copy of Affidavit of John Andino dated July 23, 2011 regarding Samserv logbooks.

14.      Attached as Exhibit M is a true and correct copy of the transcript of this Court's June 27, 2011 conference.


Dated:  August 1, 2011
        New York, New York

                                    _____/s/_____
                                    MATTHEW D. BRINCKERHOFF

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX

Index No. 55929 BCV08

LR CREDIT 18, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

MONIQUE S SYKES

DEFENDANT(S)

STATE OF NEW YORK    )
COUNTY OF NEW YORK    ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#5149230750022307, owed to **JPMORGAN CHASE BANK.** As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **JPMORGAN CHASE BANK,** wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $2359.51.

That although duly demanded no part of the total sum of $2359.51 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2359.51 together with interest on $1907.51 from 06-27-2008 plus the costs of this action.

signed: _____

Sworn to before me this 16 day Of September, 2008.

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 046440/06

LR CREDIT 10, LLC

PLAINTIFF
**AFFIDAVIT OF MERIT**

AGAINST

REA L MOUKENGESCHAIE
DEFENDANT(S)

STATE OF NEW YORK        )
COUNTY OF NEW YORK       ) ss

<u>Todd Fabacher</u> being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff's assignor in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from the assignor, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That LR CREDIT 10, LLC [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of a debt owed to SEARS. As such LR CREDIT 10, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with plaintiff's assignor wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant by the assignor in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $6987.21.

That although duly demanded no part of the total sum of $6987.21 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $6987.21 together with interest on $5700.98 from 04-12-2006 plus the costs of this action.

signed:

Sworn to before me this <u>07 day Of July, 2006.</u>

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

275786-3 / LRCR10 / 85729409

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX
Index No. 86522 BCV07

LR CREDIT 14, LLC

                        PLAINTIFF
                                        **AFFIDAVIT OF MERIT**

        AGAINST

KELVIN PEREZ

                        DEFENDANT(S)

STATE OF NEW YORK            )
COUNTY OF NEW YORK,          ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, which was made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 14, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of Account Num#2601258131005, owed to **BALLY TOTAL FITNESS CLUBS**. As such LR CREDIT 14, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

**BALLY TOTAL FITNESS CLUBS** duly performed all conditions on its part to be performed under the Retail Installment Contract, a copy of which agreement underlying the transaction was delivered to the defendant(s) at or before the time of the transaction.

Plaintiff, as purchaser and assignee of the account herein, owns and retains all beneficial rights and interests pertinent thereto.

Defendant(s) defaulted in payment and under the terms of the Retail Installment Contract plaintiff opted to accelerate the agreed balance then due and owing: to wit -- $1846.80.

That although duly demanded no part of the total sum of $1846.80 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $1846.80 together with interest on $1460.98 from 11-05-2007 plus the costs of this action.

        signed: _____

Sworn to before me this **05 day Of February, 2008.**

        O'CONNELL HORNE
        Notary Public - State of New York
        No. 01HO6119203
        Qualified in New York County
        Commission Expires 11-29-2008

777186-1 / LRCR14 / 15802770



COURT OF THE CITY OF NEW YORK - COUNTY OF QUEENS
Index No. 65383 QCV10

LR CREDIT 21, LLC

PLAINTIFF
**AFFIDAVIT OF MERIT**

AGAINST

CLIFTON D ARMOOGAM

DEFENDANT(S)

STATE OF NEW YORK        )
COUNTY OF NEW YORK      ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 21, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. LR CREDIT 21, LLC is the assignee and purchaser of Account Num#4266841081400945, owed to **CHASE BANK USA NA**. As such LR CREDIT 21, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **CHASE BANK USA NA**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but on 12-09-2007, defendant had defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $4891.65. That although duly demanded no part of the total sum of $4891.65 has been paid.

In accordance with CCM-186A this cause of action accrued in the state of NY having a 6 year statute of limitations with respect to collection of debts of this kind. After reasonable inquiry, I have reason to believe that the applicable statute of limitations had not expired as of the date this lawsuit had been commenced.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $4891.65 together with interest on $4891.65 from 12-09-2007 plus the costs of this action.

signed: _____

Sworn to before me this **26 day Of August, 2010**.

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2014

990156-1 / LRCR21 / 4266841081400945

Case 1:09-cv-08486-DC   Document 100   Filed 08/01/11   Page 13 of 49

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF BRONX
Index No. 39423 BCV09

LR CREDIT 18, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

PAULA ROBINSON

DEFENDANT(S)

STATE OF NEW YORK      )
COUNTY OF NEW YORK   ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY,that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business,and that I am  thereby fully and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#1150107338602, owed to **CITIBANK/SEARS**. As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **CITIBANK/SEARS**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing an unpaid agreed balance of $509.35.

That although duly demanded no part of the total sum of $509.35 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $509.35 together with interest on $509.35 from 12-06-2003 plus the costs of this action.

signed: _____

Sworn to before me this **23 day Of June, 2009.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF NEW YORK
Index No. 48003 CVN08

LR CREDIT 18. LLC

     PLAINTIFF
       **AFFIDAVIT OF MERIT**

  AGAINST

FATIMA E GRAHAM
      DEFENDANT(S)

STATE OF NEW YORK     )
COUNTY OF NEW YORK   ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY,that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business,and that I am  thereby fully and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 18, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 18, LLC is the assignee and purchaser of Account Num#4559501500537901, owed to **PROVIDIAN BANK.** As such LR CREDIT 18, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **PROVIDIAN BANK,** wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing an unpaid agreed balance of $2688.73.

That although duly demanded no part of the total sum of $2688.73 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2688.73 together with interest on $2688.73 from 10-03-2003 plus the costs of this action.

    signed: _____

Sworn to before me this **30 day Of September, 2008.**

    **CHANTELLA ULMER**
   **Notary Public - State of New York**
    **No. 01UL6131327**
   **Qualified in KINGS County**
  **Commission Expires 08-01-2009**

894191-1 / LRCR18 / 13238040051002346



CIVIL COURT OF THE CITY OF NEW YORK - COUNTY OF KINGS
                                    Index No. 2058 KCV09

_____

*LR CREDIT 19, LLC*

                         PLAINTIFF
                                    **AFFIDAVIT OF MERIT**

        AGAINST

SAUDY RIVERA

                         DEFENDANT(S)
_____

STATE OF NEW YORK           )
COUNTY OF NEW YORK          ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY,that I maintain the daily
records and accounts in the regular course of business, including records maintained by and obtained from
plaintiff's assignor, which were made and maintained in the regular course of business,and that I am  thereby fully
and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within
action.

That **LR CREDIT 19, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 19, LLC is the
assignee and purchaser of Account Num#5466725650447640, owed to **JPMORGAN CHASE BANK**. As such
LR CREDIT 19, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to
collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **JPMORGAN
CHASE BANK,** wherein defendant agreed to pay all amounts charged to said account by the authorized use
thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and
obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to
defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the
terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing
an unpaid agreed balance of $5808.40.

That although duly demanded no part of the total sum of $5808.40 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $5808.40 together with
interest on $5808.40 from 02-01-2006 plus the costs of this action.

                         signed: _____

Sworn to before me this **07 day Of April, 2009.**

        Michael Young
    Notary Public - State of New York
        No. 01YO4930598
    Qualified in Queens County
    Commission Expires June 20, 2010

943431-1 / LRCR19 / 5466725650447640

Jan 20 2010 2:38PM   HP LASERJET FAX                                    p.6

...URT OF THE CITY OF NEW YORK - COUNTY OF KINGS
                              Index No. 27856 KCV09

LR CREDIT 19, LLC

                    PLAINTIFF
                              **AFFIDAVIT OF MERIT**

        AGAINST

ENID ROMAN

                    DEFENDANT(S)

STATE OF NEW YORK          )
COUNTY OF NEW YORK         ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff in the State of NY, that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from plaintiff's assignor, which were made and maintained in the regular course of business, and that I am thereby fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 19, LLC** [plaintiff] is a LIMITED LIABILITY CORPORATION. LR CREDIT 19, LLC is the assignee and purchaser of Account Num#4559541900671322, owed to WAMU/PROVIDIAN BANK. As such LR CREDIT 19, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with **WAMU/PROVIDIAN BANK**, wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured. There remains due and owing an unpaid agreed balance of $3437.00.

That although duly demanded no part of the total sum of $3437.00 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $3437.00 together with interest on $3437.00 from 03-01-2006 plus the costs of this action.

                    signed: _____

Sworn to before me this **16 day Of June, 2009.**

        Michael Young
Notary Public - State of New York
        No. 01YO4930598
    Qualified in Queens County
Commission Expires June 20, 2010

949398-1 / LRCR19 / 4559541900671322

COURT OF THE CITY OF NEW YORK - COUNTY OF KINGS
Index No. 63815 KCV07

LR CREDIT 12, LLC

PLAINTIFF

**AFFIDAVIT OF MERIT**

AGAINST

RUBY A COLON

DEFENDANT(S)

STATE OF NEW YORK      )
COUNTY OF NEW YORK     ) ss

**TODD FABACHER** being duly sworn, deposes and says:

I am an authorized and designated custodian of records for the plaintiff's assignor in the State of NY,that I maintain the daily records and accounts in the regular course of business, including records maintained by and obtained from the assignor, which was made and maintained in the regular course of business,and that I am thereby fully and personally familiar with,and have personal knowledge of, the facts and proceedings relating to the within action.

That **LR CREDIT 12, LLC** [plaintiff] is a LIMITED LIABILITY COMPANY. Plaintiff is the assignee and purchaser of a debt owed to **CHASE MANHATTAN BANK**. As such LR CREDIT 12, LLC retains all rights and benefits as owner and purchaser of said debt, as well as all right to collect same.

That said action is based upon a Retail Charge Account Agreement executed by defendant with plaintiff's assignor wherein defendant agreed to pay all amounts charged to said account by the authorized use thereof and that the plaintiff purchased this account from the assignor herein and was assigned all rights and obligations.

That defendant incurred charges by the use of said charge account and that account statements were remitted to defendant by the assignor in the regular course of business but defendant has defaulted in the payments to be made pursuant to the terms of said Retail Charge Account Agreement and the account has now matured.  There remains due and owing an unpaid agreed balance of $2078.18.

That although duly demanded no part of the total sum of $2078.18 has been paid.

WHEREFORE, Plaintiff demands judgment against the defendant(s) for the sum of $2078.18 together with interest on $1761.91 from 05-22-2007 plus the costs of this action.

signed: _____

Sworn to before me this **24 day Of July, 2007.**

Michael Young
Notary Public - State of New York
No. 01YO4930598
Qualified in Queens County
Commission Expires June 20, 2010

737217-1 / LRCR12 / 13372024060109623

CIVIL COURT OF THE CITY OF NEW YORK,
COUNTY OF KINGS

———————————————————

LR CREDIT 9, LLC

Plaintiff,                          Index No.  68765/05

-against-                           **AFFIRMATION
                                    IN OPPOSITION
                                    TO DEFENDANT'S MOTION**

ANGELA RICHMOND
                        Defendant

———————————————————

Seth Schlanger, a New York attorney and senior associate of attorney for the plaintiff, affirms the following under the penalties of perjury:

1.    I am the senior associate of Mel S Harris and Associates, LLC, attorneys for the plaintiff in this matter. I am a New York attorney and, as such, affirm that I know all that is stated herein to be true, under the penalties of perjury.   This affirmation is in agreement with defendant's motion to dismiss with prejudice and in opposition to so much of defendant's motion that seeks sanctions pursuant to 22 N.Y.C.R.R. 130-1.1(a).

2.    For the reasons set forth herein, we agree to dismiss this action with prejudice but believe that no sanctions should be assessed.

3.    In order to determine whether plaintiff counsel has engaged in any sanctionable conduct under Rule 130-1.1 the court should look at the definition of frivolous conduct which states" conduct is frivolous if: "it asserts material factual statements that are false." As discussed in detail throughout this affirmation, there are no false statements contained within any of plaintiff's documents in this matter.

4.    I will endeavor to provide a full explanation in relation to this pending motion, but, in order to do so, must provide the context of the changes in the collection field in New York. I have been practicing law for 40 years and have seen personally the substantial changes in the field over the past two decades.

5.    When I started in this business clients were primarily the original creditors and my contact was thereby with the original creditor. Today, the proliferation of credit cards and other consumer accounts and their general usage has engendered a new industry where such accounts are sold by the original creditor and collected by an assignee or even a chain of assignees. The clients of my firm are (i)banks, (ii)merchants, (iii)agencies servicing debt for original creditors, and (iv)paper

buyers that have purchased the debt on an assignee and transferee basis. Often the direct assignor is not the original creditor and my client's contact is with or through its assignor. Further, at times, even a servicing agent's contact will be an assignee.

6.      Further, debt buying and selling has become a business unto itself. It would be mistaken to cast negative aspersions on a case just because an account has been sold to another entity. Just because a debt has not been collected by or for a creditor or subsequent assignee does not mean that it is a bad debt or a problem situation. More often it means that bad events such as loss of job, illness, short term disability, loss of income, general inability to pay, and the like have prevented the debtor from paying the debt to the original creditor or some subsequent entity or ineffectual collection efforts have otherwise resulted in the inability to collect the debt. With the passage of time a debtor's circumstances can improve or a debtor may be able to resolve an account in a mutually agreeable manner. In any event, the underlying debt remains.

7.      My firm's client base follows the prevalent pattern. My firm's contacts are therefore generally directly with servicing agencies and paper buyers that must communicate with or through their immediate transferor. In the present matter, my contact is through a paper buyer.

8.      As your Honor can see, the collection field was at one time paper intensive because electronic processes were relatively primitive compared to today. The referral of files had involved, usually as a matter of necessity, the intake of paper records or referral memoranda.

9.      Now, more and more debt is being sold to paper buyers or is being serviced through agencies. For the most part, I have found that debt sellers and, as a result, debt buyers provide essential account related information electronically. A firm to which such a debt is referred for collection must then generally rely on the electronic information provided, subject to review by counsel's office to see if anything in that information on its face does not make sense or otherwise precludes further proceedings. When further documents are needed, request must then be made through or from the debt buyer or servicing agency. The debt buyer seeks documents from and through its transferor and down the chain of transfer. It can take months to get documents, if they can be obtained. An underlying problem is that, as they get further down the line, the original creditor becomes less invested in the overall process. That tri-partite work process is the process applicable to this case.

10.     Further, the State of New York encourages the use of electronic information and electronic records, and in furtherance thereof has enacted and strengthened the State Technology Law. The Legislative history stated in Chapter 314, L.2002, provides:

"Legislative intent. Article I of the state **technology law**, known as the Electronic Signatures and Records Act (ESRA), is intended to support and encourage electronic commerce and electronic government by allowing people to use electronic signatures and electronic records in lieu of handwritten signatures and paper documents. Subsequent to the adoption of ESRA, the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. §§ 7001-7006), known as the ESign Law, was adopted to permit and encourage the expansion of electronic commerce in interstate and foreign commercial transactions. Like ESRA, this federal law authorizes the use and acceptance of electronic signatures and electronic records in the context of these commercial transactions. It is the intent of this bill to ensure that these laws continue to complement each other in achieving their stated purposes. Rather than seeking to modify, limit or supercede federal law, the legislature finds that it is in the best interest of the state of New York, its citizens, businesses and government entities for State and federal law to work in tandem to promote the use of electronic technology in the everyday lives and transactions of such individuals and entities. It is with this finding in mind that the following amendments are made to the state **technology law.**"

Otherwise stated, today's electronic commerce includes the opening and usage of credit and merchant accounts, as well as the electronic transmission of information. Thus, collection law and practices have evolved electronically in accordance with the Legislature's intent to embrace technology.

11.    This firm is a high volume collection firm in New York. We can and must rely on the electronic information provided, including date of last pay, principal referred, total referred, social security number, last known address, original creditor, and other information that may be provided. We are given enough information to make a thinking decision regarding the handling of a referred case. When some important piece of information is missing we seek it from our client.

12.    In the present matter, my firm represents a debt buyer. If any documents are to be obtained they can take months in such circumstances. We are willing to consent to a discontinuance with prejudice.

13.    While the attorney for the defendant did request, back in April 2006, that we consent to discontinue this matter with prejudice, this office reasonably requested that she provide us with an affidavit of fraud executed by her client in order to substantiate those allegations. This office was under the impression that such an affidavit would be forthcoming, and therefore was waiting for said affidavit.

14.    Upon receipt of the pending motion for sanctions, plaintiff counsel attempted to resolve the pending motion by consenting to discontinue this matter with prejudice. Instead of being agreeable, defendant's counsel stated that she "wanted to see what happens" with her motion for sanctions.

15.    Further, keeping the above stated realities in mind, my firm does have practices in place to work carefully with referred debt and to minimize any human error.

16.    First, we evaluate accounts through outside vendors and within our own computer system for dates of last payment, deceased status, and bankruptcy. This allows us to eliminate any matters that should be immediately closed and returned. Occasionally, such a status in a case will fall between the cracks and we must deal with it as it is discovered.

17.    Second, we send out a first demand letter to all debtors remaining after the preliminary evaluation process is completed, with the required dispute/validation language. If the letter is returned we status the account accordingly and keep it on hold pending a new address. If we receive no mail return and no dispute the debt, as per the letter, which is based on the mandates of Federal law, is deemed valid. After 35 days has passed since that letter was mailed litigation can follow. If a dispute is raised we mark the account as such and seek documentation, with the account remaining in a hold status.   As per our notes in the instant matter, a demand letter was sent to the 4420 Kings Highway, Brooklyn address on April 25, 2005.  We obtained the 4420 Kings Highway address as one of Ms. Richmond's most current addresses pursuant to a search on accurint.  SEE EXHIBIT A. We had no notice that the defendant currently lives at 1909 Amsterdam Ave. Apt 14B, New York, NY until we received the defendant's OSC, at which time, we updated our records to reflect said change of address.  SEE EXHIBIT B.

18.    Third, before any summons will be issued or signed, the reviewing attorney is directed to look at the case notes to assure that nothing is evident that necessitates the stoppage of the summons before it is referred to a process server. This firm checks for date of last payment, bankruptcy, disputes, noted previous payment, returned mail, and anything else that may compel the disapproval of the summons from being issued.

19.    Fourth, approved and signed summons papers are then referred to an outside process service agency for service and filing. We do not employ in-house process servers. When the affidavit of service is returned to us we send out the 20 day notice letter as required in CPLR 3215. This further enables a debtor to dispute a debt by reminding the debtor to file an Answer. If a dispute then comes in by letter that has not been sent to the Court we remind the debtor that an Answer must be filed with the Court. If the letter is filed with the Court we deem it to be an Answer. We pursue investigation of any dispute that is brought to our attention.  In this matter, the CPLR 3215 20 day notice letter was sent to the defendant on September 29, 2005.  See a copy of the 20 day letter attached as EXHIBIT C.



20.  The above stated processes were followed in the present matter and there was no return mail. Also, there was no Answer or dispute raised so as to keep us from going to the next level, default judgment.

21.  Fifth, if an Answer does come in and appears to require documents we will seek them if they have not been ordered already. If a court date comes up in the interim we have been known to, in lieu of the long adjournment needed to wait for documents, mark a case off the calendar or discontinue without prejudice pending the documents. While we were ready earlier on to discontinue with prejudice, the attorney for the defendant wishes to proceed with the current motion for sanctions.

22.  Sixth, after default judgment enforcement generally follows. If we receive an OSC an attorney must review it. The OSC in the above-captioned matter was received by this office on November 22, 2005.

23.  If an OSC is received and reviewed, a determination is made as to whether or not an opposition paper will be submitted or if we will exercise some form of consent. The decision to consent should not be seen in a negative light. At times we will make a business and/or practical decision to allow a judgment to be vacated and an Answer filed. When a traverse is involved, we make a similar determination regarding the dismissal of the case on jurisdictional grounds.

24.  Additionally, in order to understand why the defendant's bank account was restrained for over one month in this matter it is important to understand that the defendant had more than one collection matter that was placed with this firm.

25.  The defendant also has an account with MSH ID # 543805-2, which was a judgment account placed with this firm. See EXHIBIT D. Since we had a valid enforceable judgment, information subpoenas and restraining notices were sent out to the banks in order to collect on that judgment as well. In other words, the matter was referred to this office with the judgment already entered by other counsel, in this instance the law office of Eric S. Finger, Esq.

26.  While the order to show cause was pending on LR Credit 9 v. Angela Richmond, Kings Civil Index. No. 068765/05, restraints were also issued to various banks on the second enforceable judgment placed with this office, Garden City Asset Management Corp. v. Angela Richmond, Index No. 124294/04. Plaintiff cannot affirm as to the length of time defendant's bank account was restrained, but the time period in which an account is restrained can be lengthened if there is more than one restraining notice sent to the same bank account for various judgments.

27.  I would next like to address the assertions of counsel that the statements by Todd Fabacher are false as contained in the affidavit of merit, which was submitted with the default judgment in this matter. The custodian of records merely states that he is "fully and personally familiar with the facts and proceedings relating to

the within action" based upon his review of the business records obtained from the plaintiff's assignor. In this case, these records are electronic records maintained and transmitted through the immediate assignor of plaintiff.  As discussed above, said business records are an exception to the hearsay rule and are a legitimate basis for the custodian to base his belief.

28.    Next, defendant's attorney states that in plaintiff's "Response to Defendant's Discovery Request" "Plaintiff admits that neither it nor its assignor has any records or documents related to this case." While this office has ceased using the "Response to Defendant's Discovery Request" in all cases, there is nothing contained within that document that is a false material factual statement.  The response merely states that the plaintiff is obtaining hard copies of the credit card statements it has requested from the plaintiff's assignor.

29.    In order to determine whether plaintiff counsel has engaged in any sanctionable conduct under Rule 130-1.1 the court should look at the definition of frivolous conduct which states" conduct is frivolous if: "it asserts material factual statements that are false."  As discussed in detail above, there are no false statements contained within any of plaintiff's documents.

30.    Based on the foregoing, I hereby respectfully request that the court deny the defendant's motion for sanctions.  Plaintiff is ready to consent to a dismissal of this matter with prejudice if the court so orders.

New York, NY
9/14/2006

MEL HARRIS & ASSOCIATES, LLC.
By: Seth Schlanger, Esq.

RefNum: 543805-1